# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE AT CHATTANOOGA

TERPSEHORE MARAS,

                    *Plaintiff,*

      v.

CHATTANOOGA NEWS CHRONICLE,
THEHUFFINGTONPOST, INC.,
REPRESENTATIVE STEVE COHEN,
US DOMINION, INC., DOMINION VOTING
SYSTEMS, INC., DOMINION VOTING
SYSTEMS CORPORATION, MEDIA
MATTERS FOR AMERICA, OHIO
INTELLIGENCE TIPS, ROSS ELDER,
and ALI ABDUL RAZAQ AKBAR A/K/A
ALI ALEXANDER,

                    *Defendants.*

Civil Action No. 1:21-cv-317

Judge Clifton L Corker
Magistrate Judge Christopher H Steger

---

## MEMORANDUM OF LAW IN SUPPORT OF DOMINION'S MOTION TO DISMISS

After Texas attorney Sidney Powell ("Powell") waged a televised media campaign in which she falsely accused a voting machine company called Dominion of rigging the 2020 presidential election, Dominion publicly rebutted Powell's false accusations and demanded that Powell retract them.[1]  After every court that considered Powell's allegations dismissed her claims and Dominion sued Powell for defamation, Plaintiff filed this defamation lawsuit against Dominion and others.

---

[1] "Dominion" refers to Defendant US Dominion, Inc. and its wholly-owned subsidiaries, Defendants Dominion Voting Systems, Inc. and Dominion Voting Systems Corp.

Plaintiff alleges that she acted as a "secret witness" for Powell by providing an anonymous expert declaration that was filed in court with her name and signature redacted. Before Powell used Plaintiff's anonymous declaration containing Plaintiff's "expert opinions" to convince people that Dominion had rigged the 2020 election, a court had fined Plaintiff for what prosecutors alleged was a "persistent effort … to deceive others." Another court later found that Powell's "expert reports," which included that of Plaintiff, reached "implausible conclusions, often because they are derived from *wholly unreliable sources*." Dominion's defamation complaint against Powell cited and attached the court records detailing Plaintiff's unreliability and history of deceit because Powell's reliance on facially unreliable sources is evidence that Powell recklessly disregarded the truth. But Dominion never mentioned Plaintiff in any of its public statements about Powell.

Plaintiff's claims against Dominion must be dismissed because the Court lacks personal jurisdiction over Dominion and because Plaintiff complains about publications that are about Powell—not Plaintiff—or are absolutely privileged as a matter of black-letter law.

## STATEMENT OF FACTS

### *The allegedly defamatory publications*

Plaintiff alleges that Dominion defamed her in a retraction demand letter to Powell, public statements about Powell, and Dominion's defamation complaint against Powell. (Compl. ¶¶ 36, 38, 54, 78).[2] All of those publications were largely drafted in the Washington, D.C. metropolitan area and published from or filed in the Washington, D.C. metropolitan area and/or Toronto,

---

[2] Because Dominion's retraction demand letter, public statements, and defamation complaint against Powell are referenced in Plaintiff's Complaint and are integral to Plaintiff's claims against Dominion, they may be considered without converting this motion to dismiss into one for summary judgment. Fed. R. Civ. P. 10(c); *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). Therefore, Dominion attaches those documents as <u>Exhibits A-D</u> to the Declaration of Megan L. Meier ("Meier Decl.").

Ontario; none of the work on any of those publications took place in Tennessee, nor were any of those publications published from Tennessee. (Meier Decl. ¶¶ 5-8.)

## *Plaintiff's involvement in litigation giving rise to this case*

Before her involvement in Powell's election litigation, when Plaintiff resided in North Dakota before moving to Ohio, the Attorney General for the State of North Dakota filed a consumer protection enforcement action against Plaintiff, alleging that Plaintiff had engaged in a fraudulent fundraising campaign under the auspices of raising money for families displaced by an apartment building fire, homeless shelters, and a Catholic school, among others. (Compl. at ¶ 105; *State v. Maras*, No. 51-2018-cv-01339 (N.D. Dist. Ct. N. Cent. Jud. Jul. 2, 2018) (Meier Decl. Ex. D at Ex. 55) ("N.D. State Compl."). The State further alleged that Plaintiff had falsely represented that the Bank of North Dakota and the City of Minot had sponsored the fundraising campaign and that Plaintiff had "created an entirely fake online persona" in which she falsely claimed to be a 22-year veteran of Naval intelligence, a Purple Heart recipient, an operator of a medical laboratory, and a doctor, none of which was true. (N.D. State Compl. ¶¶ 10-16). Instead of giving the funds she raised to charity, Plaintiff spent the funds she raised on purchases for herself for Wal-Mart, McDonald's, QVC, and elsewhere. (*Id.* ¶ 15).

In its Findings of Fact, Conclusions of Law, and Order of Judgment, the Court found that Plaintiff had violated North Dakota's consumer fraud statute. (Findings of Fact, Conclusions of Law, and Order for Judgment at 31, *State v. Maras*, No. 51-2018-CV-1339, N.D. Dist. Ct. N. Cent. Jud. Sept. 11, 2020) (Meier Decl. Ex. D at Ex. 52). Referring to Plaintiff in this case as the "Defendant" in the North Dakota case, the court held:

> Defendant violated N.D.C.C. §§ 50-22-04.3 and 51-15-02 by: (1) soliciting donations for the victims of an apartment fire in Harvey, ND but did not distribute the proceeds to the victims; (2) soliciting donations while misrepresenting or "passing off" sponsorship by the Bank of North Dakota; (3) soliciting donations while

misrepresenting or "passing off" as association with the City of Minot; (4) soliciting donations while misrepresenting receipt of an e-mail from the Bank of North Dakota that she fabricated or falsely attributed to the Bank of North Dakota; (5) using "sockpuppet" or "astroturfed" donations to induce others to donate to her online campaigns; (6) soliciting donations while misrepresenting education and experience that she does not possess; (7) soliciting contributions for a purported charitable purpose and then using the proceeds for personal expenses; and (8) soliciting contributions for charitable purposes and engaging in the advertisement and sale of merchandise under false pretenses.

(Findings of Fact, Conclusions of Law, and Order for Judgment ¶ 105 (Sept. 11, 2020) (Meier Decl. Ex. D at Ex. 52)).

### *Sidney Powell's "historic and profound abuse of the judicial process"*

Shortly after the 2020 election, Powell filed lawsuits in Arizona, Wisconsin, Michigan, and Georgia, in which she challenged the outcome of the presidential election in those states and falsely accused Dominion of being "founded by foreign oligarchs and dictators to ensure computerized ballot-stuffing and vote manipulation to whatever level was needed to make certain Venezuelan dictator Hugo Chavez never lost another election."[3]  In support of her election litigation in Arizona and Wisconsin, Powell filed Plaintiff's declaration (from which Plaintiff's name and signature were redacted so that her identity was concealed from the public), which Plaintiff attaches to her own Complaint as Exhibit 1.  (Compl. ¶¶ 14-18, 51-52; Ex. 1).  Plaintiff's declaration purports to discuss the regulations governing Dominion's work in Arizona, Wisconsin, Michigan, Georgia, and Pennsylvania, *but it makes no mention of Tennessee*.  (Compl. Ex. 1).  In her declaration— despite the fact that nearly all Americans vote on paper ballots that can easily be recounted by

---

[3] Complaint, *Dominion v. Powell*, Case No. 1:21-cv-00040 (D.D.C. Jan 8, 2021) (Dkt. 1) (Meier Decl. Ex. D at ¶ 75) ("Dominion Compl.") (referencing Compl. ¶ 5, *Pearson v. Kemp*, No. 12-cv-04809 (N.D. Ga. Nov. 25, 2020) (Dkt. 1)); Compl. ¶ 5, *King v. Whitmer*, No. 20-cv-13134 (E.D. Mich. Nov. 29, 2020) (Dkt. 6); Compl. ¶ 6, *Feehan v. Wis. Elections Comm'n*, No. 20-cv-1771 (E.D. Wis. Dec. 1, 2020) (Dkt. 1); Compl. ¶ 6, *Bowyer v. Ducey*, No.20-cv-2321 (D. Ariz. Dec. 2, 2020) (Dkt. 1)).

hand by the local bipartisan election officials who possess the paper ballots, and despite the fact

that Dominion vote counting machines were used in numerous jurisdictions that Donald J. Trump

won in 2016 and 2020—Plaintiff asserted that Dominion permitted the manipulation of the vote

counts in Dominion's machines in order to rig the 2012 election for Barack Obama and the 2020

election for Joe Biden, but not the 2016 election for Donald J. Trump.  (*Id.* at ¶¶ 76-77).

In support of the lawsuits she filed, Powell filed the "reports" of multiple other purported

"experts" and some of those other "experts" provided oral testimony before the federal court in

Arizona, but Plaintiff did not testify—which furthered the concealment of her identity from the

public.  (Compl. ¶¶ 20-21).  By December 9, 2020, all four of Powell's election lawsuits had been

dismissed.[4]  In dismissing Powell's Arizona lawsuit in which Plaintiff's "expert opinions" had

been submitted (Compl. ¶¶ 16-18), the federal court explained:

> Advancing several different theories, Plaintiffs allege that Arizona's
> Secretary of State and Governor conspired with various domestic
> and international actors to manipulate Arizona's 2020 General
> Election results allowing Joseph Biden to defeat Donald Trump in
> the presidential race.  The allegations they put forth to support their
> claims of fraud fail in their particularity and plausibility.  ***Plaintiffs
> append over three hundred pages of attachments, which are only
> impressive for their volume.  The various affidavits and expert
> reports are largely based on anonymous witnesses, hearsay, and
> irrelevant analysis of unrelated elections.[5]*** …
>
> But perhaps more concerning to the Court is that the ***"expert
> reports"*** reach implausible conclusions, often because they are
> derived from ***<u>wholly unreliable sources</u>***. …
>
> These insurmountable legal hurdles are exacerbated by
> insufficiently plead allegations of fraud, rendered implausible by the

---

[4] Minute Entry, *Pearson v. Kemp*, No. 12-cv-04809 (N.D. Ga. Dec. 7, 2020) (Dkt. 74); Order, *King v. Whitmer*, No. 20-cv-13134 (E.D. Mich. Dec. 7, 2020) (Dkt. 62); Order, *Feehan v. Wis. Elections Comm'n*, No. 20-cv-1771 (E.D. Wis. Dec. 9, 2020) (Dkt. 83); Order, *Bowyer v. Ducey*, No.20-cv-2321 (D. Ariz. Dec. 9, 2020) (Dkt. 84).

[5] Order at 24, *Bowyer v. Ducey*, No.20-cv-2321 (D. Ariz. Dec. 9, 2020) (Dkt. 84) (emphasis added).

multiple inadmissible affidavits, declarations, and expert reports upon which their Complaint relies.[6]

(Order at 24, 25, 28, *Bowyer v. Ducey*, No.20-cv-2321, (D. Ariz. Dec. 9, 2020) (Meier Decl. Ex. E) (emphasis added)).

In addition to dismissing the case she filed, the federal court in Michigan sanctioned Powell for her election litigation, explaining:

> This lawsuit represents ***a historic and profound abuse of the judicial process***. It is one thing to take on the charge of vindicating rights associated with an allegedly fraudulent election. It is another to take on the charge of ***deceiving a federal court and the American people*** into believing that rights were infringed, without regard to whether any laws or rights were in fact violated. This is what happened here. …
>
> *And this case was never about fraud—it was about undermining the People's faith in our democracy and debasing the judicial process to do so.*

(Op. & Order at 1, 3, King v. Whitmer, No. 20-cv-13134 (E.D. Mich. Aug. 25, 2021) (Meier Decl. Ex. F) (bold italics emphasis added; italics emphasis in original).

### *Dominion publicly calls on Sidney Powell to retract her false claims and makes related public statements about Sidney Powell*

On December 16, 2020, Dominion's attorneys sent Powell a letter detailing the evidence rebutting her claims about Dominion, including that audits and hand recounts of ballots had

---

[6] *Id.* at 25, 28. (emphasis added). In her Complaint in the current action, Plaintiff falsely claims that the Arizona Court "failed/refused" to review or examine her declaration. (Compl. ¶¶ 22-24, 26). However, the above-referenced excerpts from the Arizona court's order make clear on their face that the Court did review the "multiple inadmissible affidavits, declarations, and expert reports upon which [the] Complaint relie[d]," including Plaintiff's declaration. Order at 24, *Bowyer v. Ducey*, No.20-cv-2321 (D. Ariz. Dec. 9, 2020) (Dkt. 84). On top of that, citing the Arizona court's order, Plaintiff herself admits: "[T]he United States District Court for the District of Arizona stated: 'But perhaps more concerning to the Court is that the "expert reports" reach implausible conclusions often because they are derived from wholly unreliable sources.'" (Compl. ¶ 19). Therefore, Plaintiff's conclusory allegation that the Arizona court abdicated its role and did not consider her declaration should be rejected out of hand because it is belied by her own allegation and the court order she incorporated by reference into her Complaint.

confirmed the accuracy of the vote counts from Dominion machines and that Trump appointee Chris Krebs had publicly confirmed that there was "no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised." (Meier Decl. Ex. A). On December 17, 2020 and January 8, 2021, Dominion made public statements about Sidney Powell. (Press Release, Dominion Voting Systems, Dominion Demands Retraction of Sidney Powell's Defamatory Falsehoods (Dec. 17, 2020) (*id.* Ex. B); Press Release, Dominion Voting Systems, Dominion Filed Defamation Suit Against Sidney Powell (Jan. 8, 2020) (*id.* Ex. C)). Dominion did not mention or refer to Plaintiff in its retraction demand letter to Powell or its public statements about Powell. (*Id.* Exs. A, B, & C).

### *Dominion sues Sidney Powell for defamation*

On January 8, 2020, Dominion sued Powell for defamation in the United States District Court for the District of Columbia. (Compl. ¶ 54). Because relying on a facially unreliable source is relevant to a defamer's reckless disregard for the truth, *see St. Amant v. Thompson*, 390 U.S. 727, 732 (1968), Dominion's defamation complaint against Powell alleged numerous facts that bore on the lack of credibility of various sources whose declarations Powell had used in the lawsuits she filed. For example, Dominion's complaint against Powell alleges that:

> The United States District Court for the District of Arizona found that the evidence put forward by Powell and [Lin] Wood was impressive only for its volume and was "largely based on anonymous witnesses, hearsay, and irrelevant analysis of unrelated elections," and includes "expert reports" that "reach implausible conclusions, often because they are derived from wholly unreliable sources." Order at 24-25, *Bowyer v. Ducey*, No. 2-20-cv-02321 (D. Ariz. Dec. 9, 2020) (Dkt. 84). The "wholly unreliable sources" put forward by Powell and Wood in that case (whose declarations were posted on Powell's fundraising website) included Terpsichore Maras-Lindeman, Russell Ramsland, William Briggs, and Josh Merritt a.k.a. "Spyder."

(Dominion Compl. ¶ 82 (Meier Decl. Ex. D).

In addition, citing and attaching the relevant court records, Dominion's defamation complaint against Powell alleged at paragraph 105 that:

> According to a publicly available court order, Terpsichore Maras-Lindeman is a serial liar and con artist.[7] After serving in the Navy for less than a year, Maras-Lindeman created a profile on Together We Served, an online veteran community, and falsely claimed an extensive military career—including that she had reached the rank of lieutenant, served in the Office of Naval Intelligence and in combat zones in the Republic of Kosovo, Afghanistan, and Iraq, and was awarded multiple medals including a Purple Heart.[8] In a recent fraud case, attorneys for the state of North Dakota said that Maras-Lindeman falsely claimed to be a doctor.[9] They also said she used multiple aliases and social security numbers and created exaggerated online resumes as part of what they called "a persistent effort … to deceive others."[10] They alleged that Maras-Lindeman organized a charitable event to raise funds for homeless shelters, a Catholic school, and a monument, but then used money she collected on purchases for herself at Wal-Mart, McDonald's, QVC, and elsewhere.[11] A judge ordered Maras-Lindeman to pay more than $25,000 after finding that she violated consumer protection

---

[7] Findings of Fact, Conclusions of Law, and Order for Judgment, *State v. Maras*, No. 51-2018-CV-1339 (N. D. Dist. Ct. N. Cent. Jud. Sept. 11, 2020), https://attorneygeneral.nd.gov/sites/ag/files/documents/RecentActions/2020-09-14-MagicCityChristmas-Judgment.pdf (Dominion Compl. at Ex. 52 (Meier Decl. Ex. D)); *see also* Jon Swaine, Powell's secret intelligence contractor witness is a pro-Trump podcaster, Wash. Post (Dec. 24, 2020), https://www.washingtonpost.com/investigations/sidney-powells-secret-intelligence-contractorwitness-is-a-pro-trump-podcaster/2020/12/24/d5a1ab9e-4403-11eb-a277-49a6d1f9dff1_story.html (Dominion Compl. at Ex. 53 (Meier Decl. Ex. D )).

[8] LT Terpsichore Lindeman, Together We Served, (Mar. 5, 2020), https://web.archive.org/web/20200305152810/https%3A/navy.togetherweserved.com/usn/servlet/tws.webapp.WebApp?cmd=SBVTimeLine&type=Person&ID=506419 (Dominion Compl. at Ex. 54 (Meier Decl. Ex. D)); *Id.* at Ex. 53.

[9] Meier Decl. Ex. D at Ex. 52; *see also id.* at Ex. 53.

[10] *Id.*; Compl. at 26, *State v. Maras*, No. 51-218-cv-1339 (N.D. Dist. Ct. Jul. 2, 2018) (Meier Decl. Ex. D at Ex. 55).

[11] Compl. at 26, *State v. Maras*, No. 51-218-cv-1339 (N.D. Dist. Ct. Jul. 2, 2018) Meier Decl. Ex. D at Ex. 55).

laws by misspending money she raised and soliciting donations while misrepresenting her experience and education.[12]

(*Id.* at ¶ 105).

Although Powell moved to dismiss Dominion's defamation complaint, arguing that she could not have "entertained serious doubts as to the truth" or acted with a high degree of awareness" of the "probable falsity" of her claims "because she relied on sworn declarations" from Plaintiff and others, the Honorable Carl J. Nichols ejected that argument and denied Powell's motion to dismiss.[13]

### *Procedural History*

On August 16, 2021, Plaintiff filed a defamation lawsuit against Dominion in the United States District Court for the Middle District of Tennessee, seeking $3.4 billion in damages.[14] Plaintiff voluntarily dismissed that case on October 25, 2021, two days before Dominion's responsive pleadings were due. (*See* Notice of Voluntary Dismissal, *Maras v. Dominion*, No. 21-cv-00636 (M.D. Tenn. Oct. 25, 2021) (Dkt. 16)). Four days later, Plaintiff filed a "Verified Complaint" together with an "Amended Verified Complaint" in the Hamilton County Circuit

---

[12] Jon Swaine, *Powell's secret intelligence contractor witness is a pro-Trump podcaster*, Wash. Post (Dec. 24, 2020), https://www.washingtonpost.com/investigations/sidney-powells-secret-intelligence-contractorwitness-is-a-pro-trump-podcaster/2020/12/24/d5a1ab9e-4403-11eb-a277-49a6d1f9dff1_story.html (Dominion Compl. at Ex. 53 (Meier Decl. Ex. D) ("A judge ultimately found that Maras-Lindeman violated consumer protection laws by, among other things, misspending money she raised and soliciting donations while misrepresenting her experience and education. He ordered her to pay more than $25,000.")); Meier Decl. at Ex. D at Ex. 52 (citing Findings of Fact, Conclusions of Law, and Order for Judgment, *State v. Maras*, No. 51-2018-CV-01339 (N. D. Dist. Ct. N. Cent. Jud. Sept. 11, 2020), https://attorneygeneral.nd.gov/sites/ag/files/documents/RecentActions/2020-09-14-MagicCityChristmas-Judgment.pdf); Meier Decl. Ex. C at Ex. 53; Meier Decl. Ex. C at Ex. 54; Compl. at 26, *State v. Maras*, No. 51-2018-cv-01339 (N. D. Dist. Ct. N. Cent. Jud. Jul. 2, 2018) (Meier Decl. Ex. C at Ex. 55).

[13] *See* Mem. & Op. at 20, *Dominion v. Powell*, No. 21-cv-00040 (D.D.C. Mar. 22, 2021) (Dkt. 45).

[14] Compl. at 8, *Maras v. Dominion*, No. 21-cv-00636 (M.D. Tenn. Aug. 26, 2021) (Dkt. 1).

Court against Dominion, Congressman Steve Cohen, and several media outlets. (*Maras v. Chattanooga News Chron.*, No. 21C1017, (Hamilton Cty. Cir. Ct. Dec. 17, 2021)). The same day she commenced this case in state court, Plaintiff filed a subpoena demanding that the United States District Court for the Northern District of Georgia produce documents that are irrelevant to her defamation claims in this case. (Notice of Removal, Ex. B at ECF pp. 21-24 (Dkt. 1-2)). She later filed a Motion for Show Cause to enforce the subpoena, and attempted to initiate contempt proceedings in state court against the United States District Court for the Northern District of Georgia. (Pl.'s Mot. for Show Cause, *Maras v. Chattanooga News Chron.*, No. 21C1017, (Hamilton Cty. Cir. Ct. Dec. 17, 2021) (Dkt. 13)). Defendant Congressman Steve Cohen removed the case from Hamilton County Chancery Court to this Court on December 27, 2021. (Dkt. 1). This motion follows.

## ARGUMENT

## I.     THE COURT LACKS PERSONAL JURISDICTION OVER DOMINION.

"Motions to dismiss under Rule 12(b)(2) involve burden shifting." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020). At the outset, the plaintiff bears the burden of establishing a prima facie case for personal jurisdiction. *Id.*; *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261–62 (6th Cir. 1996)). This burden requires the plaintiff to facially establish personal jurisdiction "over each defendant ***independently***," *Beydoun*, 768 F.3d at 504 (emphasis added) (quoting *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006)), and plead "with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F. 3d 883, 887 (6th Cir. 2002).

If the plaintiff establishes a prima facie case for personal jurisdiction, the burden shifts to the defendant, whose motion to dismiss must be "properly supported with evidence." *Malone*, 965 F.3d at 504 (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). If the defendant meets that burden, the burden shifts once again back to the plaintiff, who may no longer "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* (quoting *Theunissen*, 935 F.2d at 1458).

There are no facts, alleged in the Complaint or otherwise, that come close to sufficient grounds for the Court to exercise personal jurisdiction over Dominion on Plaintiff's claims. The Due Process Clause establishes the limits to the Court's jurisdictional powers. *Asahi Metal Indus. Co. v. Super. Ct. of Cali. Solano Cty.*, 480 U.S. 102, 108 (1987). For personal jurisdiction to comport with the Due Process Clause, (1) the non-resident defendant must have "'certain minimum contacts'" with the forum state that are such that (2) the maintenance of the lawsuit in the state would "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Asahi*, 480 U.S. at 113.

Under the minimum contacts prong, courts recognize two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, n.8-9 (1984); *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). For a corporation, general jurisdiction exists in two places, its "place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). By contrast, specific jurisdiction may be asserted only when the plaintiff's cause of action arises from or is related to the nonresident defendant's activities in or contacts with the forum state. *Helicopteros*, 466 U.S. at 414 n.8; *Intera Corp.*, 428 F.3d at 615. Because the companies that make up Dominion are not Tennessee companies and are not at home in Tennessee, and because Plaintiff's defamation

claims do not arise out of or relate to Dominion's vanishingly small contacts with Tennessee, the Complaint against Dominion must be dismissed for lack of personal jurisdiction.

### A.     The Court Lacks General Jurisdiction Over Dominion.

The Court does not have general personal jurisdiction over the Dominion Defendants because they are not incorporated in and do not have their principal places of business in Tennessee. *BNSF*, 137 S. Ct. at 1558; *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). The Dominion Defendants are not incorporated in Tennessee, and they are not "at home" in the state. US Dominion, Inc. and Dominion Voting Systems, Inc. are both ***Delaware*** corporations that have their principal places of business in ***Colorado***. (Declaration of Nicole Nollette ¶ 5 ("Nollette Decl.")). Dominion Voting Systems Corporation is an ***Ontario*** corporation that has its principal place of business in ***Ontario***. (*Id.* ¶ 6). Thus, general jurisdiction based on the Dominion Defendants' place of incorporation or principal place of business cannot lie. *BNSF*, 137 S. Ct. at 1558; *Daimler*, 571 U.S. at 139.

Moreover, this is not the "exceptional case" in which the Dominion Defendants have such substantial, continuous, and systematic contacts with Tennessee that they would be deemed to effectively be "at home" in the state. *BNSF*, 137 S. Ct. at 1558; *Daimler*, 571 U.S. at 139. US Dominion, Inc. and Dominion Voting Systems Corporation have ***no contacts with Tennessee at all***. Those entities carry on no activity in Tennessee. They have no offices in Tennessee. They own no property in Tennessee. They sell no products and provide no services in Tennessee. They do not solicit any business in Tennessee. They do not employ anyone in Tennessee. And they do not avail themselves of any of the privileges and benefits of Tennessee law. (Nollette Decl. ¶ 9). Thus, there is no basis for the Court to exercise general jurisdiction over those two entities. *BNSF*, 137 S. Ct. at 1558; *Daimler*, 571 U.S. at 139.

Dominion Voting Systems, Inc.'s contacts with Tennessee are limited and cannot be characterized as so substantial, continuous, and systematic that it is "at home" in Tennessee. Dominion Voting Systems, Inc. has no office and does not own any property in Tennessee. (Nollette Decl. ¶ 10). Of the company's 127 employees, Dominion Voting Systems, Inc. employs only one employee in Tennessee. (*Id.* ¶ 11). That lone employee works remotely out of her home as a matter of convenience and works on matters entirely outside of Tennessee. (*Id.*). Of the company's approximately 2,850 contracts to provide voting machines and related services, Dominion Voting Systems, Inc. only has two contracts in Tennessee, one with Hamilton County, Tennessee and the second with Williamson County, Tennessee. (*Id.* ¶ 12). That represents only 0.07% of the company's contracts with third parties to provide voting machines and related services. (*Id.*). Even in those instances, the contracts do not involve Dominion Voting Systems, Inc. providing services on a continuous basis. Instead, they call for providing voting machines and support services only in connection with public elections that are duly called and administered by county officials. (*Id.*).

The United States Supreme Court's decision in *BNSF*, 137 S.Ct. 1549, is instructive. In *BNSF*, the plaintiff was injured while working for the defendant railroad company, which has operations across the country. *Id.* at 1553. The plaintiff did not reside in Montana and was not injured in Montana. *Id.* Moreover, the defendant was not a Montana corporation and did not have its principal place of business in Montanan. *Id.* However, the plaintiff still filed suit in a Montana state court, arguing that the Montana court had general personal jurisdiction over the defendant because the defendant conducted business in the state. *Id.* In support of that position, the plaintiff showed that the defendant owned over 2,000 miles of railroad track and employed more than 2,000 people in Montana. *Id.* at 1559. The Supreme Court rejected the plaintiff's argument, stating:

[A]s we observed in *Daimler*, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." (citation omitted). Rather, the inquiry "calls for an appraisal of a corporation's activities in their entirety"; "[a] corporation that operates in many places can scarcely be deemed at home in all of them." (citation omitted).

*Id.* (quoting *Daimler*, 137 S.Ct. at 762, n.20). The Court went on to hold that in view of the fact that only a small portion of the defendants' business was conducted in Montana, the Montana court could not exercise general personal jurisdiction over the defendant on claims that were unrelated to the defendant's actual activities in the state. *Id.*

Similarly, here, Plaintiff does not reside in Tennessee and does not claim that she was injured in Tennessee. Moreover, Dominion Voting Systems, Inc. is not incorporated in and does not have its principal place of business in Tennessee. Further, Dominion Voting Systems, Inc.'s activities in Tennessee represent only a tiny fraction of the company's overall business activities across the country. Indeed, Dominion Voting Systems, Inc.'s activities in Tennessee do not come close to the activates of the defendant in *BNSF* in the forum state, which the Supreme Court found were insufficient to form the basis of general jurisdiction. Thus, Dominion Voting Systems, Inc.'s limited contacts with Tennessee cannot be considered as being so substantial, continuous, and systematic that Dominion Voting System, Inc. is effectively "at home" in Tennessee. Thus, exercise of general personal jurisdiction over Dominion Voting Systems, Inc. would not be proper.

## B. The Court Lacks Specific Jurisdiction Over Dominion.

Likewise, the Court cannot exercise specific jurisdiction over Dominion. Plaintiff does not even allege that the Court has specific personal jurisdiction over Dominion. Instead, as noted above, Plaintiff alleges only that "[t]he Defendants are subject to the ***general personal jurisdiction*** of this Court . . . ." (Compl. ¶ 12 (emphasis added)).

Specific personal jurisdiction can be asserted only when the plaintiff's cause of action arises from or is related to the nonresident defendant's activities in or contacts with the forum state.

*Helicopteros*, 466 U.S. at 414 n.8.   Here, Plaintiff's claim against Dominion is based solely on statements that were drafted in and published from or filed in the Washington, D.C. metropolitan area and Toronto, ***not Tennessee***.   (Compl. ¶ 54; Meier Decl. ¶¶ 5-8).   Plaintiff previously lived in North Dakota and now lives in Ohio, ***not Tennessee***.   (N.D. State Compl. at 3; Compl. ¶ 1).   Her declaration discusses Arizona, Wisconsin, Michigan, Georgia, and Pennsylvania, ***not Tennessee***. (Compl. at Ex. 1; Compl. at Ex. 13, *Feehan v. Wis. Elections Comm'n*, No. 20-cv-1771 (E.D. Wis. Dec. 1, 2020) (Dkt. 9-13); Compl. at Ex. 13, *Bowyer v. Ducey*, No.20-cv-2321 (D. Ariz. Dec. 2, 2020) (Dkt 1-5)).   And her declaration was filed by Powell—a Texas attorney—in Arizona and Wisconsin, ***not Tennessee***.   (Compl. ¶ 15; Compl. at Ex. 13, *Feehan v. Wis. Elections Comm'n*, No. 20-cv-1771 (E.D. Wis. Dec. 1, 2020) (Dkt 9-13); Compl. at Ex. 13, *Bowyer v. Ducey*, No. 20-cv-2321 (D. Ariz. Dec. 2, 2020) (Dkt. 1-5)).   In short, Tennessee has nothing to do with this case and the exercise of personal jurisdiction over Dominion here would "offend traditional notions of fair play and substantial justice."   *Int'l Shoe*, 326 U.S. at 316; *see also Helicopteros*, 466 U.S. at 414 n.8; *Intera Corp.*, 428 F.3d at 615.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint.   *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (citation omitted). A motion to dismiss should be granted when the plaintiff's allegations fail to establish a viable cause of action as a matter of law.   *Id.* at 562.

When presented with a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in favor of the plaintiff, accept the factual allegations set forth in the complaint as true, and determine whether the plaintiff's factual allegations present plausible claims.   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).   "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); (citing *Twombly*, 550 U.S. at 556). However, although the allegations of a complaint must be accepted as true, the Court need not "accept as true legal conclusions or unwarranted factual inferences." *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Additionally, "when a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). A document is central to the claims in the complaint when it is referred to in a complaint and its content impacts the validity of the plaintiff's claims. *See SunTrust Bank v. Stoner*, 2008 WL 4443281, at *2 (E.D. Tenn. Sept. 26, 2008); *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 947 (N.D. Ill. 2011). The court can also take judicial notice of proceedings in other courts of record. *Buchanan v. Pilgrim's Pride Corp.*, 2011 WL 30473333, *1 (E.D. Tenn. July 25, 2011).

To recover for defamation, a plaintiff must establish, among other things, (1) an unprivileged false statement of fact (2) "of and concerning" the plaintiff (3) that is defamatory and (4) published with the requisite degree of fault. *See Brown v. Mapco Express, Inc.*, 393 S.W.3d 696, 708 (Tenn. Ct. App. 2012) (upholding trial court's dismissal of defamation claims premised on true statements). Here, Plaintiff's Complaint fails to state a claim because (1) Dominion did not make any public statements about Plaintiff; and (2) the statements in Dominion's complaint against Powell are absolutely privileged.

**A.   Dominion's retraction demand letter to Sidney Powell and its public statements about Sidney Powell are not "of and concerning" Plaintiff.**

To prevail on a defamation claim, a plaintiff must show that the allegedly defamatory statement was "of and concerning" her. *Steele v. Ritz*, No. W200802125COAR3CV, 2009 WL 4825183, at *3 (Tenn. Ct. App. Dec. 16, 2009); *Pullman Indus., Inc. v. Mfrs. Enameling Corp.*, 15 F. App'x 297, 301 (6th Cir. 2001) (upholding trial court's dismissal because allegedly defamatory statements did not concern plaintiff). The law is clear that the plaintiff must be "the subject of the alleged defamatory" statement. *Stones River Motors, Inc. v. Mid-S. Publ'g Co.*, 651 S.W.2d 713, 717 (Tenn. Ct. App. 1983) (abrogated on other grounds) ("liability for defamation is not established unless the allegedly defamatory statement is in fact understood by a third person as referring to plaintiff"); *see also Mich. United Conservation Clubs v. CBS News*, 665 F.2d 110, 112 (6th Cir. 1981) (affirming dismissal because "the individual plaintiffs failed to establish a prima facie case that the [alleged libels] concerned them personally and explaining that "[v]ague, general references . . . do not constitute actionable defamation").

It is for this Court to determine, as a matter of law in the first instance, whether the allegedly defamatory statements are "of and concerning" Plaintiff. This is a basic gatekeeping function, and courts in Tennessee and across the country routinely dismiss cases that fail to satisfy the "of and concerning" requirement. *See, e.g., Steele*, 2009 WL 4825183, at *3; *Cawley v. Swearer*, 936 F.2d 572 (6th Cir. 1991); *Luhn v. Scott*, No. 19-cv-1180, 2019 WL 5810309, at *4 (D.D.C. Nov.7, 2019); *Marsh v. Hollander*, 339 F. Supp. 2d 1, 9 n.10 (D.D.C. 2004); *Alf v. Buffalo News, Inc.*, 100 A.D.3d 1487,1488 (N.Y. App. Div. 2012), *aff'd*, 995 N.E.2d 168 (N.Y. 2013); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 399–400 (2d Cir. 2006) ("The 'of and concerning' requirement stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them.").

Plaintiff alleges that she was defamed by Dominion's letter to Powell and related public statements about Powell. (*See* Compl. ¶¶ 38-49). As Plaintiff concedes, the challenged statements refer to "Attorney Sidney Powell, The Kraken, [and] Attorney Sidney Powell's election fraud accusations and/or conclusions." (Compl. ¶ 31). ***Plaintiff is not mentioned anywhere in Dominion's retraction demand letter to Powell or Dominion's public statements about Powell***, and Plaintiff's creative use of brackets to alter Dominion's statements does not change that. (*See* Meier Decl. Exs. A, B, and C). Plaintiff's claims must be dismissed because she cannot pursue a defamation claim based on statements about Powell. *Steele*, 2009 WL 4825183, at *3 ("A plaintiff may not support a claim for defamation based on an alleged defamatory statement made 'of and concerning' a third party.").

The Tennessee Court of Appeals decision in *Steele*, 2009 WL 4825183, is instructive. In that case, an adult club and employees of different adult entertainment businesses sued the defendant for defamation. *Id.* at *1. The defendant was allegedly quoted as saying that "these girls were sexually abused by a family member … and have an addiction to drugs or alcohol … these clubs feed on that." *Id.* The court found that the plaintiffs' claim did not meet the "of and concerning" requirement as a matter of law. The court held that "[t]he plaintiffs do not allege that 'these girls' and 'these clubs' referenced in the statement are or include the plaintiffs, nor is there an allegation that the statement referred to adult entertainment business in Shelby County or the female employees thereof." *Id.* Furthermore, the court held that the plaintiffs did not allege that a reasonable person would believe the statement referred to the specific plaintiffs in the case and did not offer any extrinsic facts showing that the statement referred specifically to the plaintiffs. *Id.* at *3.

Similarly, here, Dominion's statements directed to Powell that do not reference Plaintiff and cannot reasonably be construed as being directed at Plaintiff cannot be construed as being of and concerning Plaintiff. The Dominion Defendants submit that there is no legal authority that would countenance Plaintiff's position that she can sue for defamation based on statements that were expressly directed to a third party, in this case being Powell.

**B.     The statements in Dominion's complaint against Powell are absolutely privileged.**

Plaintiff also claims that Dominion defamed her in its defamation complaint against Powell, which was filed "[i]n the United States District Court for the District of Columbia, Case No. 1:21-cv-00040, filed January 8, 2021." (Compl. ¶ 78). As an initial matter, Plaintiff's defamation claim fails because the statements about her in Dominion's defamation complaint against Powell are true and were made in reliance on the court records in the consumer fraud action against Plaintiff in the North Dakota. *See Hanas v. Seterus, Inc.*, 92 F. Supp. 3d 747, 753 (E.D. Tenn. 2015) ("Truth is an absolute defense to a defamation claim."); *Brown*, 393 S.W.3d at 708 (to prevail on a defamation claim, the defamatory statement must be published with the requisite degree of fault).

But the Court does not need to resolve the issues of truthfulness or fault because statements in Dominion's defamation complaint are absolutely protected under the litigation privilege. The absolute litigation privilege guarantees litigants "the freedom to institute an action without fear of being sued based on statements made in the course of the proceeding[.]" *See Goetz v. Autin*, 2016 WL 537818, at *10 (Tenn. Ct. App. Feb. 10, 2016). Without exception, "statements made in the course of a judicial proceeding that are relevant and pertinent to the issues involved are absolutely privileged and cannot be the predicate for liability in an action for libel." *Id.* (quoting *Jones v. State*, 426 S.W.3d 50, 57 (Tenn. 2013)). The Tennessee Supreme Court "has long

accepted" the litigation privilege as settled law. *Simpson-Strong Tie Co. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 23 (Tenn. 2007) ("[T]his Court has long accepted the litigation privilege as an important tool in the pursuit of justice."); *see also Henrick v. Mealor*, No. 3:18-cv-00621, 2019 WL 3027013, at *3 (M.D. Tenn. July 11, 2019) (dismissing defamation claim because of the litigation privilege). Dominion's citations and references to court records establishing that Plaintiff is a wholly unreliable source who was fined by a court for defrauding consumers are plainly relevant and pertinent to their defamation claim against Sidney Powell, because Powell's reliance on facially unreliable sources is evidence that Powell recklessly disregarded the truth. *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Plaintiff's defamation claim based on Dominion's complaint against Powell is therefore barred as a matter of black-letter law. *Goetz*, 2016 WL 537818, at *10.

## CONCLUSION

Because the Court lacks personal jurisdiction over Dominion and because Plaintiff's Complaint fails to state a claim, Dominion respectfully requests that its motion to dismiss be granted and the Plaintiff's claims against Dominion be dismissed with prejudice.


Dated: January 20, 2022    Respectfully submitted,

             */s/ W. Scott Sims*
             W. Scott Sims (#17563)
             Michael R. O'Neill (#34982)
             SIMS|FUNK, PLC
             3322 West End Ave., #200
             Nashville, TN 37203
             (615) 292-9335
             (615) 649-8565


             *Counsel for Dominion Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2022, a copy of the foregoing was filed via the

Court's CM/ECF system which will send notice of this filing via electronic mail notice to the

following:

| | |
|---|---|
| Russell A. Newman<br>The Newman Law Firm<br>6688 Nolensville Road<br>Suite 108-22<br>Brentwood, TN 37027<br>russell@thenewmanlawfirm.com | Todd Tatelman<br>Sarah Clouse<br>United States House of Representatives,<br>General Counsel<br>219 Cannon House Office Building<br>Washington, DC 20515<br>202-225-9700<br>todd.tatelman@mail.house.gov<br>sarah.clouse@mail.house.gov |
| Douglas N. Letter<br>Office of General Counsel<br>U.S. House of Representatives<br>5140 O'Neill House Office Building<br>Washington, D.C. 20515<br>(202) 225-9700<br>Douglas.Letter@mail.house.gov | Robb S Harvey<br>Waller, Lansden, Dortch & Davis, LLP<br>(Nashville)<br>Nashville City Center<br>511 Union Street<br>Suite 2700<br>Nashville, TN 37219-8966<br>615-244-6380<br>615-244-6804 (fax)<br>robb.harvey@wallerlaw.com |

And sent via U.S. Mail to the following:

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA<br>75 Broadway Street, Suite 202<br>San Francisco, CA 94111 | ALI ABDUL RAZAQ AKBAR<br>A/K/A ALI ALEXANDER<br>5125 Pinellas Avenue<br>Keller, TX 76244 |

*/s/ W. Scott Sims*
W. Scott Sims

21