# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE AT CHATTANOOGA

TERPSEHORE MARAS,

            *Plaintiff*,

v.

CHATTANOOGA NEWS CHRONICLE, *et al.*,

            *Defendants*.

Case No. 1:21-cv-317

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OF THE HONORABLE STEVE COHEN

DOUGLAS N. LETTER (D.C. Bar No. 253492)
  *General Counsel*
TODD B. TATELMAN (VA Bar No. 66008)
  *Principal Deputy General Counsel*
SARAH CLOUSE (MA Bar No. 688187)
  *Associate General Counsel*
BROOKS M. HANNER (D.C. Bar No. 1005346)
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
douglas.letter@mail.house.gov

*Counsel for Defendant Steve Cohen*

January 21, 2022

# TABLE OF CONTENTS

                                                                                    **Page**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 1

ARGUMENT ........................................................................................................................... 4

I.      MS. MARAS FAILS TO ESTABLISH ARTICLE III STANDING .................................. 4

II.     THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE CLAIM
        AGAINST CONGRESSMAN COHEN IS BARRED BY THE DOCTRINE OF
        SOVEREIGN IMMUNITY ........................................................................................ 6

    A.  Congressman Cohen's Statements Were Made in His Official Capacity as a
        Member of Congress ............................................................................................ 8

    B.  Plaintiff's Claim Is Not Cognizable Under the Federal Tort Claims Act ......................... 13

    C.  The FTCA Precludes Ms. Maras's Request for Punitive Damages .................................. 15

III.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST CONGRESSMAN
        COHEN ................................................................................................................. 16

    A.  Ms. Maras Failed to Exhaust Her Administrative Remedies ............................................ 16

    B.  Ms. Maras's Defamation Claim is Precluded by the First Amendment ............................. 17

    C.  The Amended Complaint Fails to State a Claim for Defamation ...................................... 18

CONCLUSION ...................................................................................................................... 23

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                       **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................................4

*Battle v. A & E Television Networks, LLC,*
    837 F. Supp. 2d 767 (M.D. Tenn. 2011).........................................................................20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................................................4

*Binno v. Am. Bar Ass'n,*
    826 F.3d 338 (6th Cir. 2016) .....................................................................................5

*Boron Oil Co. v. Downie,*
    873 F.2d 67 (4th Cir. 1989) .......................................................................................6

*Bowyer v. Ducey,*
    506 F. Supp. 3d 699 (D. Ariz. 2020) .....................................................................1, 2

*Bullock v. Napolitano,*
    666 F.3d 281 (4th Cir. 2012) .....................................................................................8

*Connick v. Myers,*
    461 U.S. 138 (1983).................................................................................................17

*Copen v. United States,*
    3 F.4th 875 (6th Cir. 2021) .......................................................................................16

*Council on Am. Islamic Rels. v. Ballenger,*
    444 F.3d 659 (D.C. Cir. 2006) .............................................................8, 9, 10. 11, 12, 13

*Davis v. The Tennessean,*
    83 S.W.3d 125, 128 (Tenn. Ct. App. 2001)..............................................................14

*Does 1-10 v. Haaland,*
    973 F.3d 591, 602 (6th Cir. 2020) ......................................................................10, 12, 13

*Feyers v. United States,*
    749 F.2d 1222 (6th Cir. 1984) .................................................................................15

*Fulton v. Huenefeld,*
    191 F.3d 451 (Table) (6th Cir. 1999).......................................................................14

*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.,*
    491 F.3d 320 (6th Cir. 2007) ...................................................................................3

i

*Handley v. May,*
  588 S.W.2d 772 (Tenn. Ct. App.1979) ...................................................................23

*Henson v. NASA,*
  14 F.3d 1143 (6th Cir. 1994). ...............................................................................15

*Hibdon v. Grabowski,*
  195 S.W.3d 48 (Tenn. Ct. App. 2005) ..................................................21, 22, 23

*Horn-Brichetto v. Smith,*
  No. 17-cv-163, 2019 WL 921454 (E.D. Tenn. Feb. 25, 2019)................................9

*Houston Bus. Journal, Inc. v. Off. of Comptroller of Currency, U.S. Dep't of Treasury,*
  86 F.3d 1208 (D.C. Cir. 1996) ................................................................................7

*Ins. Rsch. Serv. Inc., v. Assocs. Fin. Corp.,*
  134 F. Supp. 54 (M.D. Tenn. 1955)......................................................................19

*Johnson v. Chapman,*
  327 F. Supp. 2d 895 (E.D. Tenn. 2004) .................................................................9

*Johnson v. Holder,*
  No. 11-cv-2650, 2012 WL 6947768 (D.S.C. Nov. 30, 2012)..................................8

*Johnson v. Louisville Int'l Airport,*
  No. 11-cv-216, 2011 WL 2710364 (W.D. Ky. July 12, 2011) .................................7

*Kardules v. City of Columbus,*
  95 F.3d 1335 (6th Cir. 1996) .............................................................................5, 6

*Kellom v. Quinn,*
  No. 20-1003, 2021 WL 4026789 (6th Cir. Sept. 3, 2021) ....................................16

*Keener v. Congress,*
  467 F.2d 952 (5th Cir. 1972) (per curiam)..........................................................7, 8

*Keyter v. McCain,*
  207 F. App'x 801 (9th Cir. 2006) ...........................................................................9

*Lambert v. United States,*
  No. 15-CV-147-PLR-HBG, 2016 WL 632461 (E.D. Tenn. Feb. 17, 2016)............15

*Lane v. Pena,*
  518 U.S. 187 (1996)................................................................................................7

*Larson v. Domestic & Foreign Com. Corp.,*
  337 U.S. 682 (1949)................................................................................................7

ii

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................5

*Lundstrum v. Lyng*,
    954 F.2d 1142 (6th Cir. 1991) ..............................................................16

*Maarawi v. U.S. Cong.*,
    24 F. App'x 43 (2d Cir. 2001) ..............................................................11

*Memphis Pub. Co. v. Nichols*,
    569 S.W.2d 412 (Tenn. 1978) ...............................................................23

*McKay v. Federspiel*,
    823 F.3d 862 (6th Cir. 2016) ..................................................................4

*McNeil v. United States*,
    508 U.S. 106 (1993) ..............................................................................16

*McWhorter v. Barre*,
    132 S.W.3d 354 (Tenn. Ct. App. 2003) ................................................22

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ..................................................................................19

*Moir v. Greater Cleveland Reg'l Transit Auth.*,
    895 F.2d 266 (6th Cir. 1990) ..................................................................5

*Moses v. Roland*,
    No. W201900902COAR3CV, 2021 WL 1140273 (Tenn. Ct. App. Mar. 25, 2021) ..............19

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) .........................................................................21, 22

*Nichols v. Muskingum Coll.*,
    318 F.3d 674 (6th Cir. 2003) ..................................................................4

*Ogle v. Hocker*,
    279 F. App'x 391 (6th Cir. 2008) .........................................................17

*Operation Rescue Nat'l v. United States*,
    975 F. Supp. 92 (D. Mass. 1997) ....................................................10, 14

*Osborn v. Haley*,
    549 U.S. 225 (2007) ................................................................................8

*Packingham v. North Carolina*,
    137 S. Ct. 1730 (2017) .....................................................................12, 18

iii

*Papasan v. Allain*,
478 U.S. 265 (1986)................................................................................4

*Press, Inc. v. Verran*,
569 S.W.2d 435 (Tenn. 1978)..............................................................21

*Rankin v. McPherson*,
483 U.S. 378 (1987)..............................................................................18

*Rector v. United States*,
243 Fed. App'x 976 (6th Cir. 2007) .....................................................14

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
78 F.3d 1125 (6th Cir. 1996) ..................................................................9

*Rockefeller v. Bingaman*,
234 F. App'x 852 (10th Cir. 2007) ......................................................7, 8

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976)..................................................................................5

*Sloan v. U.S. Dep't of Hous. & Urb. Dev.*,
236 F.3d 756 (D.C. Cir. 2001) .............................................................14

*Snyder v. Phelps*,
562 U.S. 443 (2011)..............................................................................18

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)............................................................................4, 5

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)..................................................................................5

*Steele v. Ritz*,
No. W2008-02125-R3-CV, 2009 WL 4825183 (Tenn. Ct. App. 2009)..................................19

*Stones River Motors, Inc. v. Mid-S. Publ'g Co.*,
651 S.W.2d 713 (Tenn. Ct. App. 1983) ................................................19

*Sullivan v. Baptist Memorial Hosp.*,
995 S.W.2d 569 (1999)..........................................................................18

*Taylor v. KeyCorp*,
680 F.3d 609 (6th Cir. 2012) ..................................................................4

*Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*,
759 F.3d 522 (6th Cir. 2014) ................................................................21

iv

*Tomlinson v. Kelley*,
   969 S.W.2d 402 (Tenn. Ct. App. 1997) ...................................................................22

*Torres v. CBS News*,
   854 F. Supp. 245 (S.D.N.Y. 1994) .......................................................................10

*Tri-State Hosp. Supply Corp. v. United States*,
   341 F.3d 571 (D.C. Cir. 2003) .............................................................................7

*United States v. Brewster*,
   408 U.S. 501 (1972) ..........................................................................................12

*United States v. Nordic Vill., Inc.*,
   503 U.S. 30 (1992) .............................................................................................7

*United States v. Rostenkowski*,
   59 F.3d 1291 (D.C. Cir. 1995) ...........................................................................10

*United States v. Sherwood*,
   312 U.S. 584 (1941) ............................................................................................6

*United States v. Smith*,
   499 U.S. 160 (1991) .....................................................................................14, 15

*Williams v. Detroit Bd. of Educ.*,
   306 F. App'x 943 (6th Cir. 2009) ..................................................................21, 22

*Williams o/b/o R.L.F. v. Berryhill*,
   Nos. 19-cv-02048, 19-cv-02072, 2019 WL 9104197 (W.D. Tenn. June 14, 2019) .................8

*Williams v. Comm'r of Soc. Sec.*,
   No. 19-cv-02048, 2020 WL 3490084 (W.D. Tenn. June 26, 2020) .........................................8

*Williams v. United States*,
   71 F.3d 502 (5th Cir. 1995) ...................................................................10, 13, 14

*Winpisinger v. Watson*,
   628 F.2d 133 (D.C. Cir. 1980) .............................................................................6

*Wolff v. United States*,
   76 F. App'x 867 (10th Cir. 2003) ........................................................................7

*Wuterich v. Murtha*,
   562 F.3d 375 (D.C. Cir. 2009) ...........................................................................12

*Zolman v. United States*,
   170 F. Supp. 2d 746 (W.D. Mich. 2001) ............................................................14

v

## Constitution and Statutes

Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq*..........................................................................4

    28 U.S.C. § 2674....................................................................................................................14, 15

    28 U.S.C. § 2675....................................................................................................................16, 17

    28 U.S.C. § 2679....................................................................................................................10, 14

    28 U.S.C. § 2680....................................................................................................................14, 15

## Other Authorities

U.S. House of Representatives, Comm. on House Admin., 116th Cong.,
*Members' Congressional Handbook* (2020)....................................................................11, 12

Adam Klasfeld, *Sidney Powell Tells Judge 'No Reasonable Person' Would
Believe Her Dominion Conspiracy Theories Were 'Statements of Fact'*, Law
& Crime News (Mar. 22, 2021), https://perma.cc/6WGJ-BGJZ .................................................2

Emily Czachor, *Who Is Terpsichore Maras-Lindeman? Powell Witness Identified
as a Pro-Trump Podcaster*, Newsweek (Dec. 25, 2020),
https://perma.cc/99W5-QHSL ....................................................................................................22

Jacob Shamsian & Sonam Sheth, *Trump and his allies filed more than 40 lawsuits
challenging the 2020 election results. All of them failed.*, Insider (Feb. 22,
2021), https://perma.cc/2GYW-DEPU .......................................................................................1

Jon Swaine, *Sidney Powell's Secret Intelligence Contractor Witness is a Pro-
Trump Podcaster*, Wash. Post. (Dec. 24, 2020), https://perma.cc/7J2Y-SJJW ......................22

Mary Papenfuss, *Sidney Powell's Key Election Witness is a Pro-Trump Podcaster
Once Sued for Fraud: Report*, HuffPost (Dec. 25, 2020),
https://perma.cc/6KZ9-MMT2...................................................................................................22

Steve Cohen (@RepCohen), Twitter (Mar. 23, 2021, 10:04 PM),
https://perma.cc/44VZ-NA6K .....................................................................................................2

## INTRODUCTION

Plaintiff Terpsehore Maras[1] seeks compensatory and punitive damages in addition to declaratory and injunctive relief arising from a tweet published on the official Twitter page of the Honorable Steve Cohen, U.S. Representative for the 9th Congressional District of Tennessee, *see* Am. Compl. (ECF No. 1-2). For the reasons set forth below, Ms. Maras's claims against Congressman Cohen must be dismissed both because this Court lacks subject matter jurisdiction and because the Complaint fails to state a claim upon which relief can be granted.

## BACKGROUND

Following the 2020 Presidential Election, former President Donald Trump and his allies filed more than 40 lawsuits challenging the election results.[2] Ms. Maras alleges that she provided sworn testimony, in the form of an affidavit, for one of those cases, *Bowyer v. Ducey*, in which attorney Sidney Powell represented the plaintiffs. Am. Compl. ¶¶ 14-17; 506 F. Supp. 3d 699 (D. Ariz. 2020). There, plaintiffs alleged "that Arizona's Secretary of State and Governor conspired with various domestic and international actors to manipulate Arizona's 2020 General Election results allowing Joseph Biden to defeat Donald Trump in the presidential race." 506 F. Supp. 3d at 721.

Ms. Maras's affidavit was one of 23 exhibits submitted with the complaint. Complaint, *Bowyer v. Ducey*, ECF No. 1. Ms. Maras alleges that, as an expert witness, she provided opinions and conclusions for use in the litigation, though her identity was redacted and she

---

[1] This Memorandum adopts the spelling of "Terpsehore" as it is used throughout the body of the Amended Complaint, *see e.g.*, Am. Compl. ¶ 1, though some underlying documents referenced in the Amended Complaint use the spelling "Terpsichore," *see e.g.*, ¶¶ 51-52.

[2] Jacob Shamsian & Sonam Sheth, *Trump and his allies filed more than 40 lawsuits challenging the 2020 election results. All of them failed.*, Insider (Feb. 22, 2021), https://perma.cc/2GYW-DEPU.

1

remained anonymous at the time. Am. Compl. ¶ 15, 35. Specifically, Ms. Maras opined on the use of "hardware components from companies based in foreign countries" and "addressed the concerns she had regarding foreign interference" in the election. Am. Compl. ¶ 18. Ms. Maras alleges that the *Bowyer* court's opinion discussed the over three hundred pages of affidavits and expert reports the plaintiffs submitted and described them as "largely based on anonymous witnesses, hearsay, and irrelevant analysis of unrelated elections," though the court did not specifically address her affidavit. Am. Compl. ¶¶ 19-26; 506 F. Supp. 3d at 721. Finding that "the 'expert reports' reach implausible conclusions, often because they are derived from wholly unreliable sources," the court dismissed the case on December 9, 2020. Am. Compl. ¶ 19; *Bowyer*, 506 F. Supp. 3d at 722.

On March 23, 2021, Congressman Cohen posted a tweet on his official Twitter account (@RepCohen) in which he shared a link to an online news article regarding subsequent litigation involving Sidney Powell. Am. Compl. ¶ 62.[3] The tweet linked to an article entitled, "Sidney Powell Tells Judge 'No Reasonable Person' Would Believe Her Dominion Conspiracy Theories Were 'Statements of Fact'" and the text of the headline itself. Am. Compl. ¶ 62. The article discussed Ms. Powell's legal position in a motion to dismiss in a defamation suit brought against her by Dominion Voting Systems.[4] Congressman Cohen's tweet also included a statement of his opinion and an interpretation of the article: "Trump@lawyer is saying the entire Trump 'Stop the Steal' & 'rigged election' was a Con Job on America&Trump supporters." *See* Am. Compl. ¶ 62.

---

[3] Steve Cohen (@RepCohen), Twitter (Mar. 23, 2021, 10:04 PM), https://perma.cc/44VZ-NA6K.

[4] Adam Klasfeld, *Sidney Powell Tells Judge 'No Reasonable Person' Would Believe Her Dominion Conspiracy Theories Were 'Statements of Fact'*, Law & Crime News (Mar. 22, 2021), https://perma.cc/6WGJ-BGJZ.

2

Ms. Maras's Complaint alleges that Congressman Cohen's tweet defamed her by "claiming that the election fraud movement was a con job," Am. Compl. ¶ 62, and posting an article asserting "that Sidney Powell's statements about the November 2020 election fraud were 'wild accusations' and 'outlandish claims' that 'are repeatedly labelled 'inherently improbable' and even 'impossible.''" *Id.* ¶ 64. Neither Congressman Cohen's tweet, nor the linked article, referred to Ms. Maras by name, or made any reference to Ms. Maras. *See* Am. Compl. ¶ 62. However, Ms. Maras alleges that, because she acted as one of Ms. Powell's expert witnesses in the Arizona litigation, statements that allegedly defame Ms. Powell also defame Ms. Maras. Am. Compl. ¶¶ 32-35 ("When the Defendants publish defamatory statements against Attorney Sidney Powell, the Kraken[,] or any of Attorney Sidney Powell's election fraud accusations and/or conclusions, the Defendants are defaming Plaintiff.").

Ms. Maras initially filed this suit in the Circuit Court of Hamilton County, Tennessee, seeking "compensatory damages of not less than $1,700,000,000," "punitive damages of not less than $1,700,000,000," and expenses, costs, and interest, in addition to a "permanent injunction requiring the removal of … Defendants' statements that are determined to be false and defamatory and enjoining the Defendants from repeating such statements in the future." Am. Compl. at 18-19. Pursuant to 28 U.S.C. § 1442, Congressman Cohen timely removed the case to this Court. *See* Notice of Removal (ECF No. 1). Congressman Cohen now moves to dismiss for the reasons stated below.

## STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Rule 12(b)(1), a district court "has wide discretion" to consider evidence outside the pleadings to assure itself of its own subject-matter jurisdiction. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir.

2007) (citation omitted).  The plaintiff bears the burden of proving that subject-matter jurisdiction properly exists in federal courts.  *See Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012); *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

In ruling on a motion to dismiss under Rule 12(b)(6), a district court must determine whether the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Under Rule 12(b)(6) a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## ARGUMENT

This Court has multiple independently dispositive grounds to dismiss this case against Congressman Cohen.  First, Ms. Maras cannot establish subject matter jurisdiction, both because she lacks standing and because her claim is barred by the doctrine of sovereign immunity.  The only potential waiver of sovereign immunity is the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq*. ("FTCA"), which is inapplicable to Ms. Maras's claim because she has failed to first exhaust her administrative remedies, and because the FTCA expressly precludes recovery for the type of claims asserted.  Furthermore, the Amended Complaint against Congressman Cohen must be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim upon which relief can be granted.

## I.     MS. MARAS FAILS TO ESTABLISH ARTICLE III STANDING

The "irreducible constitutional minimum" of standing is made up of three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted); *McKay v. Federspiel*, 823 F.3d 862, 866-67 (6th Cir. 2016).  To establish standing, a plaintiff must allege (1) an "injury in

4

fact," (2) "that is fairly traceable to the challenged conduct of the defendant," and (3) that is "likely to be redressed" in a judicial action. *Spokeo,* 578 U.S. at 338. "Where subject matter jurisdiction is challenged … the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Ms. Maras fails to meet her burden because she has not identified any injury that can be reasonably traceable to Congressman Cohen's tweet.

Assuming for the purposes of argument that Ms. Maras has adequately pleaded an actionable injury to her reputation, she fails to connect such an injury to the actions of Congressman Cohen. To satisfy the traceability element of Article III standing, a plaintiff must demonstrate "a fairly traceable connection between the … injury and the complained-of conduct of the defendant." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); *see also Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) ("To establish Article III standing, [Plaintiff] also must demonstrate a causal connection between his injury and the defendant's conduct."). Additionally, the injury must not be "the result of the independent action of some third party[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

These alleged facts fall far short of the requirement of "demonstrat[ing] that [Ms. Maras's] injuries were caused by [Congressman Cohen]." *Kardules v. City of Columbus*, 95 F.3d 1335, 1352 (6th Cir. 1996). It is manifestly unreasonable to conclude that a single tweet summarizing the contents of a news article—which itself comments on a motion filed in court by attorneys representing Sidney Powell—which does not name or even discuss Ms. Maras, could be construed to injure her reputation. "Courts are powerless to confer standing when the causal

5

link is too tenuous." *Id.* at 1353 (quoting *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980)).

To try to establish causation, Ms. Maras relies exclusively on the conclusory allegation that "[w]hen the Defendants publish defamatory statements against Attorney Sidney Powell … the Defendants are defaming Plaintiff." Am. Compl. ¶ 32. This tenuous logical leap is unsupported by any facts. Moreover, the Congressman's tweet was made three months after Ms. Maras had been identified and discussed explicitly by multiple news outlets. *See* Am. Comp. ¶¶ 51-52. The Amended Complaint pleads no facts that even attempt to explain how the Congressman's tweet, which did not mention Ms. Maras, caused her any specific injury separate from any reputational harm she had otherwise suffered by having her identity generally connected to the litigation that was strongly criticized by the court there and dismissed.

Because no facts exist that would allow Ms. Maras to establish the required element of causation, she cannot establish standing to sue Congressman Cohen. Accordingly, the Amended Complaint, as against Congressman Cohen, must be dismissed.

## II.     THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE CLAIM AGAINST CONGRESSMAN COHEN IS BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY

Even if Ms. Maras could establish standing, which she cannot, her claims against Congressman Cohen are barred by the doctrine of sovereign immunity because they arise out of actions taken in the Congressman's official capacity.

"The United States, as sovereign, is immune from suit save as it consents to be sued … and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted); *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989) ("[A]n action seeking specific relief against a federal

6

official, acting within the scope of his delegated authority, is an action against the United States, subject to governmental privilege of immunity.") (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 688 (1949)). This immunity extends to Members of Congress when sued in their official capacities. *See Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) ("[S]overeign immunity forecloses [Plaintiff's] claims against [Members of Congress] … as individuals acting in their official capacities."); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam) (sovereign immunity renders Congress immune from suit).

A waiver of sovereign immunity cannot be implied, but "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also, e.g.*, *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992) ("Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed." (internal quotation marks omitted)). It is a plaintiff's burden to prove "that the government has unequivocally waived its immunity." *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003) (citations omitted).

This case was initially filed in state court, where "[u]nequivocally, sovereign immunity shields the federal government from suit." *Wolff v. United States*, 76 F. App'x 867, 869 (10th Cir. 2003) (citing cases); *accord Houston Bus. Journal, Inc. v. Off. of Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1211 (D.C. Cir. 1996). Because jurisdiction upon removal under the federal officer removal provision, 28 U.S.C. § 1442, is derivative, federal courts cannot acquire subject-matter jurisdiction if the transferor state court lacked it in the first instance. *See Johnson v. Louisville Int'l Airport,* No. 11-cv-216, 2011 WL 2710364, at *2 (W.D. Ky. July 12, 2011) ("[T]he district courts within the Sixth Circuit have uniformly agreed that the derivative

jurisdiction doctrine applies to 28 U.S.C. § 1442.").[5] Thus, when—as here—the state court lacked subject matter jurisdiction prior to removal, that jurisdictional defect follows the matter to federal court when removed under 28 U.S.C. § 1442, where the matter must be dismissed. *See, e.g., Bullock v. Napolitano*, 666 F.3d 281, 286 (4th Cir. 2012).

Absent an express and unequivocal statutory waiver, courts, whether state or federal, lack jurisdiction over claims against Members of Congress sued in their official capacities. *See Rockefeller*, 234 F. App'x at 855-56; *see also Keener*, 467 F.2d at 953. Ms. Maras's Amended Complaint identifies no relevant statutory waiver of sovereign immunity—much less an express, unequivocal one. Accordingly, this Court must dismiss all claims against Congressman Cohen for lack of jurisdiction.

A. **Congressman Cohen's Statements Were Made in His Official Capacity as a Member of Congress**

Members of Congress, like other federal employees, enjoy "absolute immunity" from common law tort claims that challenge allegedly negligent or wrongful acts performed while acting within the scope of government employment. *See Osborn v. Haley*, 549 U.S. 225, 229-30 (2007). In determining whether a federal officer acted within the scope of his or her official duties, "courts apply the *respondeat superior* law in the state in which the alleged tort occurred." *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 663 (D.C. Cir. 2006).

_____

[5] *See also, e.g.*, *Williams o/b/o R.L.F. v. Berryhill*, Nos. 19-cv-02048, 19-cv-02072, 2019 WL 9104197, at *3 (W.D. Tenn. June 14, 2019), r*eport and recommendation adopted sub nom. Williams v. Comm'r of Soc. Sec.*, No. 19-cv-02048, 2020 WL 3490084 (W.D. Tenn. June 26, 2020) ("Because the [Tennessee] court lacked subject matter jurisdiction, so too does the district court after a removal pursuant to 28 U.S.C. § 1442."); *Johnson v. Holder*, No. 11-cv-2650, 2012 WL 6947768, at *2 (D.S.C. Nov. 30, 2012) ("Because the South Carolina state court did not possess subject matter jurisdiction over Plaintiff's [] action, this court did not acquire jurisdiction upon removal.").

8

Under Tennessee law, conduct is within the scope of employment so long as it is: (1) "of the kind [a party] is employed to perform;" (2) "occurs substantially within the authorized time and space limits;" (3) "is actuated, at least in part, by a purpose to serve the master;" and (4) "if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." *Johnson v. Chapman*, 327 F. Supp. 2d 895, 897 (E.D. Tenn. 2004). Where allegedly wrongful conduct is at issue, the inquiry "does not focus on the alleged wrongful nature of the employee's actions; rather, the issue is the actions complained of and whether those actions are so divergent that their very character severs the relationship of employer and employee." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1144 (6th Cir. 1996) (internal quotation marks and citation omitted). Even allegedly defamatory statements can fall within the scope of official duties. *See Ballenger*, 444 F.3d at 664-65 (finding allegedly defamatory statements made to press by Congressman were within scope of employment); *Horn-Brichetto v. Smith*, No. 17-cv-163, 2019 WL 921454, at *13 (E.D. Tenn. Feb. 25, 2019) (finding that allegedly defamatory statements contained in letter from District Attorney's Office to Parole Board were in scope of employment). The plaintiff bears the burden "to provide evidence from which it could reasonably be found" that the actions complained of were not within the scope of employment. *Johnson*, 327 F. Supp. 2d at 898.

The inquiry in this case is straightforward. While the Amended Complaint fails to specify the capacity in which Congressman Cohen is sued, the allegations make clear that Ms. Maras has sued Congressman Cohen "based on acts or omissions within the scope of [his] federal office[]." *Keyter v. McCain*, 207 F. App'x 801, 802 (9th Cir. 2006) (rejecting argument that plaintiff sued federal official defendants in their personal capacities when allegations in the complaint indicated otherwise). Regardless of how a plaintiff may label the defendant's

capacity, the FTCA precludes personal capacity actions by providing an "exclusive" remedy for tort claims that arise from official actions by federal employees. *See* 28 U.S.C. § 2679.

Here, the Amended Complaint exclusively relies on a post self-evidently issued from Congressman Cohen's officially maintained House of Representatives Twitter account regarding a matter of public concern. *See, e.g.*, Am. Compl. ¶ 62. As a federal official, "federal law defines the nature and contours of [Congressman Cohen's] … responsibilities," one of which is to communicate with constituents on matters of public concern. *Operation Rescue Nat'l v. United States*, 975 F. Supp. 92, 107 (D. Mass. 1997) (internal quotation marks and citation omitted). It has been recognized that "service in the United States Congress is not a job like any other, it is a constitutional role to be played upon a constitutional stage." *United States v. Rostenkowski*, 59 F.3d 1291, 1312 (D.C. Cir. 1995), *opinion supplemented on denial of reh'g*, 68 F.3d 489 (D.C. Cir. 1995).

Indeed, federal courts have recognized repeatedly that Members of Congress act in their official capacity, under color of office, when they "broadcast their views on pending legislation and related current events through press releases, televised speeches, interviews, and, as in the present case, through social media postings." *Does 1-10 v. Haaland*, 973 F.3d 591, 602 (6th Cir. 2020), *cert. denied sub nom. Does v. Haaland*, 141 S. Ct. 2466 (2021).[6] As such, if a Member's

---

[6] *See also, e.g.*, *Williams v. United States*, 71 F.3d 502, 507 (5th Cir. 1995) (noting that a "primary obligation of a Member of Congress in a representative democracy is to serve and respond to his or her constituents"); *Ballenger*, 444 F.3d at 665 ("A Member's ability to do his job as a legislator effectively is tied … to the Member's relationship with the public and in particular his constituents and colleagues in the Congress."); *Operation Rescue Nat'l*, 975 F. Supp. at 107 (holding that comments made by Senator Kennedy at a press conference were within the scope of his responsibilities); *Torres v. CBS News*, 854 F. Supp. 245, 247 (S.D.N.Y. 1994) (noting that Member of Congress's official duties include "communicat[ing] to constituents, either directly or by means of public media, on subjects of potential general interest to those constituents.").

"conduct was motivated—at least in part—by a legitimate desire to discharge his duty as a [C]ongressman," even comments containing allegedly defamatory statements are within the scope of a Member's official duties. *Ballenger*, 444 F.3d at 665; *see also Maarawi v. U.S. Cong.*, 24 F. App'x 43, 44 (2d Cir. 2001) (holding Congress protected by sovereign immunity from suit claiming that Members made derogatory remarks).

Additionally, the post was made on Congressman Cohen's official Twitter page, which he operates, with the support of his Congressional staff and official House resources, in his capacity as a Member of Congress. *See* Am. Compl. ¶ 62 (identifying the page as that of "Rep. Cohen" which links to his official House.gov website). Official social media accounts are routinely maintained by Members of Congress, and the House of Representatives imposes strict regulations that require Members to keep their official social media pages separate from any personal and/or campaign pages they may also operate. *See* U.S. House of Representatives, Comm. on House Admin., 116th Cong., *Members' Congressional Handbook*, at 31-32 (2020). The Members' Congressional Handbook defines social media accounts as "profiles, pages, channels or any similar presence on third-party sites that allow individuals or organizations to offer information about themselves to the public." *Id.* at 31. House regulations allow Members to use official funds to create and operate official social media pages. *Id.*

Moreover, anything posted on an official social media account "must be in compliance with Federal law and House Rules and Regulations applicable to official communications and germane to the conduct of the Member's official and representational duties." *Members' Congressional Handbook* at 32. Official social media pages (and websites) cannot be used for campaign or personal purposes; cannot generate, circulate, or otherwise encourage petitions; cannot include private advertisements or imply government endorsement of a product or service;

11

and cannot include grassroots lobbying. *Id.* A Member's official social media account must also clearly reflect the Member's official position (for example, Representative) in the account name. *Id.* at 31-32. Accordingly, official social media accounts established by a Member to communicate information as part of the Member's representational or legislative capacity are considered official House resources.

Statements issued on a Member of Congress's official social media accounts "fit within the wide range of legitimate errands performed for constituents, which includes preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress." *Haaland*, 973 F.3d at 602 (quoting *United States v. Brewster*, 408 U.S. 501, 512 (1972)) (cleaned up). Social media platforms are the "modern public square," *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017), and accordingly, "[t]here is no meaningful difference between tweets and the other kinds of public communications between an elected official and their constituents that have been held to be within the scope-of-employment" of a Member of Congress. *Haaland*, 973 F.3d at 602.

The mere allegation that a public statement is defamatory is insufficient to strip the statement of its official nature. The proper analysis looks to the nature of the communication as a whole, not to any individual statements contained within. *See, e.g.*, *Wuterich v. Murtha*, 562 F.3d 375, 384-85 (D.C. Cir. 2009) (where "underlying conduct" of giving an interview was "unquestionably of the kind that [the Congressman] was employed to perform as a Member of Congress," the entire statement was within the scope).

*Council on American Islamic Relations v. Ballenger*, 444 F.3d 659 (D.C. Cir. 2006), is directly on point. There, a Member of Congress made allegedly defamatory comments about the Council on American-Islamic Relations, referring to them as a "fund-raising arm for Hezbollah,"

during a telephone interview related to his pending divorce. 444 F.3d at 662. The D.C. Circuit explained that "[t]he appropriate question, then, is whether that telephone conversation—not the allegedly defamatory sentence—was the kind of conduct [the Congressman] was employed to perform." *Id.* at 664. Looking at the entire phone interview, the D.C. Circuit found that it was an action within the scope of the Congressman's duties and the "allegedly defamatory statement was incidental to the kind of conduct he was employed to perform." *Id.* at 664-65.

Similarly, in *Williams v. United States*, 71 F.3d 502 (5th Cir. 1995), a Member of Congress was sued for defamation where the alleged defamatory comments were made in the context of a broader television interview. Under those circumstances, the Fifth Circuit concluded "as a matter of law" that the entire interview, "including the alleged defamatory remarks and even assuming such remarks are defamatory," was an action that "clearly fell within the course and scope of his position as a Member of Congress." *Id.* at 506-07. Accordingly, the appropriate test for this court to apply is whether the act of posting the tweet itself is one done in an official capacity, which it clearly was.

Here, the tweet by Congressman Cohen was in response to highly publicized and politically charged events stemming from the public controversy over the 2020 election results. Congressman Cohen uses his official twitter account to communicate in his official capacity as a Member of Congress. Established caselaw clearly supports that the act of releasing a public statement on a matter of significant public concern is squarely within the scope of the official duties of a Member of Congress. *See Haaland,* 973 F.3d at 602; *Ballenger*, 444 F.3d at 664.

### B.  Plaintiff's Claim Is Not Cognizable Under the Federal Tort Claims Act

Because Ms. Maras seeks relief for a common law tort stemming from official capacity actions by Congressman Cohen, the FTCA provides the only potential avenue for relief. The FTCA waives sovereign immunity for certain torts committed by government officials in their

13

official capacities. 28 U.S.C. §§ 2674, 2680(h); *see Sloan v. U.S. Dep't of Hous. & Urb. Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001) (FTCA waives sovereign immunity "over claims arising from certain torts committed by federal employees in the scope of their employment"). The remedy provided under the FTCA "is exclusive of any other civil action or proceeding for money damages." *United States v. Smith*, 499 U.S. 160, 161-62 (1991) (quoting 28 U.S.C. § 2679(b)(1)). Because the FTCA provides that "any other civil action or proceeding for money damages … against the employee … is precluded," there are no alternative routes to a suit. *Id.* at 166 (quoting 28 U.S.C. § 2679(b)(1)). Tort actions may not be maintained against Members of Congress in their individual capacities where the alleged tort was committed within the scope of employment. *See Williams*, 71 F.3d at 504-05; *Operation Rescue Nat'l*, 975 F. Supp. at 103-06.

While the FTCA creates the only potential waiver of sovereign immunity for the tort claims alleged here, this waiver does not apply in this case because the FTCA bars the exact type of claim brought by Ms. Maras. The FTCA does not provide a waiver of sovereign immunity for "[a]ny claim arising out of … libel, slander, [or] misrepresentation." 28 U.S.C. § 2680(h). The plain language of the FTCA expressly forecloses Ms. Maras's claim of defamation against Congressman Cohen. *See* Am. Compl. ¶¶ 62, 64. "Libel and slander are both forms of defamation." *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001).

In addition, the Sixth Circuit has held that tort claims arising out of defamation are "specifically exempted from the general waiver of immunity" the FTCA provides. *Rector v. United States*, 243 Fed. App'x 976, 979 (6th Cir. 2007) (citing 28 U.S.C. § 2680(h)); *see also Fulton v. Huenefeld*, 191 F.3d 451 (Table), *1 (6th Cir. 1999) ("[D]efamation is expressly excluded from coverage by [the FTCA]."); *Zolman v. United States*, 170 F. Supp. 2d 746, 749

14

(W.D. Mich. 2001) ("A defamation claim is an excepted claim upon which neither the United States nor its employees may be sued." (citing *United States v. Smith,* 499 U.S. 160 (1991)).

The FTCA protects federal employees from liability for allegedly defamatory conduct committed within the scope of their employment. *See Henson v. NASA,* 14 F.3d 1143, 1147–48 (6th Cir. 1994). Here, the Amended Complaint alleges only one action by Congressman Cohen: the purportedly "defamatory" statement posted on his official Congressional Twitter account. *See* Am. Compl. ¶¶ 62, 64. Under the express terms of the FTCA, such conduct cannot form the basis of an actionable claim, and the Amended Complaint must be dismissed. *See* 28 U.S.C. § 2680(h); *Lambert v. United States*, No. 15-CV-147-PLR-HBG, 2016 WL 632461, at *3 (E.D. Tenn. Feb. 17, 2016) ("'If a case falls within the statutory exceptions of 28 U.S.C. § 2680, the court lacks subject matter jurisdiction,' and the case must be dismissed." (quoting *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1984)).

Accordingly, the doctrine of sovereign immunity and the express language of the FTCA foreclose any defamation claim against Congressman Cohen.

## C. The FTCA Precludes Ms. Maras's Request for Punitive Damages

The Amended Complaint seeks "punitive damages of not less than $1,700,000,000" from the defendants. Am. Compl. at 18. The FTCA expressly precludes any award of punitive damages. *See* 28 U.S.C. § 2674 ("The United States … shall not be liable for interest prior to judgment or for punitive damages."). Accordingly, this type of relief is unavailable for claims arising from actions taken in the Congressman's official capacity.

15

## III. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST CONGRESSMAN COHEN

Even if Ms. Maras could surmount the jurisdictional hurdles here, she nonetheless fails to state a legally actionable claim for defamation. Accordingly, the Complaint should be dismissed pursuant to Rule 12(b)(6).

### A. Ms. Maras Failed to Exhaust Her Administrative Remedies

As discussed above, because Ms. Maras attempts to bring a tort claim against the Congressman for actions undertaken in his official capacity, Ms. Maras's claims are subject to the requirements of the Federal Tort Claims Act, *supra* 13-15. Because she has not exhausted her administrative remedies, Ms. Maras's claim against Congressman Cohen must be dismissed due to this procedural defect. Exhaustion of administrative remedies is a statutory prerequisite to suit under the FTCA. *See* 28 U.S.C. § 2675(a); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) (FTCA's "clear statutory command" is that it "bars claimants from bringing suit in federal court until they have exhausted their administrative remedies"); *Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1991) ("A prerequisite to suit under the FTCA, however, is the exhaustion by the plaintiff of administrative remedies.").[7] Nowhere in the Amended Complaint does Ms. Maras allege that she has submitted an administrative claim to the House—and the undersigned Office of General Counsel, which processes FTCA administrative claims against House Members, Officers, and employees, is not aware of the submission of any such claim. The FTCA's command that an "action shall not be instituted … unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally

---

[7] The Sixth Circuit does not treat the exhaustion requirement as "jurisdictional," *see Kellom v. Quinn*, No. 20-1003, 2021 WL 4026789, at *3 (6th Cir. Sept. 3, 2021); *Copen v. United States*, 3 F.4th 875, 880-82 (6th Cir. 2021), but does recognize it as a mandatory requirement, the absence of which creates a significant procedural defect.

denied" is unambiguous. 28 U.S.C. § 2675(a). Accordingly, any tort claim Ms. Maras seeks to bring against Congressman Cohen should be dismissed for failure to exhaust her administrative remedies.

**B.      Ms. Maras's Defamation Claim is Precluded by the First Amendment**

The First Amendment forecloses Ms. Maras's defamation claim against Congressman Cohen because the challenged public statement addressed a matter of public concern, in a public place, and Ms. Maras's claims allege only injuries stemming from general reputational and emotional harms. This type of speech on matters of public concern "occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal quotation marks and citation omitted). State defamation laws operate within established constitutional safeguards, and they must be interpreted in conjunction with First Amendment protections. Accordingly, the Sixth Circuit has recognized that "statements of pure opinion, hyperbole, or rhetorical exaggeration will receive First Amendment protection." *Ogle v. Hocker*, 279 F. App'x 391, 397 (6th Cir. 2008). The Amended Complaint asserts that Congressman Cohen defamed Ms. Maras by referring to the "election fraud movement []as a con job" and sharing an article on "Twitter that [Ms.] Powell's statements about the November 2020 election fraud were 'wild accusations' and 'outlandish claims' that 'are repeatedly labelled 'inherently improbable' and even 'impossible.'" Am. Compl. ¶ 62, 64. Congressman Cohen's statement is opinion, characterizing his interpretation of the linked article discussing the court filing by Sidney Powell. It is certainly not the case that any "reasonable fact-finder could interpret it as containing false assertions of fact," as is required to save such a complaint from dismissal. *Ogle*, 279 F. App'x at 397. Indeed, a plain reading of Congressman Cohen's statement that Sidney Powell "is saying the entire Trump 'Stop the Steal'

[and] 'rigged election' was a Con Job on America" is consistent with the information in the article as well as Ms. Powell's own court filing referenced in the linked article. Am. Compl. ¶ 62.

Further, the challenged statement here involved a matter of public concern. *See Snyder v. Phelps*, 562 U.S. 443, 453 (2011) ("Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public[.]" (internal quotation marks and citations omitted)); *Rankin v. McPherson,* 483 U.S. 378, 387 (1987) (noting that any "inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern"). Further, there is no question that Congressman Cohen's speech occurred in a public place. The Supreme Court has described the internet (including social media platforms) as one of "the most important places (in a spatial sense) for the exchange of views," *Packingham*, 137 S. Ct. at 1735, and has analogized the internet to the "essential venues for public gatherings" of streets and parks. *Id.* The Congressman's Twitter post is thus entitled to the same special protections afforded to speech in *Snyder*.

### C. The Amended Complaint Fails to State a Claim for Defamation

Congressman Cohen's tweet on the litigation involving Sidney Powell is not actionable because both federal and Tennessee state law foreclose the use of litigation to resolve differences in public opinion. Under Tennessee law, a prima facie case of defamation requires that the plaintiff establish that "1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Memorial Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). This standard, like all state defamation laws, must be

18

read in tandem with the First Amendment's protection of speech, particularly for matters of public concern. *See, e.g.*, *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 14 (1990). Because the allegedly defamatory tweet makes no reference to Ms. Maras and asserts a matter of opinion that, even accepting the validity of Ms. Maras's allegations, cannot be considered false, Ms. Maras has failed to state a claim for defamation.

   1. *Congressman Cohen's Tweet Was Not "Of and Concerning" Ms. Maras*

   Ms. Maras bears the burden of proving that the allegedly false or defamatory statement was "of and concerning" the plaintiff. *Steele v. Ritz*, No. W2008-02125-R3-CV, 2009 WL 4825183, *3 (Tenn. Ct. App. Dec. 16, 2009). The alleged defamatory statement must be "in fact understood by a third person as referring to plaintiff." *Stones River Motors, Inc. v. Mid-S. Publ'g Co.*, 651 S.W.2d 713, 717 (Tenn. Ct. App. 1983) (abrogated on other grounds) (quoting *Ins. Rsch. Serv. Inc., v. Assocs. Fin. Corp.*, 134 F. Supp. 54, 61 (M.D. Tenn. 1955)). A plaintiff's claim for defamation may not be based "on an alleged defamatory statement made 'of and concerning' a third party." *Steele*, 2009 WL 4825183 at *3 (citation omitted). This is exactly what Ms. Maras has done.

   Ms. Maras bases her defamation claim on the allegedly defamatory statements concerning a third party, specifically Ms. Powell. *See* Am. Compl. ¶ 32 ("When the Defendants publish defamatory statements against Attorney Sidney Powell, the Kraken[,] or any of Attorney Sidney Powell's election fraud accusations and/or conclusions, the Defendants are defaming Plaintiff."). The Complaint alleges no facts to justify this assertion. In making a determination as to whether a statement is defamatory, "a court must look to the words themselves and is not bound by the plaintiff's interpretation of them." *Moses v. Roland*, No. W201900902COAR3CV, 2021 WL 1140273, at *10 (Tenn. Ct. App. Mar. 25, 2021) (citation omitted). The plain words of

19

the tweet itself cannot inherently be understood to be defamatory towards Ms. Maras. Statements that do not specifically name the plaintiff are capable of defamatory meaning only if the plaintiff "establishes extrinsic facts to show that the statement was made 'of and concerning' the plaintiff." *Battle v. A & E Television Networks, LLC*, 837 F. Supp. 2d 767, 774 n.7 (M.D. Tenn. 2011) (citation omitted). Noting that Ms. Maras acted as an expert witness for Sidney Powell and that "expert witnesses opine and conclude" while "Powell presents these conclusions to the court," Am. Compl. ¶ 35, is insufficient to support the claim that allegedly defamatory statements made against Ms. Powell are also made against Ms. Maras. Without additional extrinsic evidence, which is has not been presented here, Ms. Maras's claims must fail.

Regarding Congressman Cohen's statements specifically, Ms. Maras alleges that the Congressman defamed her in a tweet he posted that included the title of and the link to a newspaper article regarding Ms. Powell's motion to dismiss in litigation in which she was the defendant. Ms. Maras is not mentioned by name or referenced in Congressman Cohen's tweet or in the news article linked in the tweet. Indeed, to find any mention of Ms. Maras's name, one would have to read to page 46 of the document embedded within the article; a copy of Ms. Powell's motion to dismiss the lawsuit filed against her by Dominion, which cites once to the declaration provided by Ms. Maras. In no way can such a minor passing reference in a document embedded within an article linked in a tweet amount to converting the tweet to one that is "of and concerning" Ms. Maras. Consistent with Tennessee defamation law rejecting defamation claims made of and concerning a third party, this Court should dismiss Ms. Maras's defamation claim against Congressman Cohen.

## 2. Ms. Maras Has Failed to Sufficiently Allege Actual Malice

Ms. Maras's claim does not meet the heightened standard for defamation as applied to a public figure. Where a defamation claim is brought by a limited public figure, as Ms. Maras is in this context, "the First Amendment requires the plaintiff to prove that the defendant's statements are false and that the defendant acted with actual malice." *Williams v. Detroit Bd. of Educ.*, 306 F. App'x 943, 946 (6th Cir. 2009) (citations omitted). Proving actual malice requires a showing that the defendant acted "with knowledge that" the alleged defamatory statement "was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).

The term "public figure" includes "those who have thrust themselves into the vortex of important public controversies; those who achieve such pervasive fame or notoriety that they become public figures for all purposes, and in all contexts; those who voluntarily inject themselves, or are drawn into public controversies, and become public figures for a limited range of issues; and those who assume special prominence in the resolution of public questions." *Press, Inc. v. Verran*, 569 S.W.2d 435, 441 (Tenn. 1978). At a minimum, Ms. Maras is a limited public figure, having "thrust [herself] to the forefront of a particular public controversy in order to influence the resolution of the issues involved, inviting attention and comment." *Hibdon v. Grabowski*, 195 S.W.3d 48, 58-59 (Tenn. Ct. App. 2005) (citation omitted). Courts consider three factors in making such a determination: "the extent to which participation in the controversy is voluntary"; "the extent to which there is access to channels of effective communication in order to counteract false statements"; and "the prominence of the role played in the public controversy." *Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 530 (6th Cir. 2014).

Here, all three factors demonstrate that Ms. Maras is a limited a public figure. *First*, Ms. Maras voluntarily provided an affidavit in public litigation related to the 2020 Presidential Election, *see* Am. Compl. ¶¶ 15-18, and identified herself and confirmed her involvement in the Powell litigation to the Washington Post. Am. Compl. ¶¶ 51-52. *Second*, Ms. Maras, as a podcaster and blogger, has means by which she could counteract any false statements. *See id.* Finally, Ms. Maras took on a prominent role in this controversy. Her involvement was covered in several news sources, including, but not limited to, The Washington Post, Newsweek, and HuffPost.[8]

Because Ms. Maras is a limited public figure, the actual malice standard applies. Ms. Maras must demonstrate with "convincing clarity" evidence of actual malice. *Hibdon*, 195 S.W.3d at 58 (quoting *Sullivan*, 376 U.S. at 285-86). "The concept of actual malice in defamation cases connotes more than personal ill will, hatred, spite, or desire to injure. Rather, it is limited to statements made with knowledge that they are false or with reckless disregard to their truth or falsity." *McWhorter v. Barre*, 132 S.W.3d 354, 365 (Tenn. Ct. App. 2003) (quoting *Tomlinson v. Kelley*, 969 S.W.2d 402, 405 (Tenn. Ct. App. 1997). Even if Ms. Maras were a private figure, because Congressman Cohen's statements involve a matter of public concern, "the plaintiff must show that the statements are false." *Williams*, 306 F. App'x at 946. Ms. Maras pleads no facts and makes no assertions as to the falsity of the opinion expressed in Congressman Cohen's tweet, nor has she attempted to show that the statement was made with reckless

---

[8] Jon Swaine, *Sidney Powell's Secret Intelligence Contractor Witness is a Pro-Trump Podcaster*, Wash. Post. (Dec. 24, 2020), https://perma.cc/7J2Y-SJJW; Emily Czachor, *Who Is Terpsichore Maras-Lindeman? Powell Witness Identified as a Pro-Trump Podcaster*, Newsweek (Dec. 25, 2020), https://perma.cc/99W5-QHSL; Mary Papenfuss, *Sidney Powell's Key Election Witness is a Pro-Trump Podcaster Once Sued for Fraud: Report*, HuffPost (Dec. 25, 2020), https://perma.cc/6KZ9-MMT2.

disregard for the truth.  Accordingly, Ms. Maras has failed to state an actionable claim for defamation.

       *3. Ms. Maras Has Failed to Adequately Plead Actual Damages*

Under Tennessee law, a plaintiff is required to demonstrate actual damages in all defamation cases.  *See Hibdon*, 195 S.W.3d at 68 (citing *Handley v. May*, 588 S.W.2d 772, 776 (Tenn. Ct. App. 1979)); *see also Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978) ("The plaintiff must plead and prove injury from the alleged defamatory words, whether their defamatory meaning be obvious or not.").  Here, Ms. Maras has not plead any facts to support the existence of actual damages, alleging merely vague and general injuries to her reputation.  *See, e.g.*, Am. Compl. ¶¶ 85-86 (alleging harm to "Plaintiff's professional reputation," "credibility," "integrity, ethics, and honesty" without any supporting information as to how she has been harmed).  The Amended Complaint does not allege any facts to show any *actual* harm to her reputation, nor any pecuniary loss or identify any current or even anticipatory loss of income, nor does it allege that Ms. Maras is engaged in any sort of specific engagements or opportunities that have suffered because of Congressman Cohen's official statement. Therefore, Ms. Maras's claims against Congressman Cohen cannot succeed.

Accordingly, Ms. Maras has failed to state a claim for defamation.

## CONCLUSION

For all the reasons set forth above, Ms. Maras's Complaint against Congressman Cohen must be dismissed.

Respectfully submitted,


/s/ Douglas N. Letter
DOUGLAS N. LETTER (D.C. Bar No. 253492)
*General Counsel*
TODD B. TATELMAN (VA Bar No. 66008)
*Principal Deputy General Counsel*
SARAH CLOUSE (MA Bar No. 688187)
*Associate General Counsel*
BROOKS M. HANNER (D.C. Bar No. 1005346)
*Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES[*]
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
douglas.letter@mail.house.gov

*Counsel for Defendant Steve Cohen*


January 21, 2022

---

[*] The Office of General Counsel wishes to acknowledge the assistance of law clerk Jennifer Kaplan, a student at The Catholic University of America, Columbus School of Law, in preparing this brief.

24

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the Eastern District of Tennessee, which I understand caused service on all registered parties. I further certify that I served a copy of the foregoing via Federal Express on the following non-registered filers:

MEDIA MATTERS FOR AMERICA
75 Broadway Street, Suite 202
San Francisco, CA 94111

ALI ABDUL RAZAQ AKBAR A/K/A ALI ALEXANDER
5125 Pinellas Avenue
Keller, TX 76244

*/s/ Douglas N. Letter*
DOUGLAS N. LETTER