# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

| | |
|---|---|
| TERPSEHORE MARAS, | |
| Plaintiff, | |
| v. | **Case. No. 1:21-cv-00317-DCLC-CHS** |
| THEHUFFINGTONPOST, INC., REPRESENTATIVE STEVE COHEN, US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., DOMINION VOTING SYSTEMS CORPORATION, MEDIA MATTERS FOR AMERICA and ALI ABDUL RAZAQ AKBAR A/KA/ ALI ALEXANDER, | **District Judge Clifton L. Corker** **Magistrate Judge Christopher H. Steger** |
| Defendants. | |

## PLAINTIFF TERPSEHORE MARAS' BRIEF IN OPPOSITION TO THE DOMINION DEFENDANTS' MOTION TO DISMISS

COMES NOW Plaintiff Terpsehore Maras and, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(d) and 56, hereby files this Brief in Opposition to US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation's Motion to Dismiss, which must be treated as a Motion for Summary Judgment for presenting matters outside of the pleadings, and in opposition to said motion Plaintiff respectfully shows unto this Honorable Court the following:

## I.  RELEVANT PROCEDURAL HISTORY

On October 29, 2021, Plaintiff filed a lawsuit against all named Defendants in the Hamilton County Circuit Court, which is a court of general jurisdiction. The Hamilton County Circuit Court had personal jurisdiction and subject matter jurisdiction over Dominion. Venue was proper in the

Hamilton County Circuit Court because, at the time the case was filed, one of the named Defendants was Chattanooga News Chronicle. Dominion availed itself of the venue and was subject to personal jurisdiction by transacting business in the state of Tennessee pursuant to Tenn. Code Ann. § 20-2-201. However, even though the parties were not diverse and there were forum Defendants, Congressman Steve Cohen had a statute that permitted him to remove the case to federal court. Pursuant to 28 U.S.C. § 1442(a), Representative Cohen properly removed the case to this Court. Since the case was properly pending in the Hamilton County Circuit Court, Congressman Cohen was required to remove the case to The United States District Court, Eastern District of Tennessee, Chattanooga Division, pursuant to 28 U.S.C. § 1446(a), which states: "A defendant or defendants desiring to remove any civil action from a State court **shall file** in the district court of the United States **for the district and division within which such action is pending** …." 28 U.S.C.A. § 1446(a).

On December 27, 2021, Congressman Steve Cohen removed the case to this Court. Pursuant to Fed. R. Civ. P. 41(a)(1)(A), January 5, 2022, Plaintiff filed a Notice of Voluntary Dismissal without Prejudice for Defendants, Ohio Intelligence Tips, Ross Elder and Chattanooga News Chronicle (Doc. 11). Therefore, since the case was removed from the Hamilton County Circuit Court, this Court has personal jurisdiction and subject matter jurisdiction. In addition to the removal pursuant to 28 U.S.C. §§ 1442 and 1446, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as all parties are now diverse, the amount in controversy exceeds seventy-five thousand dollars ($75,000), there is no Defendant that is a resident of the forum and, as such, this Court has personal jurisdiction and subject matter jurisdiction over Dominion. Venue statutes are not considered after a case is removed. The venue statutes tell the Plaintiff where to initiate the case; not where the Defendants remove the case. On January 20, 2022, Dominion filed the following documents: (1) Dominion's Motion to Dismiss (Doc. No. 21); (2) Memorandum of Law in Support of Dominion's Motion to Dismiss (Doc. No. 22); (3) Declaration of Nicole Nollette in Support of Motion to Dismiss (Doc. No. 22-1); (4)

Declaration of Megan L. Meier in Support of Motion to Dismiss (Doc. No. 22-2); (5) December 16, 2020 Defamatory Falsehoods About Dominion Letter (Doc. No. 22-3); (6) Dominion Demands Retraction of Sidney Powell's Defamatory Falsehoods Statement dated December 17, 2020 (Doc. No. 22-4); (7) Dominion Files Defamation Suit Against Sidney Powell Statement dated January 8, 2021 (Doc. No. 22-5); (8) Dominion's Complaint and Demand for Jury Trial filed Against Sidney Powell and Exhibits 1 – 32 (Doc. No. 22-6); (9) Order regarding the Arizona election fraud lawsuit (Doc. No. 22-8); and (10) Order regarding the Michigan election fraud lawsuit (Doc. No. 22-9).

On February 11, 2022, Plaintiff filed a Stipulation Extending Time to Respond to the pending motions to dismiss until Friday February 18, 2022, and the Defendants' deadline to file a Reply was extended until March 4, 2022.

## II.      ARGUMENT AND CITATION OF AUTHORITY

### A.      Since the Dominion Defendants have introduced thousands of pages of content, much of which constitute "matters outside the pleadings", Rule 12(d) states that this Honorable Court must treat Dominion's Motion to Dismiss as a Motion for Summary Judgment and apply all the requirements and standards in Rule 56.

Since the Dominion Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) they are subject to the operation of Fed. R. Civ. P. 12(d), which **requires** a court to convert a Motion to Dismiss into a Motion for Summary Judgment if matters outside of the pleadings are filed. Since Dominion has filed thousands of pages of content that constitute "matters outside the pleadings" this Honorable Court "must" convert Dominion's Motion to Dismiss into a Motion for Summary Judgment, which implements a much higher standard before said motion can be granted.

Pursuant to Rule 7, "**Only these pleadings are allowed**: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a) (emphasis added). "A pleading is defined as a

3

'complaint,' an 'answer to a [complaint, counterclaim or crossclaim],' or 'a reply to an answer.'" Order dated February 9, 2022, p. 2 (Doc. No. 42). "Dominion's motion to dismiss [Doc. 21] is not a complaint, answer, or reply to an answer as defined by the Federal Rules of Civil Procedure, and therefore cannot be stricken pursuant to Rule 12(f)." *Id*.

"**(d) Result of Presenting Matters Outside the Pleadings.** If, on a **<u>motion under Rule 12(b)(6)</u>** or 12(c), **<u>matters outside the pleadings</u>** are presented to and not excluded by the court, the motion **<u>must be treated as one for summary judgment</u>** under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d) (emphasis added). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

In the case at bar, Dominion has not yet filed a pleading. Instead of filing an Answer, Dominion filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dominion also filed thousands of pages of content, many of which are not a part of any pleading, are not exhibits to any pleading, are not referred to in the Complaint and are not central to the claims contained in the Plaintiff's Complaint. For example, Dominion filed unrelated matters "outside of the pleadings" that are not referred to in the Plaintiff's Complaint or Plaintiff's Amended Complaint including, but not limited to, the following content in Dominion's Motion to Dismiss (pp. 2-3, ¶ entitled "***Plaintiff's involvement in litigation giving rise to this case***") that are matters outside the pleadings:

- Dominion stated in its Rule 12(b)(6) motion that Plaintiff resided in North Dakota before moving to Ohio. **This is a "matter outside of the pleadings" because it is not referred to in Plaintiff's Complaint, Plaintiff's Amended Complaint and it's not central to any claim in the case.**

- Dominion stated in its Rule 12(b)(6) motion that the late North Dakota Attorney General "filed a consumer protection enforcement action against Plaintiff, alleging that Plaintiff had engaged in a fraudulent fundraising campaign under the auspices of raising money for families displaced by an apartment building fire, homeless shelters, and a Catholic school, among others." **This is a "matter outside of the pleadings" because it is not referred to in Plaintiff's Complaint, Plaintiff's Amended Complaint and it's not central to any claim in the case.**

- Dominion stated in its Rule 12(b)(6) motion: "The State further alleged that Plaintiff had falsely represented that the Bank of North Dakota and the City of Minot had sponsored the fundraising campaign and that Plaintiff had "created an entirely fake online persona" in which she falsely claimed to be a 22-year veteran of Naval intelligence, a Purple Heart recipient, an operator of a medical laboratory, and a doctor, none of which was true." **This is a "matter outside of the pleadings" because it is not referred to in Plaintiff's Complaint, Plaintiff's Amended Complaint and it's not central to any claim in the case.**

- Dominion stated in its Rule 12(b)(6) motion: "Instead of giving the funds she raised to charity, Plaintiff spent the funds she raised on purchases for herself for Wal-Mart, McDonald's, QVC, and elsewhere." **This is a "matter outside of the pleadings" because it is not referred to in Plaintiff's Complaint, Plaintiff's Amended Complaint and it's not central to any claim in the case.**

- Dominion stated in its Rule 12(b)(6) motion: "In its Findings of Fact, Conclusions of Law, and Order of Judgment, the Court found that Plaintiff had violated North Dakota's consumer fraud statute." **This is a "matter outside of the pleadings"**

because it is not referred to in Plaintiff's Complaint, Plaintiff's Amended Complaint and it's not central to any claim in the case.

The following Exhibits in Exhibit D (Doc. No. 22-6) each constitute **a "matter outside of the pleadings" because it is not referred to in Plaintiff's Complaint, Plaintiff's Amended Complaint and it's not central to any claim in the case:**

- **Exhibit D, Part 1**: **Exhibit 2**: Article regarding Joshua Merritt a/k/a "Spyder" who was another expert witness for Sidney Powell's case (pp. 129-46); **Exhibit 8**: IRS Tax search results for Defending the Republic (pp. 208-10); **Exhibit 9**: Tweets by L. Lin Wood (pp. 211-14); **Exhibit 11**: Article on historic paper ballot audit in Georgia (pp. 217-19); **Exhibit 15**: Article re Trump winning a small Michigan county after hand recount of paper ballots (pp. 303-12); **Exhibit 17**: Article re a year of political chaos in Michigan (pp. 327-36); Exhibit 21: Article re Overstock CEO's with a Russian Agent (pp. 348-57); **Exhibit 22**: Dr. Corsi Interview Transcript of Overstock CEO Patrick Byrne (pp. 358-464); **Exhibit 25**: Transcript of the Rush Limbaugh Show from December 29, 2020 (pp. 497-517); **Exhibit 31:** Tweet by President Trump on Nov. 19, 2020 re a viable path to victory (pp. 605-06); **Exhibit 37:** News Article re Chris Christie calls Trump's legal team a "national embarrassment" (pp. 723-35); **Exhibit 52:** Order in State of North Dakota et al. v. Terpsichore Maras et al. (pp. 868-86); **Exhibit 54:** Alleged Terpsehore Maras Together We Served social media profile (pp. 906-09); **Exhibit 55:** *State of North Dakota et al. v. Terpsichore Maras et al.* Complaint (pp. 910-52); **Exhibit 56:** Article re Texas Tea Partiers freaking out over "Deep State" Conspiracy Theories (pp. 953-65); **Exhibit 57:** News article re 10 Michigan precincts voter turnout reached 100% and in 6 precincts is surpassed

100% (966-83); **Exhibit 60:** Article re Georgia lawmakers scrutinizing Trump campaigns list of allegedly illegal votes (pp. 1006-19); **Exhibit 62:** Trending words on Twitter on 7th November 2020 (pp. 1030-40); **Exhibit 72:** The Economist/YouGov Poll between November 8-10, 2020 (pp. 1104-1335); **Exhibit 73:** Reuters/Ipsos Press Release re Most Americans Agree Biden is Rightful Election Winner (pp. 1336-50); **Exhibit 74:** Quinnipiac Poll re 60% Americans View Biden Victory as Legitimate (pp. 1351-69);

- **Exhibit D, Part 2:** **Exhibit 96:** Transcript of the Rush Limbaugh Show for November 16, 2020 (pp. 388-403); **Exhibit 107:** Transcript of Global Prayer for U.S. Election Integrity (pp. 555-85).

As such, they must be considered "matters outside the pleadings" pursuant to Fed. R. Civ. P. 12(d). When matters outside of the pleadings are filed and when a Rule 12(b)(6) Motion to Dismiss is filed, then Rule 12(d) requires the court to treat the Motion to Dismiss as a Motion for Summary Judgment and Dominion must now comply with all Rule 56 requirements.

        **B.**     **Standard of Review for a Motion for Summary Judgment.**

Rule 56(c) of the Federal Rules of Civil Procedure provides that the trial court shall grant summary judgment if there is **no genuine issue of material fact** and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The court's function is **not to weigh the evidence and determine the truth of the matter** but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (emphasis added). In deciding a motion for summary judgment, the court **must view the evidence** and **draw all reasonable inferences in favor of the nonmoving party**. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996) (emphasis added); *see e.g.*, *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 460 (6th Cir. 2001). Rule 56(e) provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 256. The plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Id.* at 257. The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir.2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.* Finally, "Rule 12(d) contemplates that a trial court entertaining a motion for dismissal under Fed. R. Civ. P. 12(b), and having before it the opponent's application for a hearing on the motion, will do one of two things: **defer the motion to trial** or hold a preliminary hearing on it." *Commodities Export Co. v. U.S. Customs Serv.*, 888 F.2d 431, 436 (6th Cir.1989) (emphasis added).

In the case at bar, since Dominion filed thousands of pages of "matters outside the pleadings" and Rule 12(d) requires the Motion to Dismiss to be treated as a Motion for Summary Judgment. As such, Plaintiff respectfully requests that this Honorable Court treat the Motion to Dismiss as a Motion for Summary Judgment and apply all of the Rule 56 requirements. Since Dominion has not shown "that there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law" the Motion for Summary Judgment should be denied. Moreover, Plaintiff has presented sworn testimony of defamation, which would be a fact that Dominion will dispute.

"To establish a prima facie case of defamation in Tennessee, the Plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming

to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Memorial Hosp.*, 995 S.W.2d 569, 1999 WL 476978 (Tenn. 1999) (citing Restatement (Second) of Torts § 580 B (1977); *Press, Inc. v. Verran*, 569 S.W.2d 435, 442 (Tenn. 1978).

In the case at bar, Plaintiff has pled a legally cognizable defamation case. Plaintiff filed a Verified Complaint, which is sworn testimony (or "material facts") that come into evidence. Plaintiff pled that the Dominion published defamatory statements. *See* Plaintiff's Complaint. Plaintiff pled in the alternative, as allowed by Fed. R. Civ. P. 8(d)(2), that the "Defendants published the above-referenced statements with actual malice, knowing or recklessly disregarding that they are false." (Plaintiff's Complaint, ¶ 81). The determination of whether a statement was published with knowledge that the statement is false and defaming to the other is a question of fact for the trier of fact. The determination of whether a statement was published with reckless disregard for the truth of the statement is a question of fact for the trier of fact. The determination of whether a statement was made with negligence in failing to ascertain the truth of the statement is a question of fact for the trier of fact. Since Plaintiff pled a legally cognizable and legally sufficient defamation case, and because the determination of the manner in which Dominion defamed Plaintiff is a question of fact for the trier of fact, this case should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), discussed in greater detail *infra*.

This Court **must view the evidence** and **draw all reasonable inferences in favor of the nonmoving party**. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996) (emphasis added); *see e.g.*, *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 460 (6th Cir. 2001). As of now, the only sworn evidence in this case is that Dominion defamed Plaintiff. Whether the Dominion's defamation was malicious, reckless or negligent is a question of fact for the trier of fact. The Motion for Summary Judgment standard is very high. Plaintiff contends that there will be many

disputed facts in this case for a jury to decide. Dominion has not carried its burden to establish that there are not disputed material facts and, as such, granting summary judgment would be wholly improper at this time. Dominion's Motion for Summary Judgment should be denied. Alternatively, Plaintiff respectfully requests that Dominion's Motion for Summary Judgment be deferred until trial and until after discovery has concluded, as expressly allowed by *Commodities Export Co. v. U.S. Customs Serv.*, 888 F.2d 431, 436 (6th Cir.1989).

> ### C. In the event this Court does not treat the Motion to Dismiss as a Motion for Summary Judgment, Plaintiff contends that dismissal is still improper. Contrary to the Dominion's contentions, this Court already has personal jurisdiction over the Dominion Defendants by Tennessee law and the federal removal statutes.

Plaintiff contends that this Honorable Court **already has** personal jurisdiction over the Dominion Defendants pursuant to Tennessee law and the federal removal statutes. Therefore, since this Court already has personal jurisdiction, this case should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). "**Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons**." *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S.Ct. 746, 753, 187 L.Ed.2d 624 (2014) (emphasis added). "This is because a federal district court's authority to assert personal jurisdiction in most cases **is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.**'" *Id* (citing Fed. Rule of Civ. Proc. 4(k)(1)(A)) (emphasis added). The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. *Id* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Since the case was filed in state court, we must analyze whether the circuit court had general jurisdiction, which would then convey personal jurisdiction to this Court when the case was removed by Representative Cohen pursuant to 28 U.S.C. § 1442.

Pursuant to Tennessee law, "**Any corporation claiming existence under the laws** of the United States **or any other state** [*i.e.*, Delaware] or of any foreign country to the United States, or any business trust **found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are by the laws of this state liable to be sued**, so far as relates to any transaction had, in whole or in part, within this state or any cause of action arising here, but not otherwise." Tenn. Code Ann. § 20-2-201(a) (emphasis added).



Moreover, "A corporation … having **any transaction with persons … situated in this state**, through any agency whatever acting for it within the state, **shall be held to be doing business here** within the meaning of this section." Tenn. Code Ann. § 20-2-201(b) (emphasis added).



**Voting Systems by County**

| County | Manufacturer | System |
|--------|--------------|--------|
| Anderson | Hart | eSlate |
| Bedford | MicroVote | Infinity |
| Benton | Hart | Verity Scan |
| Bledsoe | Hart | eSlate |

…

| County | Manufacturer | System |
|--------|--------------|--------|
| Grundy | MicroVote | Infinity |
| Hamblen | MicroVote | Infinity |
| Hamilton | Dominion | ImageCast Optical Scan |
| Hancock | Hart | eSlate |
| Hardeman | Hart | eSlate |

….

Voting Systems by County, https://sos-stage.tnsosgovfiles.com/s3fs-public/document/Voting%20 Systems%20by%20County.pdf (last accessed December 30, 2021) (emphasis added). Pursuant to the Tennessee Secretary of State, Dominion conducts business in Hamilton County by selling and/or providing Dominion voting machines. Dominion also manipulated Tennesseans' votes in the 2020 elections, which Plaintiff intends to prove through discovery. Dominion defamed Plaintiff on the world wide web publishing defamatory statements in Tennessee. All Dominion Defendants should remain in the case until Plaintiff can conduct discovery and determine which Dominion entity or entities are proper. The Dominion corporate structure is apparently complex. As such, Plaintiff is entitled to sworn testimony and documents to confirm or deny which Dominion Defendant is the proper Defendant for trial. Plaintiff should not be forced to rely on the unsworn statements of the Dominion Defendants' lawyer. After discovery concludes, if the evidence shows that a Dominion Defendant is in fact an improper Defendant, then Plaintiff agrees to dispose of the improper Defendant.

Since Dominion is subject to the general jurisdiction of the Hamilton County Circuit Court and Dominion was served with a Summons and a Verified Complaint, the district court already has personal jurisdiction over Dominion, which is consistent with the operation of Fed. R. Civ. P. 4(k)(1)(A), which establishes personal jurisdiction the moment that the Defendant is served with the Summons and Complaint. Dominion has not shown that the Hamilton County Circuit Court lacked personal jurisdiction. The case was removed. Dominion has not shown that the state court's personal jurisdiction is not transferred to the federal court when the case is removed. This Court already has personal jurisdiction by operation of Tennessee law and the removal statutes, which conveyed the Hamilton County Circuit Court's jurisdiction to this Court.

The *Helicopteros Nacionales De Colombia v. Hall* case that Dominion cited was a case "to decide whether the Supreme Court of Texas correctly ruled that the **contacts of an international corporation** were sufficient **to allow a Texas state court to assert jurisdiction** over the corporation in a cause of action not arising out of or related to the corporation's activities within the State." 466 U.S. 408, 409, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). This case is distinguishable because Dominion is not an international corporation that is incorporated in another country; it is a Delaware corporation with a principal place of business in Colorado and it transacts business in Tennessee. The Tennessee statute is clear that the Hamilton County Circuit Court has personal jurisdiction over Dominion; this cannot be denied. The district court has personal jurisdiction.

The *BNSF Ry. Co. v. Tyrrell* case that Dominion cited was a Federal Employers' Liability Act lawsuit, which made railroads liable in money damages to their employees for on-the-job injuries. 137 S. Ct. 1549, 198 L.Ed.2d 36 (2017). Both suits were filed in Montana even though the workers did not reside in Montana, nor were they injured in Montana, nor did it maintain a principal place of business in Montana. The Montana Supreme Court justified its exercise of

personal jurisdiction based upon 45 U.S.C. § 51 *et seq*. Specifically, the Montana Supreme Court relied on § 56, which provided in relevant part:

> **Under this chapter** an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States **under this chapter** shall be concurrent with that of the courts of the several States.

*Id* at 1553 (emphasis added). In its holding the Supreme Court stated: "We hold that **§ 56 does not address personal jurisdiction over railroads**. Its first relevant sentence is a venue prescription governing proper locations for **FELA suits** filed in federal court. The provision's second relevant sentence, using the term 'concurrent' jurisdiction, **refers to subject-matter jurisdiction, not personal jurisdiction**. It simply clarifies that the federal courts do not have exclusive subject-matter jurisdiction over FELA suits; state courts can hear them, too." *Id* (emphasis added).

While interesting, *BNSF Ry. Co. v. Tyrrell* is not controlling and it does not apply to Ms. Maras' case. The Defendants are not railroad companies who have particularized statutes and different rules. Additionally, this lawsuit is not a federal employment law case; this is a defamation case brought pursuant to Tennessee law. There is no applicable federal statute that bars this case. Finally, the statute in the *BNSF Ry. Co.* case addressed subject matter jurisdiction and not personal jurisdiction. None of the federal personal jurisdiction cases cited by Dominion apply in this case. The personal jurisdiction analysis must be pursuant to Tennessee law when the case was filed in Circuit Court and when the Dominion Defendants were served while the case was still pending in the Circuit Court.

Again, since the Hamilton County Circuit Court had personal jurisdiction over Dominion pursuant to Tennessee law, the district court already has personal jurisdiction over Dominion when the case was removed and this is consistent with Fed. R. Civ. P. 4(k)(1)(A). While Dominion cites

the federal case law regarding general jurisdiction and specific jurisdiction, that law is not applicable. Dominion has cited no authority for the proposition that the district court loses the Circuit Court's personal jurisdiction after the case is removed.

**D.    Ms. Maras has stated a legally cognizable claim for defamation.**

Plaintiff again notes that because the Defendants introduced thousands of pages of content that constitute "matters outside the pleadings", the Court must treat Dominion's Motion to Dismiss as a Motion for Summary Judgment pursuant to operation of Fed. R. Civ. P. 12(d). By virtue of the fact that she filed a Verified Complaint, the allegations of which the Defendants are contesting, Plaintiff has established a set of facts that are contested by the Defendants, thus resulting in numerous genuine issues of material fact.

Dominion alleges that its retraction demand letter to Sidney Powell and its public statements about Sidney Powell are not "of and concerning" Plaintiff. In its Motion to Dismiss, Dominion refers to Plaintiff's concession that "the challenged statements refer to 'Attorney Sidney Powell, The Kraken, [and] Attorney Sidney Powell's election fraud accusations and/or conclusions.'" (Memo in Support of Motion to Dismiss, p. 18). However, Dominion fails to acknowledge that **in defaming the Kraken, Dominion defamed Plaintiff, who since at least 2019 has been widely-associated with the terms "Kraken" and "releasing the Kraken."**

As noted in the Affidavit attached hereto as Exhibit A, prior to serving as an election fraud expert witness for Ms. Powell, Plaintiff, on her international podcast "The Tore Says Show", on multiple occasions referenced "the Kraken" and/or the "release of the Kraken." Exhibit A, ¶ 4. "The Tore Says Shows" has an international audience of 500,000 viewers or listeners per day in more than sixty (60) countries, with a daily live audience of approximately 40,000 individuals. Exhibit A, ¶ 5. The episodes of "The Tore Says Show" are transcribed and placed on the website www.toresaid.com, which includes a searchable database of all the show's episodes going back to

15

November 5, 2018. Exhibit A, ¶ 6. A search of the term "kraken" on the www.toresaid.com database reveals that Plaintiff mentioned the term live on her podcast series during the following episodes leading up to Ms. Powell's November 13, 2020, interview with Lou Dobbs, wherein Ms. Powell indicated that she was going to "release the Kraken": February 8, 2019; March 14, 2019; March 18, 2019; and March 25, 2019. Exhibit A, ¶ 7.

Prior to Ms. Powell's November 13, 2020, interview with Mr. Dobbs, Plaintiff contacted Ms. Powell's office and was placed in touch with Julie Haller, an attorney who was working on the election fraud lawsuit(s) with Ms. Powell. Exhibit A, ¶ 8. In speaking with Ms. Haller and confirming that Ms. Powell wished to use Plaintiff's Affidavit to support her election fraud lawsuits, Plaintiff specifically stated, "It's time to release the Kraken. Let's go!" Exhibit A, ¶ 9. Furthermore, on the evening of November 12 and the morning of November 13, 2020, Plaintiff spoke with various individuals who were directly working with Ms. Powell and in the presence of these individuals, she referred to herself as "the Kraken". Exhibit A, ¶ 10. In addition to Ms. Haller, Sam Faddis and Emily Newman, all of which were working with Ms. Powell, heard Plaintiff state, "It's time to release the Kraken. Let's go!", to which the individuals mentioned responded with laughter. Exhibit A, ¶ 11.

In summary, Plaintiff made numerous on-air references to "the Kraken" or "releasing the Kraken" prior to Ms. Powell publicly stating in the November 13, 2020, interview that she was going to "release the Kraken", and Plaintiff used the term "kraken" in conversing with Ms. Powell's team prior to Ms. Powell filing her election fraud lawsuits and appearing in the interview with Mr. Dobbs on November 13, 2020. Exhibit A, ¶ 12. Following Sidney Powell's use of the term "Kraken" on the interview with Mr. Dobbs, the Washington Post released a news article expressly revealing Plaintiff as Ms. Powell's secret witness. See, "Sidney Powell's secret intelligence contractor witness is a pro-Trump podcaster", available at

https://www.washingtonpost.com/investigations/sidney-powells-secret-intelligence-contractor-witness-is-a-pro-trump-podcaster/2020/12/24/d5a1ab9e-4403-11eb-a277-49a6d1f9dff1_story.html. In addition, just last week, on February 11, 2022, VICE news published an article confirming that, even as far back as November 2020, it was widely known that Plaintiff is the "anonymous source described as 'a private contractor with experience gathering and analyzing foreign intelligence'" upon which Ms. Powell relied in "ask[ing] the Supreme Court to overturn the 2020 election results in December [2020], as part of [Ms. Powell's] widely-derided Kraken lawsuits." See   https://www.vice.com/en/article/wxdpwz/ohio-terpsehore-maras-qanon-time-traveler.   The same article confirms that the Washington Post "[w]eeks later…unmasked Ms. Maras as that source." Exhibit A, ¶ 13.

Accordingly, Plaintiff has legitimate reason to believe that that Dominion knew Plaintiff was associated with term "Kraken" and that Dominion intentionally, recklessly or negligently disregarded that knowledge in making defamatory statements about "the Kraken." In accusing Sidney Powell, among other things, of making "wild, knowingly baseless, and false allegations" (Amend. Compl. ¶ 37), "baseless and false accusations" (Amend. Compl. ¶ 39), instigating a "dangerous and reckless disinformation campaign aimed at sowing doubt and confusing over the 2020 presidential election about the company" (Amend. Compl. ¶ 45), "spreading false conspiracy theories" (Amend. Compl. ¶ 40), "undermining confidence in the election process" (Amend. Compl. ¶ 41), "putting election officials in harm's way" (Amend. Compl. ¶ 42), and "act[ing] with malice in her defamatory accusations" (Amend. Compl. ¶ 43), the Defendants have defamed the Kraken, and thus, Plaintiff.  After all, in claiming that "the Kraken" witness lied in the statements she provided in the Affidavit she rendered in Ms. Powell's lawsuits, which Plaintiff provided in the form of a Declaration sworn under oath and subject to penalty of perjury pursuant to 28 U.S.C. § 1746, Dominion has in essence accused Plaintiff of committing the crime of perjury.  The

Supreme Court of the United States in *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990), confirmed that a false statement implying that one has committed the crime of perjury could form the basis of a defamation claim. For these reasons, Plaintiff has established a claim for defamation and Dominion's Motion to Dismiss is without merit.

> **E.     The defamatory statements Dominion rendered about Plaintiff in its Complaint are not absolutely privileged.**

In its Motion to Dismiss, Dominion asserts that Plaintiff's defamation claim against Dominion regarding the statements made about Plaintiff in Dominion's lawsuit against Sidney Powell fail because "statements in Dominion's defamation complaint are absolutely protected under the litigation privilege." (Memo in Support of Motion to Dismiss, p. 19).  At the outset, Plaintiff notes that its defamation claim against Dominion is not based solely on the statements Dominion made about Plaintiff in its lawsuit against Sidney Powell.  Rather, Plaintiff refers in her Amended Complaint to the defamatory statements rendered by John Poulos, CEO of Dominion Voting Systems, in public statements published on Dominion's website on December 17, 2020 (see          https://www.dominionvoting.com/dominion-demands-retraction-of-sidney-powells-defamatory-falsehoods/) (last accessed February 18, 2022) and on January 8, 2021 (see https://www.dominionvoting.com/latest-news-dominion-files-defamation-suit-against-sidney-powell/) (last accessed February 18, 2022). See, Amend. Compl. ¶¶ 38 and 54. Thus, the statements publicized by the CEO of Dominion Voting Systems were not contained in Dominion's defamation Complaint against Sidney Powell and are separate and apart from the statements to which Dominion alleges an absolute privilege applies.

Regarding the statements about Plaintiff contained in Dominion's lawsuit against Sidney Powell, the absolute privilege doctrine does not operate to shield Dominion from liability about claims made **against an uninterested party about a matter that is not relevant to the instant**

**litigation**.  "In light of the complete immunity provided by an absolute privilege, _**the classification of absolutely privileged communication is necessarily narrow**_." _Edelman, Combs & Latturner v. Hinshaw & Culbertson_, 338 Ill. App. 3d 156, 165, 788 N.E.2d 740, 748–49 (2003), citing _Kurczaba v. Pollock_, 318 Ill.App.3d 686, 702, 252 Ill.Dec. 175, 742 N.E.2d 425, 439 (2000); _Thompson v. Frank_, 313 Ill.App.3d 661, 664, 246 Ill.Dec. 463, 730 N.E.2d 143, 145 (2000) (emphasis added). "_**The privilege does not cover the publication of defamatory matter that has no connection whatsoever to the litigation**_." _Edelman_, _supra_, citing _Kurczaba_, 318 Ill.App.3d at 701, 252 Ill.Dec. 175, 742 N.E.2d at 439, citing RESTATEMENT (SECOND) OF TORTS, § 586, Comment c, at 247(1977) (emphasis added). "The privilege is available only when: the publication 'was made in a judicial proceeding; had some connection or logical relation to the action; _**was made to achieve the objects of the litigation; and involved litigants or other participants authorized by law.**_'" _Edelman_, _supra_, citing _Kurczaba_, 318 Ill.App.3d at 702, 252 Ill.Dec. 175, 742 N.E.2d at 439, quoting 53 C.J.S. LIBEL & SLANDER § 72, at 132 (1987) (emphasis added).

 As noted by at least one court within the jurisdiction of the Sixth Circuit, "_**Absolute privilege against a defamation action is limited to narrowly defined areas**_." _Istok v. Schierlinger_, No. 12-CV-15327, 2014 WL 12576630, at *2 (E.D. Mich. Feb. 26, 2014), citing _Timmis v. Bennett_, 352 Mich. 355 (1958); _Raymond v. Croll_, 233 Mich. 268 (1925); _Froling v. Carpenter_, 203 Mich. App. 368 (1993) (emphasis added).  Thus, "_**It is judicial policy not to extend the doctrine of absolute privilege beyond its narrow limits**_." _Istok_, _supra_, citing _Raymond_, _supra_, 233 Mich. at 272, 206 N.W. 556 (emphasis added). The Tennessee Supreme Court has held that "[a] statement by a judge, witness, counsel, or party, to be absolutely privileged, must meet two conditions, viz: (1) It must be in the course of a judicial proceeding, and (2) _**it must be pertinent or relevant to the issue involved in said judicial proceeding**_." _Jones v. Trice_, 210 Tenn. 535, 542, 360 S.W.2d 48, 52 (1962) (emphasis added).

**Any events that may have transpired between Plaintiff and government actors in the State of North Dakota are completely irrelevant to Dominion's defamation claims against Sidney Powell**. Moreover, Plaintiff is not a litigant in Dominion's defamation lawsuit against Ms. Powell, so Dominion's attempt to extend the absolute privilege doctrine to an individual who is not even a party to the litigation which Dominion claims forms the basis of the privilege is misguided. The law should not operate to allow a litigant to defame an uninterested witness in a new proceeding that raises allegations about the witness entirely unrelated to the sworn statements the witness rendered in the original proceeding. After all, **were a corporate defendant allowed to malign a government whistleblower in a subsequent defamation case, it could have a chilling effect on such whistleblowers and discourage prospective key witnesses from coming forward to expose corruption**. The statements rendered about Plaintiff in Dominion's lawsuit against Sidney Powell are not pertinent or relevant to the issue involved in that judicial proceeding, and thus, the statements about Plaintiff rendered in that proceeding by Dominion are not absolutely privileged.

> **F.** **This case should not be dismissed. If this Court determines that it does not have jurisdiction, then the case should be transferred to the federal court that has jurisdiction to avoid prejudicing Plaintiff.**

While Plaintiff contends that this Court has both subject matter jurisdiction and personal jurisdiction, if this Honorable Court disagrees and determines that it does not have jurisdiction, then the case should be transferred to a federal court with jurisdiction to avoid prejudicing Plaintiff as this case has already been nonsuited.

The Federal Rules of Civil Procedure are written by The Supreme Court of the United States and they govern procedure and they direct the district courts on how to handle matters before the court. The **Federal Rules of Civil Procedure enjoy "presumptive validity"** as they are written by the Supreme Court of the United States. *See Burlington Northern R. Co. v. Woods*, 480 U.S. 1,

6, 107 S.Ct. 967, 94 E. Ed. 2d 1 (1987); *Gil de Rebollo v. Miami Heat Assocs., Inc.*, 137 F.3d 56, 65 (1st Cir. 1998). And the **Federal Rules of Civil Procedure have the force and effect of a federal statute**. *Sibbach v. Wilson Co*, 312 U.S. 1, 61 S.Ct. 422, 312 U.S. 655, 85 L.Ed. 479 (1941) (emphasis added). Pursuant to Fed. R. Civ. P. 1, the Federal Rules of Civil Procedure "should be construed, administered and employed by the court and the parties to secure the **just**, speedy, and **inexpensive** determination of every action and proceeding." (emphasis added).

Since there is at least one federal court in The United States of America that has jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the **just and inexpensive administration** of the Federal Rules of Civil Procedure indicate that Plaintiff's case should be transferred to a court with jurisdiction. Additionally, Plaintiff has already paid the filing fee to file this case so requiring Plaintiff to pay another filing fee to file the exact same case would, by definition, needlessly increase the costs of litigation. The first Rule requires the just and inexpensive determination of every action. While Plaintiff contends that this court has subject matter jurisdiction and personal jurisdiction, if this Court determines that it does not have jurisdiction then Plaintiff respectfully requests that this Court transfer the case to a proper federal court.

## III.    CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that Dominion's Motion to Dismiss (Doc. No. 21) be treated as a Motion for Summary Judgment. Since Dominion has not shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" as required by Rule 56(a), Dominion's Motion for Summary Judgment should be denied. Alternatively, Plaintiff respectfully requests that Dominion's Motion for Summary Judgment be deferred until trial and until after discovery has concluded, as expressly allowed by *Commodities Export Co. v. U.S. Customs Serv.*, 888 F.2d 431, 436 (6th Cir.1989). In the event that Dominion's motion is not treated as a Motion for Summary Judgment, Dominion's Motion to Dismiss must be

denied because the Hamilton County Circuit Court had personal jurisdiction, which was conveyed to this Court upon removal. This Court has personal jurisdiction. Plaintiff stated a legally cognizable claim for defamation. The defamatory statement Dominion made about Plaintiff are not absolutely privileged. Finally, if this Court determines that it does not have jurisdiction, then Plaintiff respectfully asks that this Court transfer the case to a federal court with jurisdiction.

Respectfully submitted this 18th day of February, 2022.

THE NEWMAN LAW FIRM

/s/ Russell A. Newman
Russell A. Newman, BPR No. 033462
6688 Nolensville Road
Suite 108-22
Brentwood, TN 37027
(615) 554-1510  (Telephone)
(615) 283-3529  (Facsimile)
E-mail:russell@thenewmanlawfirm.com
*Attorney for Plaintiff Terpsehore Maras*

## CERTIFICATE OF SERVICE

I, Russell A. Newman, do hereby certify that I am counsel for Plaintiff Terpsehore Maras in the above-captioned matter and that a copy of the **PLAINTIFF TERPSEHORE MARAS' MOTION TO STRIKE DOMINION'S MOTION TO DISMISS AND ITS SUPPORTING MEMORANDUM OF LAW** was filed and served via the CM/ECF system for the United States District Court, Eastern District of Tennessee, Chattanooga Division via electronic mail to the following CM/ECF filers:

W. Scott Sims, Esq.
Michael R. O'Neill, Esq.
SIMS │ Funk, PLC
3322 West End Ave.
Suite 200
Nashville, TN 37203
(615) 292-9355  (Telephone)

(615) 649-8565  (Facsimile)
ssims@simsfunk.com
moneill@simsfunk.com
*Attorneys for Dominion Defendants*
Robb Harvey, Esq.
511 Union Street
Suite 2700
P.O. Box 198966
Nashville, TN 37219-8966
Robb.harvey@wallerlaw.com

Todd B. Tatelman, Esq.
Sarah Clouse, Esq.
5140 O'Neill House Office Building
Washington D.C. 20515
Todd.tatelman@mail.house.gov
Sarah.clouse@mail.house.gov
*Attorneys for Congressman Steve Cohen*

And via U.S. Mail on the following non-registered CM/ECF filers:

Ben Stafford, Esq.
1700 Seventh Ave.
Suite 2100
Seattle, WA 98101
*Attorney for Media Matters for America*

Ali Abdul Razaq Akbar a/k/a Ali Alexander
5125 Pinellas Avenue
Keller, TX 76244

Respectfully submitted this 18th day of February, 2022.

**THE NEWMAN LAW FIRM**

By:     /s/ Russell A. Newman _____
        Russell A. Newman, BPR # 033462