IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| TERPSEHORE MARAS,<br><br>    Plaintiff,<br><br>v.<br><br>THEHUFFINGTONPOST, INC.,<br>REPRESENTATIVE STEVE COHEN, US<br>DOMINION, INC., DOMINION VOTING<br>SYSTEMS, INC., DOMINION VOTING<br>SYSTEMS CORPORATION, MEDIA<br>MATTERS FOR AMERICA and ALI<br>ABDUL RAZAQ AKBAR A/KA/ ALI<br>ALEXANDER,<br><br>    Defendants. | Case. No. 1:21-cv-00317-DCLC-CHS<br><br>District Judge Clifton L. Corker<br><br>Magistrate Judge Christopher H. Steger |

**PLAINTIFF TERPSEHORE MARAS' BRIEF IN OPPOSITION TO
DEFENDANT REPRESENTATIVE STEVE COHEN'S MOTION TO DISMISS**

COMES NOW Plaintiff Terpsehore Maras and, by and through undersigned counsel and pursuant to LR7.01, hereby files this Brief in Opposition to Defendant Representative Steve Cohen's (hereinafter "Rep. Cohen") Motion to Dismiss, and in opposition to said motion Plaintiff respectfully shows unto this Honorable Court the following:

## I.      RELEVANT PROCEDURAL HISTORY

On October 29, 2021, Plaintiff filed a lawsuit against all named Defendants in the Hamilton County Circuit Court, which is a court of general jurisdiction. The Hamilton County Circuit Court had personal jurisdiction and subject matter jurisdiction over Rep. Cohen. Venue was proper in the Hamilton County Circuit Court because, at the time the case was filed, one of the named Defendants was Chattanooga News Chronicle. Rep. Cohen is a proper Defendant by way of supplemental

jurisdiction. However, even though the parties were not diverse and there were forum Defendants, Rep. Cohen had a statute that permitted him to remove the case to federal court. Pursuant to 28 U.S.C. § 1442(a), Rep. Cohen properly removed the case to this Court. Since the case was properly pending in the Hamilton County Circuit Court, Rep. Cohen was required to remove the case to The United States District Court, Eastern District of Tennessee, Chattanooga Division, pursuant to 28 U.S.C. § 1446(a), which states: "A defendant or defendants desiring to remove any civil action from a State court **shall file** in the district court of the United States **for the district and division within which such action is pending** …." 28 U.S.C.A. § 1446(a).

On December 27, 2021, Congressman Steve Cohen removed the case to this Court. Pursuant to Fed. R. Civ. P. 41(a)(1)(A), January 5, 2022, Plaintiff filed a Notice of Voluntary Dismissal without Prejudice for Defendants, Ohio Intelligence Tips, Ross Elder and Chattanooga News Chronicle (Doc. 11). Therefore, since the case was removed from the Hamilton County Circuit Court, this Court has personal jurisdiction and subject matter jurisdiction, discussed in-depth *infra*. In addition to the removal pursuant to 28 U.S.C. §§ 1442 and 1446, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as all parties are now diverse, the amount in controversy exceeds seventy-five thousand dollars ($75,000) and, as such, this Court has personal jurisdiction and subject matter jurisdiction over Rep. Cohen. As discussed in greater detail *infra*, Plaintiff has standing, Rep. Cohen does not have sovereign immunity and he cannot invoke the protections of the Federal Tort Claims Act. Venue statutes are not considered after a case is removed. The venue statutes tell the Plaintiff where to initiate the case; not where the Defendants remove the case. On January 21, 2022, Rep. Cohen filed the following documents with this Court:

(1) Motion to Dismiss the Honorable Steve Cohen (Doc. No. 29); and

(2) Memorandum of Points and Authorities in Support of Motion to Dismiss of [sic] the Honorable Steve Cohen (Doc. No. 22).

On February 11, 2022, Plaintiffs filed a Stipulation Extending Time to Respond to the pending motions to dismiss until Friday February 18, 2022, and the Defendants' deadline to file a Reply was extended until March 4, 2022.

## II.     ARGUMENT AND CITATION OF AUTHORITY

### A.     Introduction

Contrary to his contentions, Plaintiff's defamation case against Rep. Cohen is proper and dismissal is not proper. Plaintiff has pled a *prima facie* and legally cognizable defamation case, meeting all of the elements of defamation under Tennessee law. Plaintiff has standing to file suit; she has suffered a distinct and palpable injury that is fairly traceable to Rep. Cohen's misconduct and Plaintiff is likely to be redressed in a judicial action with money damages and/or injunctive relief.

Rep. Cohen cannot invoke or claim the protections of sovereign immunity as defaming American citizens cannot be acting within the scop of his delegated authority by the U.S. Constitution as a U.S. Congressman.

Rep. Cohen cannot invoke or claim the protections of the Federal Tort Claims Act because the Federal Tort Claims Act only protects federal employees from liability committed within the scope of his employment. Defaming American citizens on social media cannot be within the official scope of employment for a U.S. Congressman. Since the Federal Tort Claims Act does not apply, Rep. Cohen is also subject to an award of punitive damages and Plaintiff's defamation case is against Rep. Cohen in his personal capacity, not in his official capacity as a federal employee, and suit against him was properly filed in the Hamilton County Circuit Court as the FTCA does not apply.

Since Plaintiff's case is against Rep. Cohen in his personal capacity for misconduct, for which sovereign immunity and Federal Tort Claims Act do not apply and the federal government cannot be liable, Rep. Cohen is not entitled benefit from using lawyers the Office of the General Counsel for

the U.S. House of Representatives lawyers, which is free to Rep. Cohen but paid for by the U.S. Taxpayers.

**B.      Ms. Maras has standing to file her defamation case against Rep. Cohen.**

The "irreducible constitutional minimum" of standing is made up of three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted); *McKay v. Federspiel*, 823 F.3d 862, 866-67 (6th Cir. 2016). To establish standing, a plaintiff must allege (1) an "injury in fact," (2) "that is fairly traceable to the challenged conduct of the defendant," and (3) that is "likely to be redressed" in a judicial action. *Spokeo*, 578 U.S. at 338. "Where subject matter jurisdiction is challenged … the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.) 1990). Ms. Maras shows that she has met every single requisite standing element and she now shifts the burden back to Rep. Cohen.

**1.      Plaintiff alleged an "injury in fact" as required by law.**

Ms. Maras pled in Plaintiff's Amended Verified Complaint that she suffered damages as a result of the Defendants' defamation. *See* Plaintiff's Verified Amended Complaint, ¶¶ 79-86 and Plaintiff's WHEREFORE clause. Plaintiff attaches an Affidavit to this brief as Exhibit A to more thoroughly articulate the depth and severity of the damages that have been inflicted upon her due to defamation of character. Contained within Ms. Maras' Affidavit are the following damages, which include, but are not limited to, the following.

30.      After being identified as an election fraud expert witness and defamed, I have suffered the following damages which include, but are not limited to the following:

a.      Even though I was a subcontractor for 11 years, from 2009 to 2020, without anyone complaining about my work product or the quality of work, after being defamed I suddenly lost my contract with Boiance, who contracts with the United States government.

b. I have since applied for numerous contracts with other government contractors. I have not been awarded numerous subcontracts that I previously had for 15+ years and contracts that I ordinarily would have (and should have) been awarded based on my extensive work experience and work history with these government contractors and with the United States government.

c. Even though I was a trainer and in leadership positions and had no complaints on my work product, I lost my contract with Cyracom.

d. I have been demonetized from YouTube.

e. YouTube has banned my channel from broadcasting.

f. Facebook refuses to monetize my content; I have never been monetized.

g. I have been banned from Melio.

h. I have been banned from Gettr.

i. I have been banned from Spotify.

j. I have been banned from Pandora.

k. I have been banned from FUNDLY.

l. I have been banned from Square.

m. I have been banned from PayPal.

n. I have been banned from Venmo.

o. I have been banned from Stripe.

p. I have been banned from Give Send Go.

q. I have been banned from Go Fund Me.

r. I have been banned from Anedot.

s. I have been banned from Square Payments.

t. I have been banned from Periscope.

u.  I have been banned from Parler.

v.  I have been banned from Twitter.

w.  I have been banned from purchasing ads from Facebook.

x.  I have been banned from purchasing ads from Instagram.

y.  Facebook refuses to verify my account.

z.  Instagram refuses to verify my account.

aa. My website was taken down and disappeared while being hosted by Compuserve.

bb. I have been denied from purchasing advertising billboards.

cc. I have been denied Google Ad revenue on certain content that I publish.

dd. I have been denied otherwise available publishing opportunities.

ee. I have been denied otherwise available speaking opportunities.

ff.  My iHeart Radio Cleveland offer to host a Sunday radio show was cancelled.

gg. I have been banned by numerous nationally syndicated radio stations who previously broadcasted my show.

hh. Even though I had White House Press Credentials, some of my regular press credentials have now been revoked.

ii.  My Twitch account was hacked and my data was stolen by someone believed to be working with Media Matters for America.

jj.  I have suffered emotional distress.

kk. I have been threatened.

ll.  My name, standing and reputation has been damaged.

mm.     My family and I have received threats to our safety including, but not limited to, death threats.

Affidavit of Terpsehore Maras, ¶ 31. Plaintiff contends that the aforementioned damages constitute an "injury in fact" and are sufficient to meet the first element of standing.

**2.  Plaintiff has shown that her injury is "fairly traceable to the challenged[mis]conduct of the Defendant [Rep. Cohen]."**

Rep. Cohen's defamatory tweets are "fairly traceable to the challenged conduct of the Defendant[s]...." because prior to her character assassination by the Defendants, Plaintiff had never suffered any of the aforementioned damages whatsoever. However, after she was defamed, Plaintiff suffered significant damages and Plaintiff testified under oath and penalty and perjury as follows with regard to the extent of her damages:

31.  I suffered all of the aforementioned damages after I was defamed by the collective actions of all of the Defendants who ultimately created national disgust and contempt for me as an election fraud expert.

32.  Other than being identified as an election fraud expert witness and then defamed, I know of no other reason that I would have suffered any of the aforementioned damages.

33.  Prior to being identified as an election fraud expert and defamed, I did not suffer any of the aforementioned damages.

Affidavit of Terpsehore Maras, ¶¶ 31-33. Plaintiff contends that she has sufficiently demonstrated the causal connection between her character assassination related to being an election fraud expert witness and her being blacklisted, banned, cancelled, hated, denied otherwise available opportunities and threatened with her safety, up to and including death threats. Additionally, a single defamatory tweet by a very powerful and influential member of the U.S. Congress can have extraordinarily far-reaching, especially when considering the multiplication of impressions through news feeds, retweets, comments and others sharing on other social media platforms, text messages, emails and the like. A

single act of defamation can inflict extraordinary damage. Defamation does not have to be continual in nature in order to be actionable.

Additionally, Rep. Cohen had the highest security clearance as a member of Congress and he knew, or should have known, the identity of the election fraud expert witnesses when he defamed Plaintiff. Further, the identities of the election fraud expert witnesses' were not concealed from the parties to the lawsuit and they were not concealed from members of Congress, who have the requisite security clearance to learn their identities. The lawsuit was filed on December 2, 2020. As early as December 24, 2020, Plaintiff's identity was published by The Washington Post (attached as Exhibit B) to the entire world and the article expressly identified Plaintiff as Sidney Powell's secret expert witness. On December 24, 2020, Plaintiff's identity is a matter of public knowledge. As such, Rep. Cohen knew, or should have immediately known, Plaintiff's identity at the time Rep. Cohen published his defamatory tweet as Plaintiff's identity was public knowledge for approximately 90 days or 12 weeks and six days.

Moreover, Rep. Cohen is a lawyer; he earned his *Juris Doctor* from the University of Memphis in 1973 and he became a licensed lawyer in 1974 and he remained licenses until his license status was changed to "federally exempt" on May 22, 2012. As a lawyer, Rep. Cohen already knows, or he should know, that the general rule in the Model Rules of Professional Conduct state that the lawyer cannot be both the lawyer in the case **and** a witness (much less an essential expert witness in a highly specialized area of expertise) in the same case. The model rules state the following: "*Advocate* (a) **A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness** unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." Model Rules of Professional Conduct, Rule 3.7: Lawyer as Witness (emphasis added). As such, Rep. Cohen knew, or should have known, that Sidney

Powell was not "the Kraken" because Sidney Powell could not be her own expert witness in her own case in chief as the lawyer.

**3. Plaintiff is likely to be redressed with money damages and/or injunctive relief for Rep. Cohen's misconduct by a jury of her peers at trial.**

Plaintiff contends that she is "likely to be redressed" with money damages and/or injunctive relief for Rep. Cohen's misconduct by a jury of her peers in this judicial action. Plaintiff's likely hood of success is great considering the vast extent of her damages that did not exist prior to her character assassination by the Defendants, including Rep. Cohen's defamatory misconduct on social media.

**C. This Court has subject matter jurisdiction because Rep. Cohen is barred from invoking the protections of the Federal Tort Claims Act as committing intentional torts against American citizens is not a part of Rep. Cohen's official job duties as a Member of Congress.**

Rep. Cohen has attempted to invoke the protections of the Federal Tort Claims Act, except that the intentional tort of libel is expressly excluded from being covered by the FTCA. Since committing intentional torts against American citizens is not an official job duty of the Members of Congress, Rep. Cohen is barred from invoking either the requirements or protections of the Federal Tort Claims Act. As such, Plaintiff's common lawsuit against him is proper and the Circuit Court had subject matter jurisdiction, which in turn means the United States District Court has subject matter jurisdiction upon removal.

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances…." 28 U.S.C. § 2674. "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death **caused by the negligent or wrongful act or omission of any employee** of the Government **while acting within the scope of his office or employment**…." 28 U.S.C. § 2675(a) (emphasis added). However, the liability of the United States government is expressly exempted under certain circumstances: "The provisions of this

chapter [Chapter 171] and section 1346(b) of this title shall not apply to -- **(h)** Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, **libel**, **slander**, misrepresentation, deceit, or interference with contract rights…." 28 U.S.C. § 2680 (emphasis added).

In the case at bar, Rep. Cohen committed the intentional tort of libel against Plaintiff when he published his defamatory tweet about Sidney Powell's lawsuit (and Plaintiff as her expert) regarding the rigged 2020 elections. As discussed *supra*, Rep. Cohen knew, or should have known, that the only way that Sidney Powell could prove her election fraud case was by way of expert witness testimony wherein the experts would testify how the votes were fraudulently manipulated. Rep. Cohen also knew, or should have known, that the Model Rules of Professional Conduct generally bar the lawyer from being both the lawyer and the witness in the same case. As such, because Rep. Cohen committed an intentional tort, the Federal Tort Claims Act analysis ends *instanter*. Libel is expressly exempted from being protected by the Federal Tort Claims Act.

"Where the allegedly wrongful conduct is at issue, the inquiry "does not focus on the wrongful nature of the employee's actions; rather, the issue is the actions complained of and whether those actions are **so divergent that their very character severs the relationship of employer and employee**." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1144 (6th Cir. 1996) (emphasis added). The Plaintiff bears the burden "to provide evidence from which it could be reasonably found" that the actions complained of were not within the scope of employment. *Johnson v. Chapman*, 327 F. Supp. 2d 895, 898 (E.D. Tenn. 2004).

In the case at bar, Rep. Cohen contends that his alleged intentional tort of libel was committed within his official capacity and that he can invoke sovereign immunity and Federal Tort Claims Act. However Plaintiff contends that committing an intentional tort can cannot be within a congressman's official duties. The rationale is that intentional torts are expressly excluded in 28 U.S.C. § 2680(h)

from even the applicability of Chapter 171, which includes the requirements, obligations and protections of Federal Tort Claims Act.

In *U.S. v. Shearer*, 473 U.S. 52, (1985), the mother of an Army private, who was killed by a fellow serviceman while off duty, filed a lawsuit against the United States under the Federal Tort Claims Act. The mother claimed that the Army's negligence caused her son's death. The United States District Court for the Eastern District of Pennsylvania granted summary judgment for the United States. The Third Circuit reversed the trial court and remanded the case. The Supreme Court granted certiorari and reversed the Third Circuit Court of Appeals.

The Supreme Court reasoned that "The Federal Tort Claims Act's waiver of sovereign immunity **does not apply to** 'any claim arising out of assault or battery,' 28 U.S.C. § 2680(h), and it is clear that respondent's claim arises out of the battery committed by Private Heard." *Id* at 54-55 (emphasis added). The Plaintiff had tried to frame the complaint in terms of negligence, but the Supreme Court would not permit Plaintiff to circumvent the reach of 28 U.S.C. § 2680(h). Specifically, the Supreme Court stated:

> Respondent **cannot avoid the reach of § 2680(h)** by framing her complaint in terms of negligent failure to prevent the assault and battery. **Section 2680(h) does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery.** We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee. **Thus "the express words of the statute" bar respondent's claim against the Government.** *United States v. Spelar*, 338 U.S. 217, 219, 70 S.Ct. 10, 11, 94 L.Ed. 3 (1949).

*Id* at 55 (emphasis added). 28 U.S.C. § 2680 provides that "**The provisions of** this chapter [**the Federal Tort Claims Act**] and section 1346(b) of this title **shall not apply to** -- (h) **Any claim arising out of** assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, **libel**, slander, misrepresentation, deceit, or interference with contract rights…." (emphasis added).

The Supreme Court was unequivocal in that the United States government cannot be sued for the intentional tort of battery. In like manner, the United States government cannot be sued for libel. Representative Steve Cohen was sued in his personal capacity for libel. The title "Representative" in the style of the case was used out of respect for his position as a sitting U.S. Congressman, but Rep. Cohen was not sued in his official capacity; he was sued in his personal capacity. The intentional tort is expressly exempted by 28 U.S.C. § 2680(h). Again, the Supreme Court of the United States stated that "the express words of the statute bar respondent's claim against the Government." *U.S. v. Shearer*, 473 U.S. 52, (1985) (citing *United States v. Spelar*, 338 U.S. 217, 219, 70 S.Ct. 10, 11 (1949).

In this case, Rep. Cohen contends that committing the intentional tort of defamation, specifically libel, against an American citizen falls within his scope of his employment as a Member of Congress, but he cites no Supreme Court decision that overturns the holding *U.S. v. Shearer*, 473 U.S. 52 (1985).

Since 28 U.S.C. § 2680 expressly exempts libel from the protections, requirements and procedures of Chapter 171, the Federal Tort Claims Act does not apply. Since the Federal Tort Claims Act does not apply, the defamation case against Rep. Cohen in the Hamilton County Circuit Court was not barred; the Circuit Court had subject matter jurisdiction. Since the Circuit Court had subject matter jurisdiction, this Court was conveyed subject matter jurisdiction when the case was removed. This court has subject matter jurisdiction as Plaintiff is diverse from every Defendant.

**D.    This Court has subject matter jurisdiction because Rep. Cohen is barred from invoking the protections of sovereign immunity as committing intentional torts against American citizens is not a part of Rep. Cohen's official job duties as a Member of Congress.**

As cited by Rep. Cohen, "The United States, as sovereign, is immune from suit save as it consents to be sued…." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "[A]n action seeking specific relief against a federal official, **acting within the scope of his delegated authority**, is an

action **against the United States**, subject to governmental privilege of immunity. *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir.) (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 688 (1949) (emphasis added). "This immunity extends to Members of Congress when sued in **their official capacities**." *See Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) ("[S]overeign immunity forecloses [Plaintiff's] claims against [Members of Congress] … as individuals acting in their **official capacities**) (emphasis added). "The provisions of this chapter [Chapter 171] and section 1346(b) of this title shall not apply to -- **(h)** Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, **libel**, slander, misrepresentation, deceit, or interference with contract rights…." 28 U.S.C. § 2680 (emphasis added).

In the case at bar, Rep. Cohen attempts to invoke the benefits and protections of sovereign immunity by claiming that committing the intentional tort of libel was acting within the course and scope of his employment as a Member of Congress. However, Rep. Cohen should not be permitted to invoke sovereign immunity because the benefits and protections of sovereign immunity only apply to officials who are acting within the course and scope of their employment, but 28 U.S.C. § 2680(h) expressly excludes libel from being considered acting within the scope of employment. *See* II. C. for extensive briefing on how committing the intentional tort of libel is not acting in an official capacity.

> ### E.     Plaintiff has not failed to exhaust any administrative remedies.

For the reasons discussed herein, Plaintiff's claims against Rep. Cohen do not arise out of actions Rep. Cohen took in his official capacity.  Therefore, the Federal Tort Claims Act does not govern Plaintiff's claims against Rep. Cohen.  Accordingly, the administrative remedies requirement of the FTCA does not apply to Plaintiff's claims against Rep. Cohen, and the Congressman's argument that Plaintiff's claims against him should be dismissed for failure to exhaust administrative remedies is wholly without merit.

F.  **Plaintiff's defamation claim against Rep. Cohen is not precluded by the First Amendment.**

Rep. Cohen alleges that the First Amendment forecloses Plaintiff's defamation claim against him because the challenged public statement addressed a matter of public concern, in a public place, and Plaintiff's claims allege only injuries stemming from general reputational and emotional harms. Taking the contention first, Plaintiff reiterates the particular damages she has suffered, which she provides in the attached Affidavit and which she has already listed out in Section II.B.1. of this brief. As shown in the particularized damages listed by Plaintiff, Rep. Cohen is mistaken in his assertion that Plaintiff's claim allege only injuries stemming from general reputational and emotional harms.

In regard to the Congressman's statement that "[i]t is certainly not the case that any 'reasonable fact-finder could interpret [the Tweet in question] as containing false assertions of fact, as is required to save such a complaint from dismissal," Plaintiff vehemently disagrees and maintains that a reasonable fact-finder could interpret the Tweet as insinuating "con artists" were behind Sidney Powell's election integrity lawsuit. The Tweet raises serious questions as to whether the Congressman was identifying the individuals involved with the election challenge as being "in on the Con Job." Given the widespread knowledge that Plaintiff was Sidney Powell's secret expert witness, serious questions remain as to whether Congressman knew, or in the absence of recklessness, should have known that his defamatory words would cause damages to Plaintiff.  In conclusion, reasonable fact-finders could differ on whether the Tweet in question contains false assertions of fact, and thus, Rep. Cohen is mistaken in his allegation that Plaintiff's claims against him should be dismissed.

Finally, the article posted by Rep. Cohen in his Tweet, which focuses on a Motion to Dismiss filed by Sidney Powell in Dominion's defamation case against her, is not a matter of public concern to the extent that it would allow Rep. Cohen to intentionally or recklessly publish statements that defame Plaintiff, a third-party witness. Sidney Powell's election fraud lawsuit, which questioned the

integrity of the 2020 national election, is arguably far more likely to be a matter of public concern than is Dominion's defamation lawsuit against Sidney Powell, which involves a personal cause of action sounding in tort. The statements rendered by Rep. Cohen in his Tweet are directed at an article reporting on an event that took place in Dominion's defamation – the filing of Ms. Powell's Motion to Dismiss. See https://lawandcrime.com/2020-election/sidney-powell-tells-judge-no-reasonable-person-would-believe-her-dominion-conspiracy-theories-were-statements-of-fact/ (last visited February 18, 2022). Whether Dominion succeeds in its defamation suit against Sidney Powell cannot reasonably be determined to be a matter of public concern to the same extent Ms. Powell's election integrity lawsuit can be considered a matter of public concern. For this reason, Rep. Cohen is mistaken in his argument that Plaintiff's defamation claim against him is precluded by the First Amendment.

### G. Plaintiff's Amended Complaint states a claim for defamation against Rep. Cohen.

### 1. Rep. Cohen has published a statement "of or concerning" Plaintiff.

Rep. Cohen alleges Plaintiff has failed to show that the Congressman published a defamatory statement that was "of and concerning" Plaintiff. The Congressman notes that Plaintiff in her Amended Complaint states that "When the Defendants publish defamatory statements against Attorney Sidney Powell, the Kraken[,] or any of Attorney Sidney Powell's election fraud accusations and/or conclusions, the Defendants are defaming Plaintiff." Amend. Compl. ¶ 32. However, Rep. Cohen fails to acknowledge that in defaming the Kraken, Rep. Cohen defamed Plaintiff, who **since at least 2019** has been widely-associated with the terms "Kraken" and "releasing the Kraken."

As noted in the Affidavit attached hereto as Exhibit A, prior to serving as an election fraud expert witness for Ms. Powell, Plaintiff, on her international podcast "The Tore Says Show", on multiple occasions referenced "the Kraken" and/or the "release of the Kraken". Exhibit A, ¶ 4. "The

Tore Says Shows" has an international audience of 500,000 viewers or listeners per day in more than sixty (60) countries, with a daily live audience of approximately 40,000 individuals. Exhibit A, ¶5. The episodes of "The Tore Says Show" are transcribed and placed on the website www.toresaid.com, which includes a searchable database of all the show's episodes going back to November 5, 2018. Exhibit A, ¶ 6. A search of the term "kraken" on the www.toresaid.com database reveals that Plaintiff mentioned the term live on her podcast series during the following episodes leading up to Ms. Powell's November 13, 2020, interview with Lou Dobbs, wherein Ms. Powell indicated that she was going to "release the Kraken": February 8, 2019; March 14, 2019; March 18, 2019; and March 25, 2019. Exhibit A, ¶ 7.

Prior to Ms. Powell's November 13, 2020, interview with Mr. Dobbs, Plaintiff contacted Ms. Powell's office and was placed in touch with Julie Haller, an attorney who was working on the election fraud lawsuit(s) with Ms. Powell. Exhibit A, ¶ 8. In speaking with Ms. Haller and confirming that Ms. Powell wished to use Plaintiff's Affidavit to support her election fraud lawsuits, Plaintiff specifically stated, "It's time to release the Kraken. Let's go!" Exhibit A, ¶ 9. Furthermore, on the evening of November 12, 2020, and the morning of November 13, 2020, Plaintiff spoke with various individuals who were directly working with Ms. Powell and in the presence of these individuals, she referred to herself as "the Kraken". Exhibit A, ¶ 10. In addition to Ms. Haller, Sam Faddis and Emily Newman, all of which were working with Ms. Powell, heard Plaintiff state, "It's time to release the Kraken. Let's go!", to which the individuals mentioned responded with laughter. Exhibit A, ¶ 11.

In summary, Plaintiff made numerous on-air references to "the Kraken" or "releasing the Kraken" prior to Ms. Powell publicly stating in the November 13, 2020, interview that she was going to "release the Kraken", and Plaintiff used the term "kraken" in conversing with Ms. Powell's team prior to Ms. Powell filing her election fraud lawsuits and appearing in the interview with Mr. Dobbs on November 13, 2020. Exhibit A, ¶ 12. Following Sidney Powell's use of the term "Kraken" on the

interview with Mr. Dobbs, the Washington Post released a news article expressly revealing Plaintiff as Ms. Powell's secret witness. *See* "Sidney Powell's secret intelligence contractor witness is a pro-Trump podcaster", available at https://www.washingtonpost.com/investigations/sidney-powells-secret-intelligence-contractor-witness-is-a-pro-trump-podcaster/2020/12/24/d5a1ab9e-4403-11eb-a277-49a6d1f9dff1_story.html. (last visited February 18, 2022). In addition, just last week, on February 11, 2022, VICE news published an article confirming that, even as far back as November 2020, it was widely known that Plaintiff is the "anonymous source described as 'a private contractor with experience gathering and analyzing foreign intelligence'" **upon which Ms. Powell relied on** "ask[ing] the Supreme Court to overturn the 2020 election results in December [2020], as part of [Ms. Powell's] widely-derided Kraken lawsuits." See https://www.vice.com/en/article/wxdpwz/ohio-terpsehore-maras-qanon-time-traveler. The same article confirms that the Washington Post "[w]eeks later…**unmasked Ms. Maras as that source**." Exhibit A, ¶13 (emphasis added).

Accordingly, along with the reasons set forth in Section II. B. 2. of this Memorandum, Plaintiff has legitimate reason to believe that that Rep. Cohen knew Plaintiff was associated with term "Kraken" and that Rep. Cohen **intentionally or recklessly disregarded that knowledge** in making defamatory statements about "the Kraken." After all, in insinuating that "the Kraken" witness lied in the statements she provided in the Affidavit she rendered in Ms. Powell's lawsuits, which Plaintiff provided in the form of a Declaration sworn under oath and subject to penalty of perjury pursuant to 28 U.S.C. § 1746, Rep. Cohen has in essence **accused Plaintiff of committing the crime of perjury**. The Supreme Court of the United States in *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990), confirmed that a false statement implying that one has committed the crime of perjury could form the basis of a defamation claim. For these reasons, Plaintiff has established a claim for defamation as Rep. Cohen's Tweet was "of or concerning" Plaintiff.

2.      **Plaintiff has not failed to sufficiently allege actual malice.**

Rep. Cohen contends that because Plaintiff is allegedly a limited public figure, the actual malice standard applies, and that because Plaintiff has failed to sufficiently allege actual malice, she has not adequately established a defamation claim against Rep. Cohen. Rep. Cohen is mistaken for the following reasons.

As noted by a Tennessee court, "If the word uttered **will naturally and proximately cause injury to one's personal, social, official or business relations of life, malice is presumed** and no special damages need be proved; i. e., if the words spoken impute to the person the commission of a crime or subject him to public ridicule, ignominy or disgrace." *Little Stores v. Isenberg*, 26 Tenn. App. 357, 172 S.W.2d 13, 16 (1943) (emphasis added). Moreover, when "a publication is libelous *per se*…it [is] **unnecessary for plaintiffs to prove malice or actual damages**." *Knoxville Pub. Co. v. Taylor*, 31 Tenn. App. 368, 372, 215 S.W.2d 27, 29 (1948) (emphasis added). Thus, "The rule is firmly established that the **false statement or imputation of the commission of a crime involving moral turpitude is libelous *per se*** and damages are presumed to accrue as a matter of law. *Id* (emphasis added) (citing *Williams v. Karnes*, 23 Tenn. 9, 10; *Fry v. McCord*, 95 Tenn. 678, 685, 33 S.W. 568; *Travis v. Bacherig*, 7 Tenn.App. 638, 644; *Little Stores v. Isenberg*, 26 Tenn.App. 357, 362, 172 S.W.2d 13).  "Under the common law of defamation, some words were considered to be so injurious upon their face that **no actual proof of damages was required to make them actionable**. The existence of injury to reputation was presumed from the fact of publication." *Kersey v. Wilson*, No. M2005-02106-COA-R3CV, 2006 WL 3952899, at *6 (Tenn. Ct. App. Dec. 29, 2006) (emphasis added) (citing *Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412, 416, 421 (Tenn.1978)). "These defamations *per se* included allegations that a plaintiff had committed a crime involving moral turpitude." *Kersey, supra*, citing *Dunnebacke v. Williams*, 214

Tenn. 581, 381 S.W.2d 909, 911 (Tenn.1964); *Knoxville Publishing Co. v. Taylor*, 31 Tenn.App. 368, 215 S.W.2d 27, 29 (Tenn.Ct.App.1948).

The Supreme Court of Tennessee has stated, "The rule that a charge of false swearing is not actionable *per se*, unless it amounts to **legal perjury**, is a highly technical one, the reason of which is not very apparent, either as respects the **moral turpitude of the offence**, the motive of the party uttering the charge, or the essential injury to the reputation of the party accused." *Moore v. Horner*, 36 Tenn. 491, 496 (1857) (emphasis added). In accordance with Tennessee law, by insinuating that Plaintiff committed perjury, Congress Cohen has inferred that Plaintiff committed a crime involving moral turpitude. Accordingly, because Rep. Cohen has published a defamatory statement that is libelous *per se*, proof of malice and damages in not required.

In addition to the fact that Rep. Cohen, through the publication of the Tweet in question, accused Plaintiff of perjury, which is considered a crime of moral turpitude by the Tennessee Supreme Court. Tennessee courts have also held that, "While the law of defamation applies generally to protect a person's reputation within the community, the law is especially concerned about defamatory statements that tend to prejudice a party in his business, trade, office or profession." *Dolan v. Poston*, No. M2003-02573-COA-R3CV, 2005 WL 2402919, at *5 (Tenn. Ct. App. Sept. 29, 2005), citing *Smith v. Fielden*, 326 S.W.2d 476, 479 (Tenn.1959); *McWhorter v. Barre*, 132 S.W.3d 354, 364-365 (Tenn.Ct.App.2003); W. Page Keeton, et al., PROSSER AND KEETON ON THE LAW OF TORTS § 112 at 790 (5th Ed.1984) ("The law has always been very tender of the reputation of tradesmen, and therefore words spoken of them in the way of their trade will bear an action that will not be actionable in the case of another person."). "Liability for defamation normally extends to every individual who has taken a responsible part in publishing the defamatory material. In the case of a libel printed in a newspaper, even the printer and the carrier of the paper

can be held liable, if it can be proven that they were aware of the libel." *Dolan*, *supra*, citing W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 113 at 799 (5th Ed.1984).

For the reasons discussed in the attached Affidavit and in Section II. B. 1. in this Memorandum, the defamatory statements published by the Defendants, including Rep. Cohen, have interfered with Plaintiff's professional prospects. Just as the printer and carrier of a paper can be liable for the publication of defamatory statements, Rep. Cohen, as the individual who published the defamatory news article on his Twitter account, is liable for the publication of the defamatory statements rendered against Plaintiff. For these reasons, due to the libelous *per se* nature of Rep. Cohen's statements, Plaintiff does not need to provide actual malice (or actual damages) to recover on her defamation claim against Rep. Cohen.

**3. Plaintiff has adequately pled actual damages.**

Plaintiff reiterates that because Rep. Cohen has published defamatory statements about Plaintiff which a libelous *per se*, Plaintiff does not need to prove either actual malice or damages. However, even if Plaintiff were required to provide the particular damages she has suffered, Plaintiff has done so in the attached Affidavit and in Section II. B. 1. of this Memorandum. Because Plaintiff has cited particularized damages, which again Plaintiff should not be required to do due to the libelous *per se* nature of the defamatory statement at issue, Rep. Cohen's argument that Plaintiff has not adequately pled actual damages is without merit.

### III. <u>CONCLUSION</u>

Plaintiff has sufficiently pled an injury in fact that is fairly traceable to the Defendant and that her claim is likely to be redressed by a jury of her peers. Rep. Cohen cannot invoke the benefits and protections of sovereign immunity because libel is expressly exempted by 28 U.S.C. § 2680(h). Moreover, since libel is exempted by 28 U.S.C. § 2680(h) Rep. Cohen cannot invoke the benefits and

protections of the Federal Tort Claims Act. Committing an intentional tort and defaming a United States citizen is not within the course and scope of Members of Congress. Since the Federal Tort Claims Act does not apply, Rep. Cohen is subject to an award of punitive damages. Plaintiff has pled a legally cognizable defamation case against Rep. Cohen that is not precluded by the First Amendment and if the defamation "will **naturally and proximately cause injury to one's personal, social, official or business relations, malice is presumed**… *i.e.*, if the words spoken impute the person to the commission of a crime or subject [her] to **public ridicule**, ignomiriy or **disgrace**." *Little Stores v. Isenberg*, 26 Tenn.App. 357 (Tenn. Ct. App. 1949) (emphasis added). Based upon the foregoing arguments and citations of authority, Rep. Cohen's Motion to Dismiss should be denied.

Respectfully submitted this 18th day of February, 2022.

THE NEWMAN LAW FIRM


/s/ Russell A. Newman             
Russell A. Newman, BPR No. 033462
6688 Nolensville Road
Suite 108-22
Brentwood, TN 37027
(615) 554-1510  (Telephone)
(615) 283-3529  (Facsimile)
E-mail:russell@thenewmanlawfirm.com
*Attorney for Plaintiff Terpsehore Maras*

## CERTIFICATE OF SERVICE

I, Russell A. Newman, do hereby certify that I am counsel for Plaintiff Terpsehore Maras in the above-captioned matter and that a copy of the **PLAINTIFF TERPSEHORE MARAS' BRIEF IN OPPOSITION TO DEFENDANT REPRESENTATIVE STEVE COHEN'S MOTION TO DISMISS** was filed and served via the CM/ECF system for the United States District Court, Eastern District of Tennessee, Chattanooga Division via electronic mail to the following CM/ECF filers:

W. Scott Sims, Esq.
Michael R. O'Neill, Esq.
SIMS │ Funk, PLC
3322 West End Ave.
Suite 200
Nashville, TN 37203
(615) 292-9355  (Telephone)
(615) 649-8565  (Facsimile)
ssims@simsfunk.com
moneill@simsfunk.com
*Attorneys for Dominion Defendants*

Robb Harvey, Esq.
511 Union Street
Suite 2700
P.O. Box 198966
Nashville, TN 37219-8966
Robb.harvey@wallerlaw.com

Todd B. Tatelman, Esq.
Sarah Clouse, Esq.
5140 O'Neill House Office Building
Washington D.C. 20515
Todd.tatelman@mail.house.gov
Sarah.clouse@mail.house.gov
*Attorneys for Congressman Steve Cohen*

And via U.S. Mail on the following non-registered CM/ECF filers:

Ben Stafford, Esq.
1700 Seventh Ave.,    Suite 2100
Seattle, WA 98101
*Attorney for Media Matters for America*

Ali Abdul Razaq Akbar a/k/a Ali Alexander
5125 Pinellas Avenue
Keller, TX 76244

Respectfully submitted this 18th day of February, 2022.

**THE NEWMAN LAW FIRM**


By:     /s/ Russell A. Newman
        Russell A. Newman, BPR # 033462