**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE AT CHATTANOOGA**

|  |  |
|---|---|
| TERPSEHORE MARAS, | |
| *Plaintiff*, | |
| v. | Case No. 1:21-cv-317 |
| CHATTANOOGA NEWS CHRONICLE, *et al.*, | |
| *Defendants*. | |

## REPLY IN SUPPORT OF THE HONORABLE STEVE COHEN'S MOTION TO DISMISS

Pursuant to the parties' Stipulation Extending Time to Respond (ECF No. 45), the Honorable Steve Cohen, U.S. Representative for the 9th Congressional district of Tennessee, respectfully submits this reply in support of his Motion to Dismiss (ECF No. 29) ("Motion"). Ms. Maras' Opposition (ECF No. 48) misunderstands the applicable standards in this matter and misapplies the relevant law related to sovereign immunity and the Federal Tort Claims Act, while ignoring recent circuit precedent establishing that social media statements, even if alleged to be defamatory, can fall within the scope of employment of a Member of Congress. Accordingly, Congressman Cohen's Motion to Dismiss should be granted.

### I. The Congressman's Actions Were Taken in His Official Capacity

As explained in the Congressman's Motion, the tweet at issue in this case was made in his official capacity as a Member of Congress, and this fact is central to the determination of this case. *See* Mem. in Supp. of Mot. to Dismiss 6-13 (ECF No. 30) ("Memorandum"). Of no relevance is Ms. Maras' contention that she has sued Congressman Cohen in his personal capacity for personal actions, an assertion owed no deference by this Court. Opp'n 3, 12.

Setting aside the fact that the Amended Complaint failed to specify in which capacity Congressman Cohen was sued, *see* Compl. ¶ 4 ("Defendant Representative Steve Cohen is [a] United States Congressman serving the 9th District"), Ms. Maras' characterization of her claims is not binding on this Court. *See* Mem. 9 (citing *Keyter v. McCain*, 207 F. App'x 801, 802 (9th Cir. 2006) (rejecting argument that plaintiff sued federal official defendants in their personal capacities when allegations in the complaint indicated otherwise)). The Court must instead inquire into whether the "allegations in [the] complaint make clear that [plaintiff] sued defendant[] based on acts or omissions within the scope of [his] federal office[]." *Keyter*, 207 F. App'x at 802.

While courts are bound to accept well-pleaded *factual* allegations as true, the same cannot be said for legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679; *see also Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 625 (6th Cir. 2013) (citation omitted) ("[T]he Court should not accept conclusions of law or unwarranted inferences of fact cast in form of factual allegations."). The relevant question here of whether the Congressman's actions fall within the scope of his employment as a Member of Congress is "a question of law, not fact." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1147 (6th Cir. 1994).

## II. Ms. Maras Still Cannot Establish Causation

Ms. Maras does not persuasively respond to Congressman Cohen's argument that she has not established standing because she cannot demonstrate causation. Even though Congressman Cohen's Motion assumed *arguendo* that the Amended Complaint established an injury in fact, Ms. Maras goes to great lengths to supplement the record on her various alleged injuries. *See* Opp'n 4-6. The inclusion of these additional allegations, which are irrelevant given that the Congressman did not contest injury in fact, represents an improper attempt by Ms. Maras to circumvent the standard procedure for amending a Complaint. *See* Fed. R. Civ. P. 15.

For all the reasons presented in the Congressman's Motion, the causation analysis remains fatal to Ms. Maras' case. *See* Mem. 4-6. The Opposition asserts nothing more than the existence of a temporal nexus to connect her alleged injuries to the actions of the Defendants. *See* Opp'n 7-8 ("[P]rior to her character assassination by the Defendants, Plaintiff had never suffered any of aforementioned damages whatsoever."). While Ms. Maras identifies numerous newly alleged injuries—including struggling to find work as a government contractor and being banned from numerous social media and financial websites—she fails to plausibly connect any of her purported injuries specifically to the actions of Congressman Cohen. *See* Opp'n 7 (discussing causation as to "the Defendants" collectively).

It remains entirely unsubstantiated how a single tweet, which does not mention Ms. Maras, or even indirectly refer to her, could possibly result in such extensive damages. Ms. Maras provides no factual allegations to support any reasonable inference that her damages are a result of the Congressman's tweet, instead of, for example, due to her own participation in the underlying election litigation, or because of the independent actions of numerous third parties not before the Court who have decided not to hire her or have opted to ban her from their services.

*See Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 42-43 (1976); *see also Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff*, 23 F.4th 1028, 1034-35 (D.C. Cir. 2022) (noting that, where plaintiff alleged that certain information was removed after a Member of Congress contacted social media companies about vaccine misinformation, "it is far less plausible that the companies' actions were a response to one legislator's inquiry than that they were a response to widespread societal concerns about online misinformation"). Where, as here, it is "purely speculative" whether a plaintiff's injuries can be traced to the conduct of defendants, this is insufficient to support standing. *See Simon*, 426 U.S. at 42–43.

Further, Ms. Maras places outsized weight on the assertion that Congressman Cohen should have known her identity and connection to the election fraud cases when posting his tweet. Opp'n 8. This point is neither relevant nor disputed. As noted in the Congressman's Motion, Ms. Maras' identity had been made public long before the Congressman's tweet. *See* Mem. 6. None of this changes the inescapable fact that the Congressman's tweet makes no reference to Ms. Maras. This purported causal chain is far too attenuated to support standing because it requires the Court to infer that a reader would be able to interpret a tweet referencing an article, neither of which identifies Ms. Maras, as somehow about her, inherently defamatory, and the cause of her alleged litany of injuries. For all the reasons explained previously, this is simply not a reasonable conclusion.

## III.    The FTCA Does Not Waive Sovereign Immunity for Ms. Maras' Claims

Ms. Maras misunderstands and misapplies the legal standards underlying the principles of sovereign immunity and the protections of the Federal Tort Claims Act ("FTCA"). The FTCA provides the *exclusive* remedy for any torts committed by a federal official when acting within the scope of his or her employment. *See* 28 U.S.C. § 2679(b)(1) ("The remedy against the

United States provided by [the FTCA] … is *exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee* whose act or omission gave rise to the claim….") (emphasis added); *United States v. Smith*, 499 U.S. 160, 166 (1991) (holding that the FTCA is the "exclusive mode of recovery for the tort of a Government employee even when the FTCA itself precludes Government liability").  Under the FTCA, "the United States shall be substituted for the employee as a defendant in any common law tort action initiated against an employee if the employee was acting within the scope of employment." *Henson*, 14 F.3d at 1147.  There can be no personal capacity suit if the actions complained of are within the scope of employment.

If this Court finds, as it should for the reasons discussed in Congressman Cohen's Motion and below, that the Congressman's tweet was within the scope of his employment, this case must be dismissed because there is no valid claim against the United States or the Congressman in his personal capacity.  This is true even if the result is to leave Ms. Maras without a viable action against any federal defendant.  *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995) ("If ... an exception to the FTCA shields the United States from suit, the plaintiff may be left without a tort action against any party."); *Does 1-10 v. Haaland*, 973 F.3d 591, 597 (6th Cir. 2020) (citation omitted) ("Moreover, as interpreted by the Supreme Court, the Westfall Act immunizes individual federal employees even where the FTCA bars a suit against the United States as well.").

Congressman Cohen's tweet was undoubtedly issued in the scope of his employment as a Member of Congress.  *See* Mem. 8-13 (citing *Does 1-10 v. Haaland*, 973 F.3d at 602; *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 663 (D.C. Cir. 2006); *Williams v. United States*, 71 F.3d 502, 507 (5th Cir. 1995); *Operation Rescue Nat'l*, 975 F. Supp. at 107)).  Ms. Maras

completely fails to address any of the cases cited by the Congressman consistently holding that allegedly defamatory public statements made by Members of Congress can be within the scope of their official duties. *See* Mem. at 8-13. Ms. Maras may "contend" otherwise, *see* Opp'n 10, but it is indisputable that so-called intentional torts can be within the scope of employment of a Member of Congress.

Conspicuously absent from Ms. Maras' Opposition is any discussion of the Sixth Circuit's recent opinion in *Does 1-10 v. Haaland*, where the Circuit held that a tweet by a Member of Congress on a matter of public concern, which was alleged to be defamatory, was well within the scope of her employment. 973 F.3d at 597, 602 ("There is no meaningful difference between tweets and the other kinds of public communications between an elected official and their constituents that have been held to be within the scope-of-employment under the Westfall Act.").

The core analysis in these matters is whether the act of making the statement itself is within the scope of employment. If so, the alleged defamatory content is of no relevance. *See Ballenger*, 444 F.3d at 664 ("The appropriate question, then, is whether that telephone conversation—not the allegedly defamatory sentence—was the kind of conduct Ballenger was employed to perform."). The Sixth Circuit in *Haaland* specifically held that "Congressmembers routinely broadcast their views on pending legislation and related current events through press releases, televised speeches, interviews, and, as in the present case, through social media postings." *Haaland* at 602. Ms. Maras has cited no authority that would require this Court to conclude that Congressman Cohen acted outside the scope of his official duties in posting the tweet at issue in this case.

Because the Congressman acted in his official capacity, the FTCA provides the only avenue for relief available to Ms. Maras for claims arising from his actions.  However, the FTCA expressly precludes recovery for claims of defamation.  On that much, all parties agree.  *See* Opp'n 12 ("The Supreme Court was unequivocal in that the United States government cannot be sued for the intentional tort of battery.  In like manner, the United States government cannot be sued for libel.").  *United States v. Shearer*, on which Ms. Maras relies, *see* Opp'n 11-12, stands for nothing more than the unremarkable position that the FTCA does not waive the United States' sovereign immunity for certain intentional torts.  473 U.S. 52, 55-56 (1985).  Yet Ms. Maras wrongly cites *Shearer* to assert that, because no claim against the United States is available to her, she can proceed against the Congressman in his personal capacity.  *See* Opp'n 12.  This is simply incorrect.  The FTCA immunizes individual federal officials from suit for official acts, even when the terms of the statute bar a suit against the United States.  *See, e.g.*, *Smith*, 499 U.S. at 166; *Haaland*, 973 F.3d at 597, 602 ("Therefore, the United States was properly substituted as Defendant in this case and the district court correctly dismissed Senator Warren and Representative Haaland from the suit. That the United States has not waived its immunity to libel suits is of no moment.").

IV.     **The Complaint Still Fails to State a Claim Upon Which Relief Can Be Granted**

The Amended Complaint still fails to state an actionable claim for defamation based on the Congressman's tweets.  To begin with, a motion brought under Rule 12(b)(6) is one that challenges the sufficiency of a party's pleading, not the underlying claims.  *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).  In evaluating such a motion, "the court may consider documents attached to the motion or response as part of the pleadings *if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims*." *Defreece v. AT&T*, No. 2:17-

CV-00003, 2017 WL 11188100, *1 (E.D. Tenn. Mar. 21. 2017) (emphasis added) (citation omitted) (granting a motion to strike an affidavit attached to an opposition brief). None of the supplemental allegations included in Ms. Maras' affidavit should be considered in evaluating the sufficiency of the Amended Complaint under Rule 12(b)(6) because they are not referred to or included in her Amended Complaint.

Further, because the Amended Complaint itself alleged only general reputational and emotional harms, and because Congressman Cohen's statement expressed an opinion on a matter of public concern, his speech is protected by the First Amendment. *See* Mem. 17-18. Ms. Maras cites no caselaw or authority of any kind in response to the arguments raised in the Congressman's Motion, relying exclusively on her "vehement[] disagree[ment]" and her opinion that the topic of Congressman Cohen's tweet is "not a matter of public concern." Opp'n 14-15.

Even taking all these improperly pleaded allegations into consideration, which this Court should not do, *see Defreece*, 2017 WL 11188100 at *1, Ms. Maras still fails to establish that the Congressman's tweet is "of and concerning" her, as is required under Tennessee law. *See Steele v. Ritz*, No. W2008-02125-R3-CV, 2009 WL 4825183, *3 (Tenn. Ct. App. Dec. 16, 2009) (citation omitted). Ms. Maras cites no authority at all, much less any authority that expressly contradicts the established law in Tennessee that a claim for defamation may not be based "on an alleged defamatory statement made 'of and concerning' a third party." *Steele*, 2009 WL 4825183 at *3. The plain language of Congressman Cohen's tweet is about Sidney Powell and the litigation following her involvement in the 2020 election fraud lawsuits. *See* Am. Compl. ¶ 62. The tweet makes no reference, explicit or implicit, to Ms. Maras. *Id.*

Even considering all the additional allegations regarding Ms. Maras' connection to the word "Kraken," Opp'n 15-17, the fact remains that Congressman Cohen's tweet makes no

reference to the word "Kraken," *see* Am. Compl. ¶ 62.  Indeed, where the article linked in the tweet makes a passing reference to "the Kraken lawsuits,"[1] the article explains that the term "Kraken" refers to "the mythical, octopus-like creature depicted in the Hollywood blockbuster Clash of the Titans," and not to Ms. Maras.

Finally, Ms. Maras argues that an accusation of perjury is libel *per se* sufficient to establish actual malice, and that damages can be presumed.  Opp'n 18-20.  Notably, Ms. Maras does not contest that she is a limited public figure for purposes of this ligation, instead merely asserting that a showing of actual malice is not required, and damages should be presumed.  *Id.* According to Ms. Maras' theory, Congressman Cohen's tweet, which, again, does not mention her directly or indirectly, constitutes defamation *per se* because it amounts to an accusation of perjury and therefore malice and damages should be presumed.  *Id.* at 19.  However, Ms. Maras fails to acknowledge that the Supreme Court dispensed with the doctrine of presumed damages in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).  Concerned that presumed damages for defamation could "inhibit the vigorous exercise of First Amendment freedoms," the Supreme Court declared that they should no longer be permitted.  *Id.* at 349.  The Tennessee Supreme Court concurred with this reasoning in *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 416, 421 (Tenn. 1978), and approved the elimination of presumed damages.  Following these cases, "[d]amages from false or inaccurate statements can no longer be presumed; actual damage must be sustained and proven in all defamation cases."  *Kersey v. Wilson*, No. M2005-02106-COA-R3-CV, 2006 WL 3952899, at *6 (Tenn. Ct. App. Dec. 29, 2006) (citation omitted).  Further, Ms. Maras cites no caselaw to establish that the "actual malice" standard does not apply in

---

[1] Adam Klasfeld, *Sidney Powell Tells Judge 'No Reasonable Person' Would Believe Her Dominion Conspiracy Theories Were 'Statements of Fact'*, Law & Crime News (Mar. 22, 2021), https://perma.cc/2JYQ-2KRQ.

defamation cases involving limited public figures. *See* Opp'n 18-20. Contrary to her assertions, Opp'n 20, Ms. Maras is required to plead sufficient facts to show both that Congressman Cohen acted with actual malice in posting his tweet, and to plead actual damages. The Amended Complaint establishes neither, and should be dismissed.

## CONCLUSION

For all the reasons set forth above and in Congressman Cohen's Memorandum in Support of his Motion to Dismiss (ECF 30), Ms. Maras's Complaint should be dismissed with prejudice.

Respectfully submitted,

*/s/ Douglas N. Letter*
DOUGLAS N. LETTER (D.C. Bar No. 253492)
  *General Counsel*
TODD B. TATELMAN (VA Bar No. 66008)
  *Principal Deputy General Counsel*
SARAH CLOUSE (MA Bar No. 688187)
  *Associate General Counsel*
BROOKS M. HANNER (D.C. Bar No. 1005346)
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
douglas.letter@mail.house.gov

*Counsel for Defendant Steve Cohen*

March 4, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2022, I caused the foregoing Reply in Support of

Defendant's Motion to Dismiss to be filed via the CM/ECF system for the U.S. District Court for

the Eastern District of Tennessee, which I understand caused service on all registered parties. I

further certify that I served a copy of the foregoing via Federal Express on the following non-

registered filer:


ALI ABDUL RAZAQ AKBAR A/K/A ALI ALEXANDER
5125 Pinellas Avenue
Keller, TX 76244

*/s/ Douglas N. Letter*
DOUGLAS N. LETTER
