IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| TERPSEHORE MARAS,<br><br>    Plaintiff,<br><br>v.<br><br>REPRESENTATIVE STEVE COHEN, US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., DOMINION VOTING SYSTEMS CORPORATION, MEDIA MATTERS FOR AMERICA and ALI ABDUL RAZAQ AKBAR A/KA/ ALI ALEXANDER,<br><br>    Defendants. | Case. No. 1:21-cv-00317-DCLC-CHS<br><br>District Judge Clifton L. Corker<br><br>Magistrate Judge Christopher H. Steger |

PLAINTIFF TERPSEHORE MARAS' BRIEF IN OPPOSITION
TO MEDIA MATTERS FOR AMERICA'S MOTION TO DISMISS

COMES NOW Plaintiff Terpsehore Maras and, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12, hereby files this Brief in Opposition to Media Matters for America's (herein after "Media Matters") Motion to Dismiss, and in opposition to said motion Plaintiff respectfully shows unto this Honorable Court the following:

## I.      RELEVANT FACTS AND PROCEDURAL HISTORY

On October 29, 2021, Plaintiff filed a lawsuit against all named Defendants in the Hamilton County Circuit Court, which is a court of general jurisdiction. The Hamilton County Circuit Court had personal jurisdiction and subject matter jurisdiction over Media Matters. Venue was proper in the Hamilton County Circuit Court because, at the time the case was filed, one of the named Defendants was Chattanooga News Chronicle. Media Matters transacts business by collecting donations in

Tennessee. According to Bloomberg.com, "Media Matters for America operates as a **non-profit organization**. The organization provides research, information services, analyzes, and correcting [sic] conservative misinformation. Media Matters for America serves customers in the United STates [sic]." Media Matters for America Profile, https://www.bloomberg.com/profile/company/1026680D:US (last accessed March 21, 2022).

## Media Matters for America

Media Matters for America operates as an non-profit organization. The Organization provides research, information services, analyzes, and correcting conservative misinformation. Media Matters for America serves customers in the United STates.

| SECTOR | INDUSTRY | SUB-INDUSTRY | INCORPORATED |
|---|---|---|---|
| Consumer Discretionary | Consumer Discretionary Services | Consumer Services | 08/15/2003 |

| ADDRESS | PHONE | WEBSITE | NO. OF EMPLOYEES |
|---|---|---|---|
| PO Box 52155 Washington, DC 20091 United States | 1-202-756-4100 | www.mediamatters.org | -- |

Plaintiff can confirm that Media Matters accepts donations and transacts business in Tennessee. On March 7, 2022, **Erin M. Newman** donated five dollars ($5) to Media Matters online. Declaration of Erin M. Newman (attached hereto as Exhibit 1). Erin M. Newman lives in Nolensville, Tennessee. *Id*. At the time of her donation, Erin M. Newman was physically present in Tennessee. *Id*.



On March 7, 2022, **Megan M. Heim** donated five dollars ($5) to Media Matters online. Declaration of Megan Heim (attached hereto as Exhibit 2). Megan M. Heim lives in Nolensville, Tennessee. At the time of her donation, Megan M. Heim was physically present in Tennessee. *Id*.

Thank you for your gift of $5.00 to *Media Matters for America*.

Your donation directly supports our work for an honest and accountable media.

Have questions or comments? Email us at action@mediamatters.org.

We couldn't do this without you!

The *Media Matters* Team

Transaction Summary

**Gift Information**

| | |
|---|---|
| Date: | 03/07/2022 |
| Amount: | $5.00 |
| Tax Deductible Amount: | $5.00 |
| Confirmation Code: | 62291 |

**Exhibit 1**

**Donor Information**

| | |
|---|---|
| Donor Name: | Megan Heim |
| Email Address: | ▮▮▮▮▮▮ |
| Address: | ▮▮▮▮▮▮ |
| | Nolensville, TN 37135 US |

**Payment Information**

| | |
|---|---|
| Payment Type: | American Express |
| Credit Card Number: | ▮▮▮▮▮▮ |
| Bank Account / Routing: | |

mediamatters.org
Contact Us
Privacy Policy

On March 7, 2022, **Tianna M. Lucas** donated ten dollars ($10) to Media Matters online. Declaration of Tianna M. Lucas (attached hereto as Exhibit 3). Tianna M. Lucas lives in Franklin, Tennessee. At the time of her donation, Tianna M. Lucas was physically present in Tennessee. *Id.*

Thank you for your gift of $10.00 to *Media Matters for America*.

Your donation directly supports our work for an honest and accountable media.

Have questions or comments? Email us at action@mediamatters.org.

We couldn't do this without you!

The *Media Matters* Team

**Transaction Summary**

**Gift Information**

| | |
|---|---|
| Date: | 03/07/2022 |
| Amount: | $10.00 |
| Tax Deductible Amount: | $10.00 |
| Confirmation Code: | 62297 |

**Donor Information**

| | |
|---|---|
| Donor Name: | Tianna Lucas |
| Email Address: | ████████@yahoo.com |
| Address: | ████████ |
| | Franklin, TN |
| | 37067 |
| | US |

**Payment Information**

**Exhibit 1**

| | |
|---|---|
| Payment Type: | Visa |
| Credit Card Number: | ████████ |
| Bank Account / Routing: | |

mediamatters.org
Contact Us
Privacy Policy

Clearly, on March 7, 2022, Media Matters collected donations and transacted business in the State of Tennessee. Plaintiff also contends that Media Matters collected donations and transacted business in the State of Tennessee prior to March 7, 2022, and during all relevant times as it relates to this case. If Media Matters claims that it did not collect donations or transact business in Tennessee prior to March 7, 2022, and during the relevant time period for this lawsuit, then Plaintiff will need to request leave of court to conduct discovery to examine Media Matters' financial transactions during the relevant time period in order to confirm or dispel the veracity of said allegations. Unless otherwise disputed, Media Matters collected donations and transacted business during all relevant times for this case. Moreover, Media Matters is a registered charity in Tennessee and its status does not expire until June 30, 2022. Tennessee Department of State, Financial Reports for Registered Charities, Media Matters (attached as Exhibit 4).

Therefore, Media Matters has availed itself of the venue and was subject to personal jurisdiction by transacting business in the state of Tennessee pursuant to Tenn. Code Ann. § 20-2-201. However, even though the parties were not diverse and there were forum Defendants, Congressman Steve Cohen had a statute that permitted him to remove the case to federal court. Pursuant to 28 U.S.C. § 1442(a), Representative Cohen properly removed the case to this Court. Since the case was properly pending in the Hamilton County Circuit Court, Congressman Cohen was required to remove the case to The United States District Court, Eastern District of Tennessee, Chattanooga Division, pursuant to 28 U.S.C. § 1446(a), which states: "A defendant or defendants desiring to remove any civil action from a State court **shall file** in the district court of the United States **for the district and division within which such action is pending** …." 28 U.S.C.A. § 1446(a).

On December 27, 2021, Congressman Steve Cohen removed the case to this Court. Pursuant to Fed. R. Civ. P. 41(a)(1)(A), January 5, 2022, Plaintiff filed a Notice of Voluntary Dismissal without Prejudice for Defendants, Ohio Intelligence Tips, Ross Elder and Chattanooga News Chronicle (Doc.

5

11). Therefore, since the case was removed from the Hamilton County Circuit Court, this Court has personal jurisdiction and subject matter jurisdiction. In addition to the removal pursuant to 28 U.S.C. §§ 1442 and 1446, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as all parties are now diverse, the amount in controversy exceeds seventy-five thousand dollars ($75,000), there is no Defendant that is a resident of the forum and, as such, this Court has personal jurisdiction and subject matter jurisdiction over Dominion. Venue statutes are not considered after a case is removed. The venue statutes tell the Plaintiff where to initiate the case; not where the Defendants remove the case.

On March 7, 2022, Media Matters filed a Motion to Dismiss and Memorandum of Points and Authorities in Support of Motion to Dismiss for Media Matters of America contending (1) This court does not have personal jurisdiction and (2) Plaintiff failed to state a claim. Plaintiff now files this brief in opposition to Media Matters Motion to Dismiss showing this Honorable Court that (1) The court has personal jurisdiction; and (2) Plaintiff pled a legally cognizable defamation claim.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Contrary to Media Matters' contentions, this Court already has personal jurisdiction over the Media Matters by Tennessee law and the federal removal statutes.

Plaintiff contends that this Honorable Court **already has** personal jurisdiction over Media Matters pursuant to Tennessee law and the federal removal statutes. Therefore, since this Court already has personal jurisdiction, this case should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). "**Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons**." *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S.Ct. 746, 753, 187 L.Ed.2d 624 (2014) (emphasis added). "This is because a federal district court's authority to assert personal jurisdiction in most cases **is linked to service of process on a defendant 'who is subject to the**

__jurisdiction of a court of general jurisdiction in the state where the district court is located.__'" *Id*
(citing Fed. Rule of Civ. Proc. 4(k)(1)(A)) (emphasis added). The Due Process Clause of the
Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment
of its courts. *Id* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559,
62 L.Ed.2d 490 (1980)). Since the case was filed in state court, we must analyze whether the circuit
court had general jurisdiction, which would then convey personal jurisdiction to this Court when
the case was removed by Representative Cohen pursuant to 28 U.S.C. § 1442.

Pursuant to Tennessee law, "__Any corporation claiming existence under the laws__ of the
United States __or any other state__ or of any foreign country to the United States, or any business
trust __found doing business in this state, shall be subject to suit here to the same extent that__
__corporations of this state are by the laws of this state liable to be sued__, so far as relates to any
transaction had, in whole or in part, within this state or any cause of action arising here, but not
otherwise." Tenn. Code Ann. § 20-2-201(a) (emphasis added). Moreover, "A corporation …
having __any transaction with persons … situated in this state__, through any agency whatever
acting for it within the state, __shall be held to be doing business here__ within the meaning of this
section." Tenn. Code Ann. § 20-2-201(b) (emphasis added).

In the case at bar, Media Matters goes to great lengths to argue the federal personal
jurisdiction law. The personal jurisdiction laws that must be analyzed are those that applied *when*
*the case was initiated*. The case was initiated in the Hamilton County Circuit Court and that court
had personal jurisdiction pursuant to Tennessee law. Media Matters clearly does business
Tennessee. On March 7, 2022, Erin M. Newman ($5), Megan M. Heim ($5) and Tianna M. Lucas
($10) all made donations to Media Matters from within the State of Tennessee. Media Matters is
a corporation. It may be a non-profit corporation, but it is nonetheless a corporation. Collecting
donations is Media Matters transacting business in Tennessee; this is how non-profit corporations

exist, they collect donations. The applicable laws in Tennessee essentially state that if Media Matters is "**found doing business in Tennessee**, [then Media Matters] **shall be subject to suit here to the same extent that corporations of this state** are by the laws of this state liable to be sued." Tenn. Code Ann. § 20-2-201(a) (emphasis added). Moreover, Tennessee law states that "A corporation [**Media Matters**] … having any transaction [**accepting donations**] with persons [**Erin M. Newman, Megan M. Heim and Tianna M. Lucas**]… situated in this state[**Nolensville, TN Nolensville, TN and Franklin, TN**] , through any agency whatever acting for it within the state, **shall be held to be doing business here within the meaning of this section**." Tenn. Code Ann. § 20-2-201(b) (emphasis added). In other words, because Media Matters collects donations in Tennessee, it transacts business in Tennessee. Since it transacts business in Tennessee, Media Matters is subject to the Hamilton County Circuit Court's personal jurisdiction.

When the case is removed, the Hamilton County Circuit Court hands the case off to the federal court much like a running athlete passes the baton from one runner to the next. The Circuit Court relinquishes jurisdiction and passes the baton [or the case] to the federal court. Personal jurisdiction and venue are analyzed from the vantage court from where the case was initiated; not where the case ends up. Subject matter jurisdiction is different because federal court must retain subject matter jurisdiction during the entire duration of the case. Here, the court clearly has subject matter jurisdiction because Representative Cohen has a statute that permitted him to remove the case. Subsequent to removal, Plaintiff cured all other defects (*i.e.*, diversity and forum defendant rule) so this Honorable Court retained subject matter jurisdiction. Media Matters collects donations in Tennessee and publishes content in Tennessee. The activities of collecting donations and publishing articles are one-in-the-same, for without money Media Matters could not pay its writers and it could not publish content. Contrary to Media Matters' allegations, Media Matters has

substantial interests in Tennessee because it has donors in Tennessee, which permit Media Matters to fund its operations.

**B.     Media Matters' Motion to Dismiss for "failure to state a claim" should be summarily denied because Plaintiff's Complaint provided a short and plain statement of her claim as required by Rule 12(b)(6).**

The Rule 12(b)(6) test has been revised in recent years. In *Conley v. Gibson*, the Supreme Court stated the interplay between Rule 8 (pleading) and Rule 12(b)(6) as follows: "[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears **beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief**." *Conley v. Gibson* 355 U.S. at 45-46. 355 U.S. 41, 45, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957), abrogated by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (emphasis added). In *Bell Atlantic Corporation v. Twombly*, 55 U.S. 544 (2007), the Court noted questions raised regarding the "no set of facts" test and **clarified that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint**." 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (C.A.7 1994) (emphasis added). The court continued "*Conley*, then, **described the breadth of opportunity to prove what an adequate complaint claims**, not the minimum standard of adequate pleading to govern a complaint's survival." *Id* (emphasis added).

"Rule 8 marks a **notable and generous departure** from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. at 678-79 (emphasis added). In relevant part, Rule 8 provides as follows:

> **(a) Claim for Relief.** A pleading that states a claim for relief must contain:

> (**1**) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (**2**) a **short and plain statement of the claim** showing that the pleader is entitled to relief; and
> (**3**) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 12(a) (emphasis added).

"**To survive a motion to dismiss, a complaint must contain sufficient factual matter**, accepted as true, to '**state a claim to relief that is plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 55 U.S. at 570) (emphasis added). "A claim has **facial plausibility** when the plaintiff pleads **factual content that allows the court to draw the reasonable inference that the defendant is liable** for the misconduct alleged." *Id* (citing *Twombly*, 55 U.S. at 556) (emphasis added). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a **defendant has acted unlawfully**." *Id* (emphasis added). For purposes of a Motion to Dismiss, the Court must take all of the factual allegations in the complaint as true. *Id* at 678. Where a complaint is inadequate, leave to amend the complaint is common and leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15.01.

In the case at bar, Plaintiff clearly survives Media Matters' Motion to Dismiss. Federal law requires a "short and plain statement of the claim" – not a treatise of every transgression by every Defendant that could have been pled in the lawsuit. **One defamatory statement is sufficient.** In fact, Plaintiff contends that Media Matters' defamatory headline is sufficient for Plaintiff to make a "short and plain statement of the claim" as required by Fed. R. Civ. P. 12(a)(2). The headline is libel *per se* (discussed further *infra*) and Plaintiff has an automatic right to maintain a cause of action against the Defendants who defamed her. Media Matters accused Plaintiff of committing perjury. Plaintiff testified that there was election fraud. An allegation that Plaintiff was dishonest is libel *per se*. Since

Media Matters has committed libel *per se* their Motion to Dismiss should be summarily denied. Below is Media Matters' defamatory headline. "Of and concerning" is discussed *infra*.



Nonetheless, Plaintiff's Verified Amended Complaint made a legally sufficient short and plain statement of Plaintiff's claim:

- ✓ The claim is that Media Matters defamed Plaintiff. Plaintiff's Amended Verified Complaint, ¶ 71.

- ✓ "[Media Matters] cannot disprove any Paragraph in Plaintiff's Affidavit [regarding the election fraud]." *Id* at ¶ 77.

- ✓ "[Media Matters is] declaring that the Plaintiff is guilty of the crime of perjury by portraying it as false information." *Id* at ¶ 79.

- ✓ "[Media Matters has] no applicable privilege or legal authorization to make these false and defamatory and libelous statements about the Plaintiff." *Id* at ¶ 80.

- ✓ "[Media Matters] published the above-referenced statements with actual malice, knowing or recklessly disregarding that they are false." *Id* at ¶ 81.

- ✓ "Plaintiff is entitled to punitive damages pursuant to Tenn. Code Ann. § 29-39-104, as there is clear and convincing evidence and sworn testimony that [Media Matters has] not proven false." *Id* at 82.

- ✓ "[Media Matters'] statements are defamatory *per se*[1]." *Id* at 84.

- ✓ "[Media Matters'] false statements have exposed Plaintiff to the most extreme hatred and contempt and has harmed Plaintiff's professional reputation and her credibility." *Id* at ¶ 85.

- ✓ "There are no accusations that [that Media Matters could make] that could do more damage to Plaintiff's integrity, ethics and honesty." *Id* at ¶ 86.

Plaintiff has pled a legally cognizable and legally sufficient defamation/libel case against Media Matters. This Court can draw the reasonable inference that Media Matters committed defamation and that Media Matters is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 55 U.S. at 556). Moreover, **Media Matters has not shown this Court that "Plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."** *Conley v. Gibson* 355 U.S. at 45-46. 355 U.S. 41, 45, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957), abrogated by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (emphasis added). Plaintiff believes that leave should be freely given to permit Plaintiff to amend her complaint unless/until Media Matters satisfactorily proved to this Court that there is no set of facts that would entitle Plaintiff to relief.

In summary, Plaintiff served as Attorney Sidney Powell's subject matter expert in multiple election fraud cases. Plaintiff swore under oath that there was election fraud and articulated how the

---

[1] Language that is libelous *per se* **confers a *prima facie* right of action** and trumps a Rule 12(b)(6) Motion to Dismiss and the law will presume damage without proof. *See Sweeney v. Newspaper Printing Corp.*, 177 Tenn. 196, 147 S.W.2d 406, 407 (1941).

election fraud was being accomplished. Media Matters contends that there was no election fraud and that the alleged election fraud was "Sidney Powell's bonkers election conspiracy theories". The general rule is that the attorney cannot be both the lawyer and the witness in the same case. Sidney Powell could not be the expert witness requisite to prove her election fraud case. It necessarily follows that Sidney Powell must rely on the testimony of subject matter experts in order to prove the election fraud. Sidney Powell was not the source of the election fraud evidence. The source of the election fraud was from her subject matter expert: Terpsehore Maras (Plaintiff). Evidence that is presented to the Court, whether by Affidavit or by live testimony, is sworn testimony under oath and penalty of perjury. When Media Matters claims that Sidney Powell has bonkers election conspiracy theories, Media Matters is ultimately defaming the source from which Attorney Sidney Powell bases her conclusions: Terpsehore Maras (Plaintiff). Without an expert witness, Sidney Powell would not have evidence and could not prove her case. The very act of defaming the conclusion (that there was election fraud) is tantamount to defaming the subject matter expert: Terpsehore Maras (Plaintiff).

The Supreme Court stated that the accepted rule is to permit a case to proceed unless it is beyond doubt that the Plaintiff can prove no set up facts in support of her claim that would entitle her to relief. *See Conley v. Gibson*, 355 U.S. at 45-46. Since the Supreme Court stated that the accepted rule is to not dismiss a complaint for failure to state a claim, Plaintiff respectfully requests that this Court deny Media Matters' Motion to Dismiss. However, if this Court is convinced that Plaintiff has not plead a legally sufficient claim against Media Matters, then Plaintiff would respectfully request an Order granting leave of court to more fully articulate the defamation case against Media Matters.

Plaintiff contends that she plead a legally cognizable claim and that for these reasons, Media Matters' Motion to Dismiss should be denied.

**C.** **Plaintiff has pled a *prima facie* libel case and damages are presumed to have accrued as a matter of law. Since Plaintiff has a cause of action as a matter of right, dismissal would be wholly inappropriate.**

Plaintiff has a libel case as a matter of right. Plaintiff has a prima facie libel case and damages are presumed to accrue as a matter of law.

"The rule is firmly established that the false statement or imputation of the commission of a crime involving moral turpitude is **libelous *per se*** and damages are presumed to accrue as a matter of law." *Knoxville Pub. Co. v. Taylor*, 31 Tenn. App. 368, 372, 215 S.W.2d 27, 29 (1948) (citing *Williams v. Karnes*, 23 Tenn. 9, 10; *Fry v. McCord*, 95 Tenn. 678, 685, 33 S.W. 568; *Travis v. Bacherig*, 7 Tenn.App. 638, 644; *Little Stores v. Isenberg*, 26 Tenn.App. 357, 362, 172 S.W.2d 13) (emphasis added). Perjury is defined as a crime of moral turpitude. "The rule that a charge of false swearing is **not actionable *per se*, unless it amounts to legal perjury**, is a highly technical one, the reason of which is not very apparent, either as respects the moral turpitude of the offence, the motive of the party uttering the charge, or the essential injury to the reputation of the party accused." *Moore v. Horner*, 36 Tenn. 491, 496 (1857). Language that is libelous *per se* **confers a *prima facie* right of action**, and the law will presume damage without proof, merely by implication or presumption from the publication. *Sweeney v. Newspaper Printing Corp.*, 177 Tenn. 196, 147 S.W.2d 406, 407 (1941). The imputation of an infamous crime is defamation *per se*. *See Wilson v. Gadd*, 13 Tenn. App. 6, 13 (1930) (stating that imputing infamy is slanderous *per se* and compensable without proof of special damages); *see also Lackey v. Metro. Life Ins. Co.*, 26 Tenn. App. 564, 583, 174 S.W.2d 575, 583 (1943) (stating that imputations of a crime are a particular class of slanders and libels that are actionable *per se*).

Terpsehore Maras (Plaintiff) swore under oath and penalty of perjury that there was election fraud. When Media Matters claims that that Sidney Powell is spreading "fictional tales of election systems flipping votes," "debunked conspiracy theories," "a vast conspiracy of changed votes," and

"extreme, baseless claims about communist Venezuela and Gorge Soros" Media Matters is defaming the statements, testimony and conclusions that Attorney Sidney Powell could not introduce into evidence but-for her subject matter experts, which was Terpsehore Maras (Plaintiff). It would indeed be a curious state of the law for the originator of the information (*i.e.*, election fraud) to always be barred from bringing a claim because their "name" was not specifically used. Media Matters' defamation is necessarily "of and concerning" Plaintiff as she was the originator of the content. Moreover, when Media Matters claims that there is no election fraud, Media Matters is by definition claiming that Plaintiff committed perjury. The proposition is mutually exclusive; it must be that Plaintiff told the truth or committed perjury. Since Plaintiff swore under oath that there was election fraud, by operation of process of elimination, Media Matters claimed that Plaintiff committed perjury.

In Tennessee, being accused of perjury is libel *per se*. "The rule is firmly established that the false statement or imputation of the commission of a crime involving moral turpitude is **_libelous per se_** and damages are presumed to accrue as a matter of law." *Knoxville Pub. Co. v. Taylor*, 31 Tenn. App. 368, 372, 215 S.W.2d 27, 29 (1948) (citing *Williams v. Karnes*, 23 Tenn. 9, 10; *Fry v. McCord*, 95 Tenn. 678, 685, 33 S.W. 568; *Travis v. Bacherig*, 7 Tenn.App. 638, 644; *Little Stores v. Isenberg*, 26 Tenn.App. 357, 362, 172 S.W.2d 13) (emphasis added). As such, Plaintiff is entitled to have Media Matters' Motion to Dismiss denied. The rule is firmly established. Plaintiff is entitled to a trial and "damages are presumed to accrue as a matter of law." *Id.*

### D.    Actual malice is presumed because Media Matters' defamation naturally and proximately caused injury to personal, social, official or business relations in life.

In this case actual malice is presumed because Media Matters' defamation naturally and proximately caused injury to personal, social, official or business relations in life.

As noted by a Tennessee court, "If the word uttered **will naturally and proximately cause injury to one's personal, social, official or business relations of life, malice is presumed** and no

special damages need be proved; *i.e.*, if the words spoken impute to the person the commission of a crime or subject him to public ridicule, ignominy or disgrace." *Little Stores v. Isenberg*, 26 Tenn. App. 357, 172 S.W.2d 13, 16 (1943) (emphasis added). Moreover, when "a publication is libelous *per se*…it [is] **unnecessary for plaintiffs to prove malice or actual damages**." *Knoxville Pub. Co. v. Taylor*, 31 Tenn. App. 368, 372, 215 S.W.2d 27, 29 (1948) (emphasis added). Thus, "The rule is firmly established that the **false statement or imputation of the commission of a crime involving moral turpitude is libelous *per se*** and damages are presumed to accrue as a matter of law." *Id* (emphasis added) (citing *Williams v. Karnes*, 23 Tenn. 9, 10; *Fry v. McCord*, 95 Tenn. 678, 685, 33 S.W. 568; *Travis v. Bacherig*, 7 Tenn.App. 638, 644; *Little Stores v. Isenberg*, 26 Tenn.App. 357, 362, 172 S.W.2d 13). "Under the common law of defamation, some words were considered to be so injurious upon their face that **no actual proof of damages was required to make them actionable**. The existence of injury to reputation was presumed from the fact of publication." *Kersey v. Wilson*, No. M2005-02106-COA-R3CV, 2006 WL 3952899, at *6 (Tenn. Ct. App. Dec. 29, 2006) (emphasis added) (citing *Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412, 416, 421 (Tenn.1978)). "These defamations *per se* included allegations that a plaintiff had committed a crime involving moral turpitude." *Kersey*, *supra*, citing *Dunnebacke v. Williams*, 214 Tenn. 581, 381 S.W.2d 909, 911 (Tenn.1964); Knoxville Publishing Co. v. Taylor, 31 Tenn.App. 368, 215 S.W.2d 27, 29 (Tenn.Ct.App.1948).

The Supreme Court of Tennessee has stated, "The rule that a charge of false swearing is not actionable *per se*, unless it amounts to **<u>legal perjury</u>**, is a highly technical one, the reason of which is not very apparent, either as respects the **<u>moral turpitude of the offence</u>**, the motive of the party uttering the charge, or the essential injury to the reputation of the party accused." Moore v. Horner, 36 Tenn. 491, 496 (1857) (emphasis added).

In addition to the fact that Media Matters, through the publication of the article in question, accused Plaintiff of perjury, which is considered a crime of moral turpitude by the Tennessee Supreme

Court. Tennessee courts have also held that, "While the law of defamation applies generally to protect a person's reputation within the community, the law is especially concerned about defamatory statements that tend to prejudice a party in his **business, trade, office or profession**." *Dolan v. Poston*, No. M2003-02573-COA-R3CV, 2005 WL 2402919, at *5 (Tenn. Ct. App. Sept. 29, 2005), citing *Smith v. Fielden*, 326 S.W.2d 476, 479 (Tenn.1959); *McWhorter v. Barre*, 132 S.W.3d 354, 364-365 (Tenn.Ct.App.2003); W. Page Keeton, et al., PROSSER AND KEETON ON THE LAW OF TORTS § 112 at 790 (5th Ed.1984) ("The law has always been very tender of the reputation of tradesmen, and therefore words spoken of them in the way of their trade will bear an action that will not be actionable in the case of another person.") (emphasis added). "Liability for defamation normally extends to every individual who has taken a responsible part in publishing the defamatory material. In the case of a libel printed in a newspaper, even the printer and the carrier of the paper can be held liable, if it can be proven that they were aware of the libel." *Dolan*, *supra*, citing W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 113 at 799 (5th Ed.1984).

In the case at bar, Plaintiff testified that after being identified as an election fraud expert witness and defamed, Plaintiff testified that she suffered the following damages, which include but are not limited to the following:

    a.  Even though I was a subcontractor for 11 years, from 2009 to 2020, without anyone complaining about my work product or the quality of work, after being defamed I suddenly lost my contract with Boiance, who contracts with the United States government.

    b.  I have since applied for numerous contracts with other government contractors. I have not been awarded numerous subcontracts that I previously had for 15+ years and contracts that I ordinarily would have (and should have) been awarded based

on my extensive work experience and work history with these government contractors and with the United States government.

c. Even though I was a trainer and in leadership positions and had no complaints on my work product, I lost my contract with Cyracom.

d. I have been demonetized from YouTube.

e. YouTube has banned my channel from broadcasting.

f. Facebook refuses to monetize my content; I have never been monetized.

g. I have been banned from Melio.

h. I have been banned from Gettr.

i. I have been banned from Spotify.

j. I have been banned from Pandora.

k. I have been banned from FUNDLY.

l. I have been banned from Square.

m. I have been banned from PayPal.

n. I have been banned from Venmo.

o. I have been banned from Stripe.

p. I have been banned from Give Send Go.

q. I have been banned from Go Fund Me.

r. I have been banned from Anedot.

s. I have been banned from Square Payments.

t. I have been banned from Periscope.

u. I have been banned from Parler.

v. I have been banned from Twitter.

w. I have been banned from purchasing ads from Facebook.

x.  I have been banned from purchasing ads from Instagram.

y.  Facebook refuses to verify my account.

z.  Instagram refuses to verify my account.

aa. My website was taken down and disappeared while being hosted by Compuserve.

bb. I have been denied from purchasing advertising billboards.

cc. I have been denied Google Ad revenue on certain content that I publish.

dd. I have been denied otherwise available publishing opportunities.

ee. I have been denied otherwise available speaking opportunities.

ff.  My iHeart Radio Cleveland offer to host a Sunday radio show was cancelled.

gg. I have been banned by numerous nationally syndicated radio stations who previously broadcasted my show.

hh. My White House Press Credentials have been revoked on numerous occasions.

ii.  My Twitch account was hacked and my data was stolen by someone believed to be working with Media Matters for America.

jj.  I have suffered emotional distress.

kk. I have been threatened.

ll.  My name, standing and reputation has been damaged.

For the foregoing reasons, Media Matters' defamatory statements have interfered with Plaintiff's **professional prospects**. Just as the printer and carrier of a paper can be liable for the publication of defamatory statements, Media Matters, as the corporation who authored and/or published the defamatory article, is liable *per se* and damages are presumed to accrue as a matter of law. *See Knoxville Pub. Co. v. Taylor*, 31 Tenn. App. 368, 372, 215 S.W.2d 27, 29 (1948). Moreover, due to the libelous *per se* nature of Media Matters' statements, Plaintiff does not need to provide actual malice (or actual damages) to recover on her defamation claim against Media Matters.

19

**E.  Truth as an "absolute defense" is a defense for use at trial.**

Media Matters claims that the information in the article is true. Pursuant to Fed. R. Civ. P. 12(b), "**How to Present Defenses. <u>Every defense</u>** to a claim for relief in any pleading **<u>must be asserted in the responsive pleading</u>** if one is required."

In the case at bar, truth as an absolute defense would be an affirmative defense that Media Matters needs to raise in its responsive pleading. If the defense is successfully raised and maintained, then Media Matters would be able to use said defense at trial; not as grounds to grant a Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### III.  <u>CONCLUSION</u>

Plaintiff contends that this Honorable Court was give personal jurisdiction by way of removal from the Hamilton County Circuit Court. Plaintiff pled a legally cognizable complaint, with a short and plain statement of her claim, as required by Rule 12(b)(6). Plaintiff has a libel case as a matter of right because she pled a *prima facie* libel *per se* case; damages are presumed and malice need not be proved. Truth is a defense that Media Matters can raise in its Answer and said defense is for use at trial; it is not grounds for dismissal. Based upon the foregoing, Plaintiff respectfully requests that this Court deny Media Matters' Motion to Dismiss.

Respectfully submitted this 21st day of March, 2022.

**THE NEWMAN LAW FIRM**

/s/ Russell A. Newman
Russell A. Newman, BPR No. 033462
6688 Nolensville Road
Suite 108-22
Brentwood, TN 37027
(615) 554-1510  (Telephone)
(615) 283-3529  (Facsimile)
E-mail:russell@thenewmanlawfirm.com
*Attorney for Plaintiff Terpsehore Maras*

20

## CERTIFICATE OF SERVICE

I, Russell A. Newman, do hereby certify that I am counsel for Plaintiff Terpsehore Maras in the above-captioned matter and that a copy of the **PLAINTIFF TERPSEHORE MARAS' BRIEF IN OPPOSITION TO MEDIA MATTERS FOR AMERICA'S MOTION TO DISMISS** was filed and served via the CM/ECF system for the United States District Court, Eastern District of Tennessee, Chattanooga Division, which will cause service of same upon counsel of record in this matter and via U.S. Mail to the following non-registered users:

Ali Abdul Razaq Akbar a/k/a Ali Alexander
5125 Pinellas Avenue
Keller, TX 76244

Respectfully submitted this 21st day of March, 2022.

**THE NEWMAN LAW FIRM**

By:     /s/ Russell A. Newman_____
        Russell A. Newman, BPR # 033462