UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| TERPSEHORE MARAS, | ) |
| Plaintiff, | ) 1:21-CV-00317-DCLC |
| vs. | ) |
| CONGRESSMAN STEVE COHEN, U.S. DOMINION, INC., DOMINION VOTING SYSTEMS, INC., DOMINION VOTING SYSTEMS CORPORATION | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tepsehore Maras ("Maras")[1] sued Defendants alleging that they defamed her in connection with an opinion she gave regarding potential election fraud in the 2020 presidential election. Defendants U.S. Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively "Dominion") and Defendant Media Matters for America ("Media Matters") have moved to dismiss for lack of personal jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) [Docs. 21, 61]. Defendant United States Congressman Steve Cohen (D-TN) ("Congressman Cohen") has moved to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [Doc. 29]. The parties have fully briefed the issues, and all the motions are ripe for resolution.

---

[1] Plaintiff is also referred to as "Terpsichore Maras-Lindeman" in one exhibit [*see* Doc. 48-2].

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

After the November 2020 general election, former President Donald Trump and other plaintiffs hired Attorney Sidney Powell ("Powell") to sue Dominion, alleging it had rigged the presidential election results. Dominion sells electronic voting hardware and software, including voting machines and tabulators used by several states during the 2020 general election. Relevant to Maras' defamation claim here is the lawsuit Powell filed in federal court in the District of Arizona, where she claimed the Arizona "election process and results were so riddled with fraud, illegality and statistical impossibility … that Arizona voters, courts and legislators cannot rely [on] or certify its results." *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 706 (D. Ariz. 2020). ("Bowyer") [Doc. 1-2, ¶¶ 14-17]. In support of her election fraud claims, Powell submitted affidavits from several "experts," including Maras, who identified potential election fraud issues, but did not identify any actual fraud. Unlike some of the other affidavits, Powell redacted Maras's name from her affidavit so her identity remained anonymous. In her affidavit, Maras noted the "concerns that she had regarding foreign interference in our elections through hardware components from companies based in foreign countries with adverse interest." [Doc. 1-2, ¶ 18].

The defendants in the Arizona case asked the district court to dismiss the action for failure to state a claim. In addressing the motion, the district court discussed at length the problems with the opinions of several of the purported experts who had submitted affidavits in support of Powell's allegations. The court found "the 'expert reports' reach implausible conclusions, often because they are derived from wholly unreliable sources." [Doc. 1-2, ¶ 19]; *Bowyer*, 506 F. Supp. 3d at 722. For example, one expert concluded that Arizona election officials had committed "troublesome errors" related to "unreturned mail-in ballots" but had relied on data from "an unknown person" who had conducted a "telephone survey." *Id.* The court observed that Powell

offered nothing about who this individual was, his qualifications, or his methodology used in conducting this purported telephone survey. *Id.* Moreover, none of the affidavits Powell submitted alleged any actual election fraud, but instead couched their conclusions with "a lengthy collection of phrases beginning with the words 'could have, possibly, might,' and 'may have.'" *Id.* at 723. Without being able to identify any actual fraud in the voting process, the plaintiffs had failed to plead their fraud claims with particularity, and the district court dismissed the case. *Id*.

After the district court dismissed the *Bowyer* case, Dominion demanded Powell retract the "false and defamatory accusations" she had made against it [Doc. 22-3, pg. 15]. Dominion wrote:

> We write regarding your wild, knowingly baseless, and false accusations about Dominion, which you made on behalf of the Trump Campaign as part of a coordinated media circus and fundraising scheme featuring your November 19 press conference in Washington, D.C. and including your 'Stop the Steal' rally and numerous television and radio appearances on – and statements to – Fox News, Fox Business, Newsmax, and the Rush Limbaugh Radio Show, among others.

[Doc. 1-2, ¶ 36]. The next day, Dominion described Powell's allegations as "false conspiracy theories" which were part of a "dangerous and reckless disinformation campaign aimed at sowing doubt and confusion over the 2020 presidential election." [Doc. 1-2, ¶ 38; Doc. 22-4]. When Powell failed to retract her claims, Dominion sued her on January 8, 2021 in the United States District Court for the District of Columbia for defamation and deceptive trade practices [Doc. 22-6, pgs. 2-24]. Dominion again described Powell's fraud allegations as "the result of a deliberate and malicious campaign of lies" and alleged that she "manufactured, misrepresented, and cherry-picked evidence to support her false accusations." [Doc. 1-2, ¶ 54; Doc. 22-5]. None of Dominion's communications or published statements mentioned Maras.

On November 20, 2020, nine days before Maras signed the affidavit in the *Bowyer* case, Media Matters published on its website an article about Powell's lawsuits entitled, "Right-wing media feud erupts over Trump lawyer Sidney Powell's bonkers election conspiracy theories."

[Doc. 62-1]. The article describes media coverage of Powell's cases and includes quotes and links to source articles and videos containing public statements about the election. The Media Matters article did not mention Maras.

On March 23, 2021, Congressman Cohen posted a tweet on his official Twitter account sharing a link to an online news article about Powell and her election fraud lawsuits [Doc. 1-2, ¶ 62]. The article was entitled, "Sidney Powell Tells Judge 'No Reasonable Person' Would Believe Her Dominion Conspiracy Theories Were 'Statements of Fact.'" [Doc. 1-2, ¶ 62].[2] The article discussed Dominion's defamation suit against Powell and outlined Powell's legal position in that lawsuit. On his Twitter account, Congressman Cohen added his own statement about the article: "Trump@lawyer is saying the entire Trump 'Stop the Steal' & 'rigged election' was a Con Job on America&Trump supporters." [Doc. 1-2, ¶ 62]. Neither the Twitter post nor the linked article mentioned Maras.

Though none of the Defendants ever mentioned or alluded to Maras, she took great offense at Dominion describing Powell's allegations as "wild, knowingly baseless, and false" and believed herself to be defamed by association, since she had offered an "expert" opinion in support of Powell's claims. Maras sued Dominion, Media Matters, and Congressman Cohen, among others, in state court claiming that all of the Defendants had defamed her through their various communications and publications concerning Powell and the election fraud lawsuits. Congressman Cohen removed the state suit to this Court [Doc. 1]. Dominion, Media Matters, and Congressman Cohen have all moved to dismiss Maras' claims against them.

---

[2] Adam Klasfeld, *Sidney Powell Tells Judge 'No Reasonable Person' Would Believe Her Dominion Conspiracy Theories Were 'Statements of Fact'*, Law & Crime News (Mar. 22, 2021). This article can be accessed at https://lawandcrime.com/2020-election/sidney-powell-tells-judge-no-reasonable-person-would-believe-her-dominion-conspiracy-theories-were-statements-of-fact/. (Last visited on May 10, 2022 at 3:31 p.m.).

4

## II. STANDARD OF REVIEW

### A. Legal standard for motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

When ruling on a motion to dismiss for lack of standing or a facial challenge to its subject-matter jurisdiction under Rule 12(b)(1), the district court must accept all material allegations of the complaint as true. *Hawkins v. Richter*, No. 17-1968, 2018 WL 4042465, at *2 (6th Cir. July 6, 2018) (citing *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012); *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002)). The plaintiff bears the burden of proving that subject-matter jurisdiction properly exists. *See Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012). The court "has wide discretion" to consider evidence outside the pleadings to assure itself of its own subject-matter jurisdiction pursuant to Rule 12(b)(1). *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (internal citations omitted).

### B. Legal standard for a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

The Court may only exercise "personal jurisdiction over a nonresident defendant" if jurisdiction "meets the [forum] state's long-arm statute and constitutional due process requirements." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Tennessee's long-arm statute authorizes Tennessee courts to exercise jurisdiction on "[a]ny basis not inconsistent with the constitution of this state or of the United States." *See* Tenn. Code Ann. §§ 20-2-214(a)(6), 20-2-225(2). "When a state's long-arm statute authorizes the assertion of personal jurisdiction to the limits of federal due process, as does Tennessee's long-arm statute, the issue becomes simply whether the trial court's exercise of personal jurisdiction over the defendant meets due process requirements." *Mfrs. Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 855 (Tenn. Ct. App. 2000); *see also Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003).

For personal jurisdiction to comport with due process (1) the non-resident defendant must have "certain minimum contacts" with the forum state that are such that (2) the maintenance of the lawsuit in the state would "not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003).

A plaintiff responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction bears the burden of proving that the court's exercise of personal jurisdiction in the forum state is proper. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Where the court does not conduct an evidentiary hearing on the question of personal jurisdiction, the plaintiff's burden is "relatively slight." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017). "To defeat dismissal in this context, [the plaintiff] need make only a prima facie showing that personal jurisdiction exists." *Id*. To determine whether the plaintiff has made such a showing, the court considers the pleadings and any affidavits submitted by the parties in the light most favorable to the plaintiff. Any conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Neogen Corp.*, 282 F.3d at 887. Dismissal under Rule 12(b)(2) is appropriate only if the specific facts alleged by plaintiff, taken as a whole, fail to state a prima facie case for personal jurisdiction. *Bridgeport,* 327 F.3d at 478.

C. **Legal standard for a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).**

When a defendant files a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court must determine whether the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

6

*Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Though generally a court must accept a complaint's allegations as true, this tenet is "inapplicable to threadbare recitals of a cause of action's elements" when they are "supported by mere conclusory statements." *Id*. at 663 (quoting *Twombly*, 550 U.S. at 555).

### III. ANALYSIS

**A. Media Matters' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) [Doc. 61].**

Our system of justice provides a framework for parties who have been wronged to obtain a remedy. But in what court a party seeks to obtain that remedy matters. First and foremost, the court must have jurisdiction over the parties. If a party chooses a court lacking jurisdiction, then regardless of the wrong suffered, regardless of the damages, that court cannot address the claim, and the case must be dismissed. Media Matters claims Maras chose the wrong court to seek her remedy. The Court agrees.

There are two types of personal jurisdiction the Court may exercise: general or specific. Maras alleges that Media Matters is "subject to the general personal jurisdiction of this Court pursuant to Tenn. Code Ann. § 20-2-101 *et seq.* and Tenn. Code Ann. § 20-2-201 *et seq.*"[3] and that Media Matters is a "resident of California with its principal place of business located in [California]"[4] [Doc. 1-2, ¶¶ 8, 12]. Tennessee's long arm statute extends personal jurisdiction to the limits of federal due process. That is where the Court begins its analysis.

---

[3] Tenn. Code Ann. § 20-2-101 *et seq.* outlines general provisions of civil procedure, and Tenn. Code. Ann. § 20-2-201 *et seq.* is Tennessee's long arm statute.

[4] Media Matters has clarified that it has its principal place of business in Washington, D.C., not California.

7

Case 1:21-cv-00317-DCLC-CHS   Document 84   Filed 05/10/22   Page 7 of 18   PageID #: 2914

A court's exercise of general personal jurisdiction over a foreign corporation comports with due process when the corporation's affiliations with the state are so continuous and systematic as to render it essentially at home in the forum state. *BNSF Ry. Co. v. Tyrrell*, ⸺ U.S. ⸺, 137 S.Ct. 1549, 1558, 198 L.Ed.2d 36 (2017) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014)). The "paradigm" forums in which a corporate defendant is "at home" are the corporation's state of incorporation and principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011). It would be "an exceptional case" to find a corporation "at home" in a state "other than its formal place of incorporation or principal place of business." *Daimler*, 571 U.S. at 139 n.19.

Media Matters is not incorporated in Tennessee, nor is Tennessee its principal place of business [Doc. 1-2]. Rather, it is incorporated and has its principal place of business in Washington, D.C. [Doc. 63]. Media Matters argues it has no offices or employees in Tennessee, nor does it otherwise have "continuous and systematic contacts in Tennessee" that would warrant it being subject to the general jurisdiction of Tennessee [Doc. 62, pg. 5]. Maras counters that this Court has personal jurisdiction over Media Matters because she filed this case initially in Hamilton County Circuit Court, "which is a court of general jurisdiction," and the state court had "personal jurisdiction and subject matter jurisdiction over Media Matters" because "Media Matters transacts business by collecting donations in Tennessee." [Doc. 71, pgs. 1-2]. As proof, Maras shows that Media Matters is a registered charity in Tennessee and that it accepted three online donations from individuals located in Tennessee on March 7, 2022, two for $5, and one for $10 [Doc. 71, pgs. 2-5]. Maras argues these contacts suffice to show that Media Matters "availed itself of the venue and was subject to personal jurisdiction by transacting business in the state of Tennessee pursuant to Tenn. Code Ann. § 20-2-201." [Doc. 71, pg. 5].

8

Maras' argument here is unpersuasive. Receiving $20.00 in donations is not the kind of "continuous and systematic contact" that would render Media Matters essentially "at home" in Tennessee to suits unrelated to that activity. In *Goodyear*, the Supreme Court instructed that "[a] corporation's continuous activit[ies] of some sort[] within a state ... [are] not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Goodyear*, 564 U.S. at 927. Maras' defamation claim is unrelated to Media Matters' receipt of those Tennessee donations. The fact that some individuals in Tennessee donated to Media Matters through its national website is simply not enough to subject it to the court's general jurisdiction in Tennessee. *See Bird v. Parsons,* 289 F.3d 865, 874 (6th Cir. 2002); *see also Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 677 (6th Cir. 2005) ("We have held that the operation of 'a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction,' even where the website enables the defendant to do business with residents of the forum state, because such activity does not 'approximate[ ] physical presence within the state's borders.'"). Moreover, individuals can donate to Media Matters from any state in the United States via its website, and "[a] corporation that operates in many places can scarcely be deemed at home [for purposes of general jurisdiction] in all of them. Otherwise, 'at home' would be synonymous with 'doing business' ...." *Daimler*, 571 U.S. at 139 n.20.

Significantly, Media Matters' contacts with Tennessee are less than those of defendants in other cases where courts have not found general jurisdiction. For example, the Supreme Court has held that maintaining extensive operations within a state is not sufficient to give a court general jurisdiction over a nonresident defendant. *See, e.g., BNSF,* 137 S. Ct. at 1559 (holding that although BNSF operated one of its automotive facilities in Montana, had more than 2,000 Montana employees, and had more than 2,000 miles of Montana railroad tracks, BNSF was not subject to

9

general jurisdiction in Montana); *Daimler*, 571 U.S. at 136-39 (holding that California lacked general jurisdiction over defendant although it operated multiple California-based facilities; it was the largest supplier of luxury vehicles in California; and its in-state sales accounted for 2.4% of its total sales); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 1872 (1984) (holding the court had no personal jurisdiction over foreign corporation that sent officers to forum for a negotiating session; accepted checks drawn from a forum bank; purchased equipment from the forum; and sent personnel to the forum to be trained). Here, Media Matters is registered as a charity in Tennessee and has received three confirmed donations from individuals in Tennessee. These contacts are not so continuous and systematic as to render Media Matters essentially "at home" in Tennessee. This is therefore not the type of "exceptional case" that would justify this Court's exercise of general personal jurisdiction over it.

Nor does this Court have specific jurisdiction over Media Matters, and Maras does not contend otherwise. The Supreme Court has provided that specific jurisdiction deals with a defendant's contacts with the forum state that relate to the claims at issue:

> Specific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment' . . . Yet even then – because the defendant is not 'at home' – the forum state may exercise jurisdiction in only certain cases. The plaintiff's claims … must arise out of or relate to the defendant's contacts with the forum.

*Ford Motor Co. v. Mont. Eighth Judicial District Court,* 141 S.Ct. 1017, 1024-25 (2021) (internal citations and quotation marks omitted). The Sixth Circuit has identified three criteria for specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection

with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Intera Corp.*, 428 F.3d at 615 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Failure to meet any one of the three prongs means that the court lacks personal jurisdiction. *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1303 (6th Cir. 1989). The Court will focus on whether Maras' defamation claim arose from Media Matters' activities in Tennessee.

"In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781, 198 L. Ed. 2d 395 (2017) (alteration in original) (quoting *Goodyear*, 564 U.S. at 919). The connection between the in-state activity and the cause of action must be "substantial." *Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 692 F.3d 469, 472–73 (6th Cir. 2012). "The 'arising from' element" of specific personal jurisdiction "is not satisfied unless 'the operative facts of the controversy arise from the defendant's contacts with the state.'" *Magna Powertrain De Mexico S.A. De C.V. v. Momentive Performance Materials USA LLC*, 192 F. Supp. 3d 824, 830 (E.D. Mich. 2016) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000)).

Maras has not alleged any affiliation between Tennessee and the underlying controversy, let alone any connection between Media Matters' sparse contacts with Tennessee and her defamation claim against it. Maras' defamation claim does not arise out of the donation feature of Media Matters' website, nor does it arise from any of the donations Media Matters received from individuals in Tennessee on March 7, 2022. And even if Maras had alleged Tennessee residents might have read the Media Matters article that supposedly defamed her, which she has not, that

article was published on November 20, 2020, nine days *before* Maras signed the "expert" affidavit in the *Bowyer* case that she alleges gave rise to her defamation claim. In sum, Maras has not alleged any action of Media Matters, or consequence caused by any action of Media Matters, that is substantially connected to Tennessee such that this Court's exercise of specific personal jurisdiction over it would be reasonable.

Moreover, Maras' argument that, because the state court had general jurisdiction over Media Matters, this Court must have it as well, presumes the state court had general jurisdiction over Media Matters in the first instance. This case was removed to federal court by Congressman Cohen and Media Matters challenged this Court's jurisdiction shortly thereafter. The state court never addressed whether it had general jurisdiction over Media Matters. For these reasons, this Court lacks personal jurisdiction over Media Matters and Maras' claims against Media Matters are **DISMISSED WITHOUT PREJUDICE**. Because the Court lacks personal jurisdiction, it does not reach the substantive issues raised by Media Matters pursuant to Rule 12(b)(6).

**B.    Dominion's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) [Doc. 21].**

As an initial matter, Maras asserts that this Court must convert Dominion's motion to dismiss to a motion for summary judgment based on Rule 12(d) because Dominion relies on matters outside the pleadings. She asks this Court to permit her to engage in discovery. "In deciding a motion to dismiss for lack of personal jurisdiction, the district court may rely upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *MAG IAS Holdings,* 854 F.3d at 894, 899. Dominion has submitted affidavits in support of its motion, which, Maras argues, requires the Court to convert the motion to dismiss into a motion for summary judgment, pursuant to Fed. R. Civ. P. 12(d) [Doc. 47, pg. 3]. Rule 12(d) requires the Court to convert motions filed

under Rule 12(b)(6) or 12(c) to motions for summary judgment if matters outside the pleadings are presented. But Dominion's motion to dismiss for lack of personal jurisdiction is filed under Rule 12(b)(2), not under Rule 12(b)(6) or 12(c). Thus, for purposes of addressing that aspect of Dominion's motion, the Court need not convert its motion to one for summary judgment. Instead, the Court may resolve the jurisdiction issue based on the affidavits alone but should view the pleadings and affidavits in the light most favorable to Maras. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).

In its motion to dismiss, Dominion argues this Court does not have general personal jurisdiction over it because none of the Dominion entities are incorporated in nor do they have their principal places of business in Tennessee [Doc. 22, pg. 12]. Dominion also points out that Maras has not alleged specific jurisdiction, that is, any connection in Tennessee between its statements describing Powell's theories as "wild, … baseless and false" and her defamation claim [Doc. 22, pgs. 10-15]. Dominion further notes that Maras is a resident of Ohio who does not even allege that she has ever been to Tennessee [Doc. 1-2, *generally* and ¶ 1].

There is no dispute that the Dominion entities are incorporated and have their principal places of business in Colorado, and not in Tennessee. And Maras has not alleged the type of activity that would give this Court general jurisdiction over Dominion. According to Dominion, it only has one employee in Tennessee who works "exclusively for customers outside" Tennessee and only has two contracts in Tennessee to provide voting machines, which account for 0.07% of its total voting machine contracts [Doc. 22, pg. 13; Doc. 22-1, ¶¶ 11, 12]. Maras claims the voting machine contracts are enough for this Court to exercise personal jurisdiction over Dominion. They are not. Dominion's continuous activities in Tennessee, namely the voting machine contracts, are simply not enough to render Dominion "amenable to suits unrelated to that activity." *Goodyear*,

564 U.S. at 927. Maras' defamation claims against Dominion are wholly unrelated to Dominion's sale of voting machines in Hamilton and Williamson Counties. Moreover, Dominion does business through voting machine contracts with many states, not just Tennessee, and, as is the case with Media Matters, "[a] corporation that operates in many places can scarcely be deemed at home [for purposes of general jurisdiction] in all of them." *Daimler*, 571 U.S. at 139 n.20, 134 S.Ct. 746. Also like Media Matters, Dominion's contacts with Tennessee are significantly less than those defendants in other cases where courts have not found general jurisdiction. *See* discussion *infra*, pgs. 9-10. Dominion has one employee in Tennessee and two contracts for the sale of voting machines in Tennessee. These contacts are not so continuous and systematic as to render Dominion essentially "at home" in Tennessee.

Nor does this Court have specific jurisdiction over Dominion. None of Dominion's activities *in Tennessee* gave rise to her defamation claim—instead they are based on statements all of which were drafted or published in other states. Dominion sent the demand letter to Powell at her Texas and Florida addresses from a law firm located in Virginia [Doc. 22-3]. The allegedly defamatory press releases were published in Colorado and Washington, D.C. [Doc. 22-4, 22-5]. The lawsuit Maras claims as defamatory was filed by Dominion against Powell in the United States District Court for the District of Columbia, No. 1:21-cv-00040 [Doc. 22-6]. Maras is a resident of the State of Ohio [Doc. 1-2, ¶ 1], and alleges no interaction between herself and Dominion in Tennessee. Her only reference to anything written in Tennessee is a letter *she wrote* to Senator Marsha Blackburn and Congressman Cohen "regarding the nodes for the 2020 election that were housed in Tennessee and raised concerns about the integrity of the 2020 elections." [Doc. 47-1, ¶ 25].

Finally, Maras' argument that this Court has personal jurisdiction over Dominion because she filed this case initially in state court [Doc. 47, pg. 2] fails for the same reason it fails in her response to Media Matters. This case was removed by Congressman Cohen before the state court could address the issue of personal jurisdiction over any of the Defendants. For these reasons, this Court lacks personal jurisdiction over Dominion and Maras' claims against Dominion are **DISMISSED WITHOUT PREJUDICE**. Because the Court lacks personal jurisdiction, it does not reach the substantive issues raised by Dominion pursuant to Rule 12(b)(6).

**C.  Congressman Cohen's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) [Doc. 29]**

Congressman Cohen argues Maras lacks Article III standing to bring a claim against him [Doc. 30, pg. 13]. "Standing is a threshold requirement for federal jurisdiction. If a party does not have standing to bring an action, then the court has no authority to hear the matter and must dismiss the case." *Binno v. Am. Bar Ass'n,* 826 F.3d 338, 344 (6th Cir. 2016) (citing *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015). The "irreducible constitutional minimum" requirement of standing is made up of three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted); *McKay v. Federspiel*, 823 F.3d 862, 866-67 (6th Cir. 2016). Plaintiff must allege she has suffered (1) an "injury in fact," (2) "that is fairly traceable to the challenged conduct of the defendant," and (3) that is "likely to be redressed" in a judicial action. *Spokeo*, 578 U.S. at 338; *Binno,* 826 F.3d at 344 ("To establish Article III standing, [a plaintiff] must demonstrate a causal connection between [the alleged] injury and the defendant's conduct."). Congressman Cohen argues Maras lacks standing because she has not sufficiently pled any traceable link between her claims and his actions [Doc. 30, pg. 4].

In her Amended Complaint, Maras alleges Congressman Cohen defamed her when he posted the article link about Powell on his Twitter account and then added his own statement:

15

"Trump@lawyer is saying the entire Trump 'Stop the Steal'& 'rigged election' was a Con Job on America&Trump supporters." [Doc. 1-2, ¶ 62]. Maras also claims Congressman Cohen defamed her when he posted "on Twitter that Sidney Powell's statements about the November 2020 election fraud were 'wild accusations' and 'outlandish claims' that 'are repeatedly labelled 'inherently improbable' and even 'impossible' . . ." [Doc. 1-2, ¶ 64].

Maras argues she has standing to bring her defamation claim against Congressman Cohen because she has suffered actual damages, including loss of job opportunities, bans and cancellations from several media platforms, damage to her reputation, and threats to her personal safety and that of her family [Doc. 48, ¶ 30(a)-(mm)]. She argues these injuries are traceable to Congressman Cohen's actions because "prior to her character assassination by the Defendants, Plaintiff had never suffered any of the aforementioned damages whatsoever" and she knows of "no other reason [that] she would have suffered any of the aforementioned damages." [Doc. 48, pg. 7]. She argues a "single act of defamation can inflict extraordinary damage," especially when it comes from a "very powerful and influential member of the U.S. Congress" such as Congressman Cohen [Doc. 48, pg. 7]. According to Maras, the harm from a defamatory tweet from someone of Congressman Cohen's influence is especially acute when one considers the "multiplication of impressions through news feeds, retweets, comments," and the sharing of comments on social media [Doc. 48, pg. 7].

To be sure, a single act of defamation from an influential member of the United States Congress can cause great injury. But in this case, Maras has failed to establish a causal connection between those purported injuries and Congressman Cohen's tweet. The entirety of Maras' claim against Congressman Cohen centers on his Twitter post of March 23, 2021. His Twitter post does not mention Maras by name, nor does it mention or allude to any expert witness involved in

Powell's election fraud lawsuits. The post links to an article about Powell, *see* link *infra*, n. 2, but the article does not mention Maras. Instead, the article discusses Dominion's defamation lawsuit against Sidney Powell, and the contents of Powell's motion to dismiss that lawsuit. *Id*. Indeed, in asking the district court to dismiss Dominion's case, Powell claimed that no reasonable person would interpret her election fraud claims as actual statements of fact. *Id*. She claimed it was "a well-recognized principle that political statements are inherently prone to exaggeration and hyperbole." *Id.* There is nothing in Congressman Cohen's March 23, 2021 Twitter post or the linked article that references Maras, directly or by implication. Her argument that she can think of "no other reason" her reputation was ruined besides her claim that Congressman Cohen defamed her is pure conjecture. It is like saying the rooster who crows before dawn causes the sun to rise. Correlation does not imply causation.[5]

Maras claims that Congressman Cohen intentionally defamed her by posting the link to the news article about Powell because he knew Maras was Powell's election fraud witness [Doc. 48]. She argues Congressman Cohen knew her identity because it was "public knowledge" by that time and Cohen had top security access to her identity even before then [Doc. 48, pg. 7].[6] Even assuming Congressman Cohen knew Maras' identity as Powell's "expert" witness, his March 23, 2021 Twitter post and the linked article do not mention or allude to Maras. Maras has not shown

---

[5] This fallacy is often described in Latin as "post hoc ergo propter hoc" or the "post hoc" fallacy. It presumes that since event two followed event one, event two must have been caused by event one.

[6] Maras also attempts to impute knowledge of her identity to Congressman Cohen by citing a December 24, 2020 news article in the Washington Post which identified her as the "secret witness" Sidney Powell had used in the election fraud lawsuits [Doc. 48, pg. 8; Doc. 48-2]. But she provides no facts to support her assertion that Congressman Cohen was aware of the Washington Post article, nor that he knew her identity by any other means.

17

the necessary causal connection here to establish Article III standing.  Accordingly, the Court does not reach the substantive issues raised in Congressman Cohen's motion pursuant to Rule 12(b)(6), and Maras' claims against Congressman Cohen shall be **DISMISSED WITHOUT PREJUDICE**.

## IV. CONCLUSION

For the reasons stated herein, the Court finds the following:

1. Because this Court lacks personal jurisdiction over Media Matters, Media Matters' motion to dismiss [Doc. 61] pursuant to Fed. R. Civ. P. 12(b)(2) is **GRANTED**, and the Court hereby **DISMISSES WITHOUT PREJUDICE** Maras' claims against Media Matters.

2. Because this Court lacks personal jurisdiction over Dominion, Dominion's motion to dismiss [Doc. 21] pursuant to Fed. R. Civ. P. 12(b)(2) is **GRANTED**, and the Court hereby **DISMISSES WITHOUT PREJUDICE** Maras' claims against U.S. Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation.

3. Because Maras has failed to establish that she has Article III standing to bring her defamation claim against Congressman Cohen, Congressman Cohen's motion to dismiss [Doc. 29] pursuant to Fed. R. Civ. P. 12(b)(1) is **GRANTED**, and the Court hereby **DISMISSES WITHOUT PREJUDICE** Maras' claims against Congressman Cohen.

SO ORDERED:

s/Clifton L. Corker
United States District Judge